IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EDWARD J. AND VICKI                    *
FANGMAN, *et al.*,
                                       *
        Plaintiffs,
                                       *
        v.                                          Civil Action No. RDB-14-0081
                                       *
GENUINE TITLE, LLC, *et al.*
                                       *
        Defendants.
                                       *

*       *       *       *       *       *       *       *       *       *       *       *       *

## MEMORANDUM OPINION

This purported class action lawsuit involves an alleged home mortgage kickback scheme in which Defendant Genuine Title, LLC ("Genuine Title"), by itself and through sham companies, allegedly provided cash payments and marketing materials to mortgage brokers who referred their clients to Genuine Title for settlement services.  Second. Am. Compl. at ¶¶ 3-4, ECF No. 138.  Plaintiffs Edward J. Fangman and Vicki Fangman ("the Fangmans"), on behalf of themselves and the alleged class (collectively "Plaintiffs"), initially filed the present suit against Genuine Title in the Circuit Court for Baltimore County, Maryland.  Compl. at ¶ 1, ECF No. 2.  Subsequently, Genuine Title removed the case to this Court.  Notice of Removal, ECF No. 1.  Since that time, Plaintiffs have now amended their Complaint three times, adding Plaintiffs and Defendants.[1]   The Second Amended

---

[1] This Court granted Plaintiffs' Motion to Amend the Complaint a third time via Letter Order dated November 30, 2015 (ECF No. 208).  That amendment corrected one typographical error and removed allegations against Maverick Funding Corp. and Craig Arman, a West Town Bank & Trust mortgage broker.

Complaint, filed by the Fangmans and forty-six other Plaintiffs, on behalf of themselves and the alleged class, is the subject of eleven motions to dismiss pending before this Court.

The Second Amended Complaint alleges violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2607(a), (b), and MD. CODE ANN., REAL PROP. § 14-127 ("Section 14-127") (Count I), and violations of the Maryland Consumer Protection Act ("MCPA"), MD. CODE ANN., COM. LAW § 13-301, (Count II) by Defendants Genuine Title[2]; Brandon Glickstein, Inc.; Dog Days Marketing, LLC ("Dog Days Marketing"); Competitive Advantage Marketing Group, LLC ("Competitive Advantage") (collectively "Genuine Defendants"); Wells Fargo Home Mortgage, Inc. and Wells Fargo, N.A. ("Wells Fargo"); West Town Bank & Trust ("West Town"); Emery Federal Credit Union ("Emery"); PNC Mortgage and PNC Bank, N.A. ("PNC"); MetLife Home Loans, LLC and MetLife Bank, N.A. ("MetLife"); Net Equity Financial ("Net Equity"); Eagle National Bank ("Eagle National"); E Mortgage Management ("E Mortgage"); and JP Morgan Chase Bank ("Chase") (collectively "Defendant Lenders").[3]  Currently pending before this Court are West Town's Motion to Dismiss (ECF No. 161); Net Equity's Motion to Dismiss (ECF No. 162); Wells Fargo's Motion to Dismiss (ECF No. 163)[4]; PNC's Motion to Dismiss (ECF No. 165); Eagle National's Motion to Dismiss (ECF No. 167); MetLife's Motion to Dismiss (ECF No. 168);

---

[2] Defendant Genuine Title has ceased conducting business and was not represented at this Court's November 24, 2015 hearing.  Plaintiffs allege that Jay Zuckerberg was the owner of Genuine Title.  He is listed as an interested party in this matter.

[3] Maverick Funding Corp. and Bank of America, N.A. ("Bank of America") were also named as Defendants, but they were dismissed from this case by separate Orders of this Court (ECF Nos. 111 & 191).

[4] Plaintiffs and Wells Fargo have filed a Joint Consent Motion (ECF No. 205) to suspend consideration of Wells Fargo's pending motions while they document a proposed resolution to the claims asserted against Wells Fargo.  The parties' Joint Consent Motion (ECF No. 205) is GRANTED IN PART and DENIED IN PART.  This Court will suspend consideration of all pending motions as they pertain to Wells Fargo, but will now STAY Wells Fargo's Motion to Dismiss as to Plaintiffs' Section 14-127 claim and GRANT Wells Fargo's Motion to Dismiss as to Plaintiffs' MCPA claim. *See* discussion *infra*.

Competitive Advantage and Dog Days Marketing's Motion to Dismiss (ECF No. 169); Chase's Motion to Dismiss (ECF No. 170)[5]; Emery's Motion to Dismiss, or in the alternative to Sever and Transfer the Case (ECF No. 171); Bank of America's Motion to Dismiss (ECF No. 172)[6]; and E Mortgage Management's Motion to Dismiss (ECF No. 203). The parties' submissions have been reviewed, and a hearing on the pending motions was held before this Court on November 24, 2015. For the reasons that follow, West Town's Motion to Dismiss (ECF No. 161) is GRANTED IN PART, DENIED IN PART, and STAYED IN PART; Net Equity's Motion to Dismiss (ECF No. 162) is GRANTED IN PART, DENIED IN PART, and STAYED IN PART; Wells Fargo's Motion to Dismiss (ECF No. 163) is GRANTED IN PART and STAYED IN PART; PNC's Motion to Dismiss (ECF No. 165) is GRANTED IN PART, DENIED IN PART, and STAYED IN PART; Eagle National's Motion to Dismiss (ECF No. 167) is GRANTED IN PART and STAYED IN PART; MetLife's Motion to Dismiss (ECF No. 168) is GRANTED IN PART, DENIED IN PART, and STAYED IN PART; Competitive Advantage and Dog Days Marketing's Motion to Dismiss (ECF No. 169) is GRANTED IN PART, DENIED IN PART, and STAYED IN PART; Chase's Motion to Dismiss (ECF No. 170) is GRANTED IN PART and STAYED IN PART; Emery's Motion to Transfer the Case (ECF No. 171) is GRANTED; and E Mortgage's Motion to Dismiss (ECF No. 203) is GRANTED IN PART, DENIED

---

[5] Plaintiffs and Chase have filed a Joint Consent Motion (ECF No. 206) to suspend consideration of Chase's pending motions while they document a proposed resolution to the claims asserted against Chase. The parties' Joint Consent Motion (ECF No. 206) is GRANTED IN PART and DENIED IN PART. This Court will suspend consideration of all pending motions as they pertain to Chase, but will now STAY Chase's Motion to Dismiss as to Plaintiffs' Section 14-127 claim and GRANT Chase's Motion to Dismiss as to Plaintiffs' MCPA claim. *See* discussion *infra*.

[6] As stated *supra*, Bank of America was dismissed from this case by this Court's Order dated October 1, 2015 (ECF No. 191). Therefore, Bank of America's Motion to Dismiss (ECF No. 172) is DENIED AS MOOT.

IN PART, and STAYED IN PART.   Specifically, the Motions to Dismiss, with one exception, are DENIED as to the RESPA claims in Count I, and GRANTED in their entirety as to the Maryland Consumer Protection Act claims in Count II.   The claims for a private right of action under MD. CODE ANN., REAL PROP. § 14-127 are CERTIFIED to the Court of Appeals of Maryland for a determination as to whether Section 14-127 permits a private right of action.

## BACKGROUND

In ruling on a motion to dismiss, this Court accepts as true the facts alleged in the complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).   Plaintiffs' Second Amended Complaint alleges the following:

Plaintiffs seek to represent a class of approximately 4,000 to 5,000 individuals "who retained Genuine Title, LLC [("Genuine Title")] for settlement and title services and Defendant Lenders[7] on the purchase and/or refinance of their residence[s] from 2009 to 2014."   Second Am. Compl. at ¶¶ 229, 236, ECF No. 138.   All Plaintiffs allegedly used Defendant Genuine Title as a result of Defendant Lenders' referral.   *Id.* at ¶ 2.   All Defendant Lenders are servicers of federally related mortgage loans. *Id.* at ¶ 244.

---

[7] The lenders named as Defendants in this case are Wells Fargo Home Mortgage, Inc. and Wells Fargo, N.A. ("Wells Fargo); West Town Bank & Trust ("West Town"); Emery Federal Credit Union ("Emery"); PNC Mortgage and PNC Bank, N.A. ("PNC"); MetLife Home Loans, LLC and MetLife Bank, N.A. ("MetLife"); Net Equity Financial ("Net Equity"); Eagle National Bank ("Eagle National"); E Mortgage Management ("E Mortgage"), and JPMorgan Chase Bank, N.A. ("Chase") (collectively "Defendant Lenders").   Second Am. Compl. at ¶ 3, ECF No. 138.   Maverick Funding Corp. and Bank of America were also named as Defendants, but they were dismissed from this case by separate Orders of this Court (ECF Nos. 111 & 191).   Each Plaintiff in this case obtained a home mortgage loan from one of the Defendant Lenders and hired Genuine Title for settlement and title services.   In the Second Amended Complaint, Plaintiffs who obtained their loan from a particular lender are sometimes referred to by that lender's name, *e.g.*, the "West Town Plaintiffs" are those Plaintiffs who obtained a home mortgage loan from Defendant West Town.

Plaintiffs allege that they, and all class members, "were victims of an illegal kickback scheme whereby the Defendant[] [Lenders] . . . received unearned fees and kickbacks from Defendant[] Genuine Title, LLC" and a series of sham companies[8] created by Genuine Title for the purpose of distributing kickbacks (collectively "Genuine Defendants"). *Id.* at ¶ 3. "Defendant Lenders' employees and/or agents [allegedly] received and accepted cash payments, free marketing materials and other things of value from Genuine Defendants in exchange for referral of Genuine Title to borrowers for title and settlement services." *Id.* at ¶ 62. Upon information and believe, Plaintiffs contend that the volume of kickbacks provided to Defendant Lenders correlates with the "volume of business referred to Genuine Title by the referring broker[s]." *Id.* at ¶¶ 67, 72. For each Defendant Lender, with the exception of Eagle National, Plaintiffs specifically name at least one referring mortgage broker who they allege received payments and marketing materials from Genuine Title through the kickback scheme. *See, e.g.*, Second Am. Compl. at ¶¶ 119-120, 133-34. Additionally, they claim that other of Defendant Lenders' brokers, currently unknown, received kickbacks. *See, e.g., id.* at ¶¶ 138, 151, 162.

Plaintiffs allege that "[t]hese payments were concealed from Plaintiffs and were not disclosed on the Plaintiffs' HUD-1s.[9]" *Id.* at ¶ 4. Furthermore, Plaintiffs claim that "Genuine Title and Defendant Lenders failed to disclose . . . that Genuine Title was

---

[8] The "sham" companies allegedly involved in this scheme are Defendants Brandon Glickstein, Inc., Dog Days Marketing, LLC ("Dog Days Marketing"), and Competitive Advantage Marketing Group, LLC ("Competitive Advantage"). *Id.* at ¶ 3. Plaintiffs claim that these companies do not have their own office space and that they each share a resident agent, principal and/or employee with Genuine Title. *Id.* at 87.
[9] The HUD-1 Settlement Statement is a standard form indicating fees charged to a borrower by a mortgage lender or broker.

participating with referring loan officers/banks and [sham companies] and failed to disclose their affiliated business relationships." *Id.* at ¶ 258.

When regulators began to investigate the scheme, Plaintiffs claim that "Genuine Title drafted sham Title Services Agreements with the intent to disguise Referring Cash payments as legitimate fees for alleged services provided by Referring Brokers and back-dated said agreements." *Id.* at ¶ 74. Plaintiffs allege that "the Referring Cash payments were not made in accordance with the fee schedule in the Title Services Agreements." *Id.* "In some instances, the Referring Cash was paid to Referring Brokers pursuant to sham Title Services Agreements in which Genuine Title agreed to pay the referring brokers for title services that were not, in fact, performed. *Id.* at ¶ 75. As a result of this scheme, Plaintiffs claim that they "were deprived of kickback free settlement services and process" and that "[b]ut for" the kickback scheme, their settlement fees "would have been much lower." *Id.* at ¶¶ 90, 261.

Plaintiffs Edward J. Fangman and Vicki Fangman ("the Fangmans") filed the initial class action complaint in this case against Genuine Title on December 6, 2013 in the Circuit Court for Baltimore County, Maryland. *See* Compl., ECF No. 2. Subsequently, Genuine Title removed the case to this Court. Notice of Removal, ECF No. 1. On January 2, 2015, the Fangmans and thirty other Plaintiffs filed an Amended Complaint on behalf of themselves and the alleged class, adding Brandon Glickstein, Inc., Dog Days Marketing, Competitive Advantage, and all-but-one of the Defendant Lenders as Defendants in this case. Am. Compl., p. 5-6, ECF No. 47. Chase, the final Defendant Lender to be added, was named as a Defendant in the Second Amended Complaint, filed on May 20, 2015. Second Am. Compl. at ¶ 3, ECF No. 138. An additional sixteen Plaintiffs were named at that time.

*Id.* at p. 1.   The Second Amended Complaint, the subject of eleven pending motions to dismiss, alleges violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2607(a), (b), and MD. CODE ANN., REAL PROPERTY § 14-127 ("Section 14-127") (Count I), and violations of the Maryland Consumer Protection Act ("MCPA"), MD. CODE ANN., COM. LAW § 13-301, (Count II) by the Genuine Defendants and Defendant Lenders. *Id.* at p. 36-39.

## STANDARD OF REVIEW

### I.   Motion to Dismiss Under Rule 12(b)(1) of the Federal Rules of Civil Procedure

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint.   *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005).   This challenge under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). A plaintiff carries the burden of establishing subject matter jurisdiction.   *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

With respect to a facial challenge, a court will grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799. Where the challenge is factual, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192.   "[T]he court may look beyond the pleadings and 'the jurisdictional

allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.' " *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (citation omitted).  The court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Sharafeldin v. Maryland Dept. of Public Safety & Correctional Services*, 94 F. Supp. 2d 680, 684–85 (D. Md. 2000).

## II.   Motion to Dismiss Under Rule 12(b)(6) of the Federal Rules of Civil Procedure

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P 8(a)(2).  Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).  In making its assessment, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief.  *Iqbal*, 556 U.S. at 679.  "At bottom, a plaintiff must nudge [its]

claims across the line from conceivable to plausible to resist dismissal." *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (internal quotation marks omitted).

Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, a claim of fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The circumstances include the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d. 769, 777 (4th Cir. 2013) (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

## ANALYSIS

### I.     Real Estate Settlement Procedures Act ("RESPA") Claims (Count I)

#### A.     Plaintiffs Have Standing to Sue

Defendants contend that all Plaintiffs lack standing to sue under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2607(a), (b).   In order to establish standing to sue, plaintiffs must demonstrate three basic elements: (1) the plaintiff must have suffered an "injury in fact," (2) the injury must be "fairly traceable" to the defendant's challenged conduct, and (3) it must be likely that the plaintiff's injury would be redressed by the requested relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

##### a.     Plaintiffs Have Satisfied the Actual Injury Requirement

Defendants contend that all Plaintiffs lack standing to sue because they have failed to allege a "concrete and particularized" "injury-in-fact." *See, e.g.*, Mem. Supp. West Town Mot. to Dismiss, p. 7, ECF No. 161-1.   Plaintiffs respond that RESPA violations are concrete injuries in and of themselves.   Pl.'s Response in Opp'n, p. 4, ECF No. 177-1.

The actual injury requirement "may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . . .' " *See Warth v. Seldin*, 422 U.S. 500 (1975) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n. 3 (1973); *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972)). The United States Court of Appeals for the Fourth Circuit stated in *Boulware v. Crossland Mortg. Corp.*, 291 F.3d 261, 266 (4th Cir. 2002) that RESPA " Section 8(a) prohibits the payment of formal kickbacks or fees for the referral of business and does not require an overcharge to a consumer." This Court applied that principle in *Robinson v. Fountainhead Title Group Corp., et al.*, 447 F. Supp. 2d 478, 488 (D. Md. 2006) (Disagreeing with "Defendants' assertion that absent a contestable overcharge, a plaintiff lacks standing to pursue a[] [RESPA] 8(a) claim."). The Ninth Circuit agreed in *Edwards v. First American Corp.*, 610 F.3d 514, 518 (9th Cir. 2010), reasoning as follows:

> RESPA provisions are clear. A person who is charged for a settlement service involved in a violation is entitled to three times the amount of any charge paid. The use of the term "any" demonstrates that charges are neither restricted to a particular type of charge, such as an overcharge, nor limited to a specific part of the settlement service. Further, the term "overcharge" does not exist anywhere within the text of the statute.

*Id.* at 517. This Court now applies the same principle. Here, Plaintiffs have pled RESPA violations. Additionally they claim that, as a result of Defendants' kickback scheme, they "were deprived of kickback free settlement services and process" and that "[b]ut for" the kickback scheme, their settlement fees "would have been much lower." For these reasons, Plaintiffs have satisfied the "actual injury" requirement for standing.

### b.      Plaintiffs Have Sufficiently Alleged Traceability and Redressability

Plaintiffs' alleged injury must be traceable to the Defendants, *i.e.*, it must be attributable to them.  *Lujan*, 504 U.S. at 560.  Redressability requires that it be "likely as opposed to speculative that the injury will be redressed by a favorable decision." *Id.* at 560 (internal quotations omitted).  Here, Defendant Lenders object that the Plaintiffs who did not transact business with them personally lack standing to sue them, *i.e.*, each Plaintiff has standing to sue only that single Lender with whom he or she transacted.  *See, e.g.*, Mem. Supp. West Town Mot. to Dismiss, p. 16, ECF No.161-1.  This Court in *Miller v. Pacific Shore Funding*, 224 F. Supp. 977 (D. Md. 2002) and *Herlihy v. Ply-Gem Industries, Inc.*, 752 F. Supp. 1282 (D. Md. 1990), found that Plaintiffs lacked standing due to insufficient traceability of their claims.  Defendants cite both cases in their memoranda.  However, both of those cases involved Defendants with no connection to any of the Plaintiffs.  *See Miller*, 224 F. Supp. at 994 (Four Defendant lenders had no Plaintiff in the case with whom they held an assignment); *Herlihy*, 752 F. Supp. at 1282 (Of the three Plaintiffs in the case, not one alleged that any one of the manufacturer defendants supplied the plywood used in his home).  In contrast, each Defendant in this case "has one or more Plaintiffs with loans with them and all Plaintiffs' and Defendants' transactions involve kickbacks paid by Genuine Title."  Pl.'s Opp'n West Town Mot. Dismiss, p. 13, ECF No. 177-1.  This connection is sufficient to establish the traceability and redressability of Plaintiffs' claims.  Each named Defendant had a contractual relationship with a Plaintiff, and each Plaintiff had a contractual relationship with a Defendant.  Accordingly, Defendants' standing arguments fail.

### B.      __Plaintiffs' Claims Will Not Be Severed At This Stage__[10]

Defendants contend that Plaintiffs' claims are misjoined under Rule 20 of the Federal Rules of Civil Procedure.  *See, e.g.*, Mem. Supp. West Town Mot. to Dismiss, p. 46, ECF No. 161-1.  Therefore, they argue, all Plaintiffs except the Fangmans should be dismissed from the action.  *Id.* at 48-49.  Defendants point out that the Plaintiffs in this case bring claims arising out of different loan transactions at different times, for different properties, and with different loan officers employed by different lenders in different states.  *Id.* at p. 48. Plaintiffs respond that they allege a common fraud involving all Defendants and Genuine Title.  Pl.'s Response Opp'n, p. 45, ECF No. 177-1.  They argue that Defendants engaged in a common kickback scheme with a single co-conspirator—Genuine Title, and undertook a coordinated effort to conceal their fraud.  *Id.*  Plaintiffs further argue that this Court should sever rather than dismiss Plaintiffs' claims if it finds misjoinder, but that such action would be premature at this stage of the proceedings.  *Id.*

Federal Rule of Civil Procedure 20(a), which governs permissive joinder of claims, states in pertinent part that:

> Persons ... may be joined in one action as defendants if any right to relief is
> asserted against them jointly, severally, or in the alternative with respect to or
> arising out of the same transaction, occurrence, or series of transactions or
> occurrences and if any question of law or fact common to all defendants will
> arise in the action.

Fed. R. Civ. P. 20(a).  Rule 20(a) imposes two specific requisites to the joinder of parties: (1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence; and (2) some question of law or fact

---

[10] Plaintiffs' claims against Emery will be severed and transferred.  *See* discussion *infra*.

common to all the parties will arise in the action. Both of these requirements must be satisfied in order to sustain party joinder under Rule 20(a). 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 1653 (3d ed. 2001). The Fourth Circuit has held that Rule 20(a) "should be construed in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (internal quotation marks and citation omitted). Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder is not ground for dismissal of an action" and "[a]ny claim against a party may be severed and proceeded with separately." Fed. R. Civ. P. 21.

Given that Plaintiffs allege a common scheme, centering around Defendant Genuine Title and its sham companies, this Court will not sever the present action at this time. Given that common questions of law and fact exist as to the various Plaintiffs and Defendants, Plaintiffs' claims will remain joined through discovery in the interest of judicial efficiency. However, in the interest of fairness to Defendants, this Court will likely sever the claims for trial. In ordering a similar series of claims severed, the United States District Court for the Southern District of New York observed the following:

> Inasmuch as each plaintiff's claims appear to arise out of a mortgage-related transaction that is distinct from the transactions on which the other plaintiffs' claims are based, and as each plaintiff's claims implicate distinct loans, locations, dates and personnel, there is no meaningful economy of scale gained by trying these cases together. . . . And were plaintiffs' claims to proceed to trial, distinct witnesses and documentary proof would be required to establish (or rebut) their separate claims. The interest in economy is affirmatively disserved by forcing these many parties to attend a common trial at which these separate, unrelated claims, only a fraction of which implicates the rights of any one party, would be resolved.

*Kalie, et al. v. Bank of America, Corp., et al.*, 297 F.R.D. 552, 559 (S.D.N.Y. 2013).   For these reasons, Defendants' arguments for severance or dismissal due to misjoinder of the parties fail at this time, but are subject to reconsideration before trial.

### C.   Plaintiffs' Claims Are Not Time-Barred[11]

Defendants object that Plaintiffs' claims are time-barred.  *See, e.g.*, Mem. Supp. West Town Mot. to Dismiss, p. 19, ECF No. 161-1.   RESPA requires that actions brought pursuant to 12 U.S.C. § 1607 be asserted within one year "from the date of the occurrence of the violation."  Defendants cite this Court's decision in *Hawkins v. Chick*, No. DKC 09-0661, 2009 WL 4017953, at *7 (D. Md. Nov. 17, 2009) for the proposition that the date of the occurrence of the violation is "the closing date on the property at issue."  Plaintiffs allege that the class members all retained Genuine Title for settlement and title services and Defendant Lenders on the purchase and/or refinance of their residences from 2009 to 2014. However, most Plaintiffs did not bring claims until the Amended Complaint was filed in January of 2015.  The final sixteen Plaintiffs did not bring their claims until the Second Amended Complaint was filed in May of 2015.  Therefore, in order to avoid dismissal for untimely filing, Plaintiffs must demonstrate that their claims warrant equitable tolling. [12]

---

[11] Plaintiffs and Eagle National agreed at this Court's November 24, 2015 hearing that Plaintiffs' RESPA claim against Eagle National is time-barred.  Plaintiffs conceded that more than one year had elapsed from the time the Eagle National Plaintiffs' cause of action arose to their naming of Eagle National in the Amended Complaint.  Eagle National's Motion to Dismiss is GRANTED with respect to Plaintiffs' RESPA claim.  Accordingly, Plaintiffs' RESPA claim against Eagle National is DISMISSED.

[12] Defendants contend that any tolling of a RESPA claim is limited to three years because the language of 12 U.S.C. § 2614 is best read as a statute of repose.  Defendants cite one case for this proposition—*Pedraza v. United Guaranty Corp.*, 114 F. Supp. 2d 1347, 1353-54 (S.D. Ga. 2000).  This Court is not persuaded that it should adopt this position.  Consequently, this Court does not automatically bar tolling beyond three years.

### a.      RESPA Claims are Eligible for Equitable Tolling

Defendants argue that RESPA's statute of limitations is jurisdictional and, therefore, not subject to equitable tolling. *See, e.g.*, Mem. Supp. West Town Mot. to Dismiss, p. 21, ECF No. 161-1.  However, the United States Supreme Court recently concluded in *Kwai Fun Wong* that "time bars in suits between private parties are presumptively subject to equitable tolling." *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1630 (2015).  Additionally, this Court has previously held that "[t]he doctrine of equitable tolling is applicable to RESPA claims." *Grant v. Shapiro & Burson, LLP, et al.*, 871 F. Supp. 2d 462, 470 n. 10 (D. Md. 2012). Therefore, Plaintiffs' RESPA claims are eligible for equitable tolling.

### b.      The Statute of Limitations will be Tolled

This Court in *Grant* observed that, in order to toll RESPA's statute of limitations, "a plaintiff must allege with specificity 'fraudulent concealment on the part of the defendants' and the inability of the plaintiff, despite due diligence, to discover the fraud. *Grant*, 871 F. Supp. 2d at 470, n. 10. (citing *Kerby v. Mortg. Funding Corp.*, 992 F. Supp. 787, 792-98 (D. Md. 1998)).  A plaintiff must make " 'distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery [was], so that the court may clearly see, whether by the exercise of ordinary diligence, the discovery might not have been made.' " *Id.* (quoting *Brown v. Wilmington Finance, et al.*, No. CCB-11-699, 2012 WL 975541, at *4-5 (D. Md. Mar. 21, 2012)).

### i.      Affirmative Concealment

With respect to affirmative concealment, Plaintiffs have alleged that Genuine Title's kickbacks were concealed from Plaintiffs and were not disclosed on the Plaintiffs' HUD-1

Settlement Statements, indicating fees charged.  Furthermore, Plaintiffs claim that Genuine Title and Defendant Lenders failed to disclose their business relationship.  When regulators began to investigate the scheme, Plaintiffs claim that Genuine Title drafted sham Title Services Agreements to disguise cash payments as legitimate fees for alleged services provided by referring brokers and back-dated those agreements.  These allegations satisfy the element of affirmative concealment.

### ii.      Due Diligence

As a result of Defendants' acts of concealment, Plaintiffs contend that they could not have reasonably known of their cause of action until contacted by Plaintiffs' attorneys. Rather than sleeping on their rights, Plaintiffs' counsel has undergone a large-scale review of Defendant Genuine Title's computer system.  It is only through this review, aided by early discovery and a proprietary software system, that potential plaintiffs have been identified. The Second Amended Complaint, filed by Plaintiffs' counsel, clearly states that "[a]ll Plaintiffs learned of the illegal kickbacks less than one year prior to filing of the [Second Amended] Complaint[13] and could not have known about the Kickback Scheme until contacted by undersigned counsel."  Second Am. Compl. at ¶ 94, ECF No. 138.  In light of these unique circumstances, Plaintiffs have demonstrated that equitable tolling is warranted in this case and that all Plaintiffs, with the exception of the Eagle National Plaintiffs, brought their claims within one year of the date they could have first known of their cause of action through due diligence.

---

[13] The Second Amended Complaint states "less than one year prior to filing of the *Complaint*."  Plaintiffs' attorneys have stated in their filings that this was a typographical error.  The paragraph should read, "*Second Amended Complaint*."  *See* Opp'n to West Town Mot. to Dismiss, p. 25, ECF No. 177-1.

**D.**   **Plaintiffs Have Adequately Stated Claims For Relief Under RESPA**

    **a.**   **RESPA Section 8(a)**

RESPA Section 8(a) provides the following:

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.
> 12 U.S.C. § 2607(a).

Defendants contend that Plaintiffs have failed to allege a nexus between the provision of a "thing of value" and the alleged "agreement" as they have drawn no connection between their specific loans and the alleged kickback scheme. For example, Plaintiffs have alleged that West Town brokers Casazza and Erickson received kickbacks from Genuine Title. However, the West Town Plaintiffs have pleaded no connection between those payments and their specific loans or referral to Genuine Title. In fact, the West Town Plaintiffs do not allege that either Casazza or Erickson had any involvement with their specific loans.

In response, Plaintiffs have directed this Court to paragraph two of the Second Amended Complaint, which states that "all Plaintiffs used Defendant Genuine Title as a result of the Defendant Lenders' referral thereto." Additionally, while Plaintiffs in this case have not all named the specific brokers they worked with as participants in the kickback scheme, they have alleged, with respect to all of the Defendant Lenders, that other brokers currently unknown also participated in the kickback scheme. At this stage in the proceedings, this Court is satisfied that Plaintiffs have stated a claim for relief under RESPA Section 8(a), 12 U.S.C. § 2607(a).

b.    **RESPA Section 8(b)**

RESPA Section 8(b) provides the following:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.
> 12 U.S.C. § 1607(b).

Defendants object that Plaintiffs have alleged a general conspiracy, but not a specific fee-splitting arrangement as required by Section 8(b). They correctly cite the Fourth Circuit's decision in *Boulware* for the proposition that Section 8(b) requires a "portion" or "percentage" of some overcharge to be kicked back or "split" with a third party. *See Boulware*, 291 F.3d at 265. However, given that an essential component of the Plaintiffs' case is Defendants' concealment of the alleged kickback arrangement, this Court is satisfied at this stage of the proceedings that Plaintiffs have stated a claim for relief under Section 8(b). Plaintiffs have alleged that they paid Genuine Title for settlement services, that "[b]ut for" the kickback scheme, their settlement fees "would have been much lower," and that Genuine Title kicked-back money and advertising material to referring brokers in proportion to the business they were receiving from them. That Plaintiffs cannot plead with more specificity a precise overcharge that was split with the referring brokers is understandable at this time, given that Defendants allegedly concealed their relationship and crafted sham agreements to disguise their actions. Consequently, Defendants' Motions to Dismiss are DENIED with respect to Plaintiffs' RESPA claims.

## II.   MD. CODE, REAL PROP. § 14-127 ("Section 14-127") Claims (Count I)

Plaintiffs allege that "Defendant Lenders by and through their agents and/or employees received Free Marketing Materials and/or Referring Cash for referrals of business as part of real estate settlement services provided to Plaintiffs and Class members, in violation of . . . MD. CODE ANN., REAL PROP. § 14-127." Second Am. Compl. at ¶ 246, ECF No. 138. "As a direct and proximate cause of Genuine Title's actions," Plaintiffs claim, "the Plaintiffs and Class Members used Genuine Title for title and settlement services, paid for said services and were deprived of impartial and fair competition in violation of [Section 14-127]." *Id.* at ¶ 254.

Section 14-127 provides that "[a] person who has a connection with the settlement of real estate transactions involving land in the State may not pay to or receive from another any consideration to solicit, obtain, retain, or arrange real estate settlement business." MD. CODE. ANN., REAL PROP. § 14-127(c)(1). "A person who violates [Section 14-127] is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 6 months or a fine not exceeding $1,000 or both." *Id.* at § 14-127(e). Defendants have objected that Section 14-127 does not provide Plaintiffs a private right of action. *See, e.g.,* Mem. Supp. Eagle National Mot. to Dismiss, p. 18, ECF No. 167-1. Plaintiffs cite no case concluding otherwise and admit that "[t]his is a case of first impression," but argue that Section 14-127 implicitly provides a private right of action. Opp'n Mot. to Dismiss, p. 41-42, ECF No. 180-1. They propose that this Court consider three factors relied upon by the Court of Appeals of Maryland in determining whether a statute implies a private right of action: (1) the presence or absence of an indication of legislative intent to create a private remedy; 2)

whether the plaintiff is one of the class for whose special benefit the statute was enacted; and 3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff. *Id.* (citing *Erie Ins. Co. v. Chops*, 332 Md. 79, 90-91 (1991) (citing *Cort v. Ash*, 422 U.S. 66 (1975))). Based on these factors, they contend, this Court should find an implied right of action in Section 14-127.

Plaintiffs cite a 2010 Maryland Fiscal and Policy Note discussing the federal RESPA statute in detail and acknowledging that under RESPA, the "person may also be subjected to civil liability." *Id.* at 41 (citing Md. Fisc. Note, 2010 Sess. H.B. 1471). Additionally, they cite an Attorney General Opinion concluding that the statute was designed to prevent brokers from steering purchasers of real property to particular settlement services providers. *Id.* (citing 78 Md. Op. Atty. Gen. 86). Plaintiffs argue that this court should apply the same civil remedies under RESPA to Section 14-127. *Id.* at 42. In response, Defendants point out that neither the statute on its face nor its legislative history suggest an intent to create a private right of action. Reply. Supp. Mot. to Dismiss, p. 7-8, ECF No. 195. Rather, Defendants contend, the statute contains a " 'general prohibition.' " *Id.* (citing *Baker v. Montgomery Co.*, 427 Md. 691, 710-11 (2012)). The Court of Appeals of Maryland has held that "[i]n a case in which neither the statute nor the legislative history reveals a [legislative] intent to create a private right of action for the benefit of the plaintiff, we need not carry the *Cort v. Ash* inquiry further." *Id.* (citing *Baker*, 427 Md. at 710 (citing *Nw. Airlines, Inc. v. Transp. Workers Union*, 451 U.S. 77, 95 n. 1 (1981))).

Given that no Maryland state court decision has resolved the present issue, this Court has certified by Separate Order the question to the Court of Appeals of Maryland, pursuant to MD. CODE ANN., CTS. & JUD. PROC. § 12-603.  The question to be certified is:

1.      Does MD. CODE ANN., REAL PROP. § 14-127 imply a private right of action?

Based on the foregoing, all pending Motions to Dismiss are STAYED as to Plaintiffs' Section 14-127 claims in Count I of the Second Amended Complaint, pending clarification from the Court of Appeals of Maryland.

## III.   Maryland Consumer Protection Act ("MCPA") Claims (Count II)

Plaintiffs allege that Genuine Title and the Defendant Lenders "knowingly concealed payment of kickbacks and their relationships from Plaintiffs and Class Members," "failed to disclose to Plaintiffs and Class Members that Genuine Title was participating with referring loan officers/banks and Genuine Sham Marketing companies and failed to disclose their affiliated business relationships among other things."  Second Am. Compl. at ¶¶ 256, 258, ECF No. 138.  Plaintiffs claim that "[t]hese omissions constituted unfair and/or deceptive trade practices as defined by" the Maryland Consumer Protection Act ("MCPA"), MD. CODE ANN., COM. LAW § 13-301.  *Id.* at ¶ 259.  "But for Genuine Title's Kickback Scheme," they argue, "Plaintiffs and Class members were deprived of impartial and fair competition and the costs paid by Plaintiffs and Class members to Genuine Title for settlement services would have been much lower."  *Id.* at 261.

Under the MCPA, "[u]nfair or deceptive trade practices include any [f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or

misleading consumers, . . . [or] [f]ailure to state a material fact if the failure deceives or tends to deceive." MD. CODE ANN., COM. LAW § 13-301(1). "[A]ny person may bring an action to recover for injury or loss sustained by him *as a result of* a practice prohibited by this title." *Id.* at § 13-408(a) (emphasis added). In their respective motions to dismiss, several Defendants have argued that Plaintiffs fail to state a claim for relief under the MCPA. *See, e.g.,* West Town Mem. Supp. Mot. to Dismiss, p. 38-46, ECF No. 161-1.

In order to state a claim for relief under the MCPA, a Plaintiff must " 'establish the nature of the actual injury or loss that he or she allegedly sustained as a result of [a] prohibited practice.' " *Allen v. CitiMortgage, Inc.*, No. CCB-10-2740, 2011 WL 3425665, at *10 (D. Md. Aug. 4, 2011) (quoting *Lloyd v. General Motors Corp.*, 916 A.2d 257, 280 (Md. 2007)). This Court dealt with the precise issue presented here in a 2009 case, dismissing Plaintiffs' MCPA claims for failure to plead a causal connection between the alleged MCPA violation and the injury suffered. *See Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 566 (D. Md. 2009). The Plaintiffs in *Petry* brought a class action lawsuit against Wells Fargo and Long & Foster Real Estate, Inc. ("Long & Foster"), claiming that the two companies engaged in an illegal home mortgage kickback scheme. *Id.* at 560-61. Plaintiffs alleged that Defendants established a sham mortgage lender, to which Long & Foster referred homebuyers. *Id.* Unbeknownst to the consumers, all loans obtained through that sham lender were actually funded by Wells Fargo. *Id.* As a reward for this stream of referrals, Wells Fargo would direct finder's fees to Long & Foster, allegedly driving up the rates and fees paid by Plaintiffs. *Id.* Among other claims, Plaintiffs alleged that the Defendants violated the MCPA by misrepresenting the sham lender's true function. *Id.* at 566. This court rejected

their claim because "Plaintiffs themselves [had] allege[d] that it was Defendants' 'illegal kickback scheme that artificially inflated the fees and interest rate paid by Plaintiffs,' and not the alleged misrepresentations." *Id.* (citing Opp'n to Mot. to Dismiss at 47).   This court noted that Plaintiffs may only bring an action under the MCPA to recover for injury sustained "*as a result of*" a prohibited practice." *See id.*   Accordingly, this Court dismissed Plaintiffs' MCPA claim "[b]ecause Plaintiffs ha[d] not alleged that it was the misrepresentations themselves that caused the alleged inflated fees and interest rates." *Id.* (citing *Sacks v. Phillip-Morris, Inc.*, No. WMN-95-1840, 1996 WL 780311, at *2 (D. Md. Sept. 19, 1996)).

This Court in *Sacks v. Phillip-Morris, Inc.* dismissed an MCPA claim because of the "tenuous causal connection" between an alleged MCPA violation and the injury Plaintiffs suffered. *See Sacks*, 1996 WL 780311 at *2.   The Plaintiffs in *Sacks* brought suit against Phillip-Morris, Inc. after two individuals died in a fire started by a Phillip-Morris cigarette. *Id.* at *1.   Among other claims, Plaintiffs alleged that Phillip-Morris violated that MCPA by intentionally making misrepresentations and withholding information about the "technical feasibility of manufacturing a 'fire-safe' cigarette." *Id.*   They argued "that the misrepresentations themselves were the cause of the defective design, which was, in turn, the cause of the injury." *Id.* at 2.   "[H]ad Defendant informed the public of its ability to produce a 'fire-safe' cigarette," Plaintiffs argued, "the public would have exerted economic pressure on Defendant to produce such a product." *Id.* at *2 (citing Plaintiffs' Opposition at 7-8). Therefore, "[a]s a 'reasonable corporation,' Defendant would have changed its design to a fire-safe alternative. *Id.*   This Court rejected the Plaintiffs' argument, observing "that [the

decedents'] deaths were caused by defectively designed cigarettes, not by any alleged misrepresentations made by Defendant." *Id.* The Plaintiffs had stated unequivocally that " '[t]he defect in Defendant's product caused the demise of Plaintiff's decedents.' " *Id.* (citing Plaintiffs' Opposition at 4). Finding "no authority for such an expansive application of the statute," this Court dismissed the Plaintiffs' MCPA claim. *Id.*

In this case, as in *Petry* and *Sacks*, the Plaintiffs have plainly stated that "Genuine Title's Kickback Scheme" caused their alleged injury. However, their MCPA claim "centers on [Defendants'] knowing concealment." *See, e.g.,* Opp'n West Town's Mot. to Dismiss, p. 39, ECF No. 177-1. In order to state a claim under the MCPA, Plaintiffs must plead facts demonstrating that the alleged concealment and/or misrepresentations themselves caused injury, rather than the kickback scheme. *See Petry*, 597 F. Supp. at 566. Plaintiffs have pleaded a causal connection too "tenuous" to proceed. *See Sacks*, 1996 WL 780311, at *2. This is especially true given the heightened pleading requirement for fraud claims under Rule 9(b) of the Federal Rules of Civil Procedure. A claim of fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The circumstances include the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d. 769, 777 (4th Cir. 2013) (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

Like in *Sacks*, this Court finds "no authority for such an expansive application of the statute." It is well established that "[f]ederal courts abstain out of deference to the paramount interests of another sovereign, and the concern is with principles of comity and

federalism." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723 (1996).  This Court will not expand the MCPA, a state law, beyond the scope of existing Maryland state precedent. Accordingly, all pending Motions to Dismiss are GRANTED with respect to Plaintiffs' MCPA claims.  Plaintiffs' MCPA claims are DISMISSED as to all parties in this case.

## IV.   **Plaintiffs Have Sufficiently Alleged *Respondeat Superior* Liability**

Because the Second Amended Complaint does not allege that any of the Defendant Lenders themselves received kickbacks, but rather their employees, Defendant Lenders argue that Plaintiffs must properly plead *respondeat superior* liability in order to state a claim against them. *See, e.g.*, Mem. Supp. PNC Mot to Dismiss, p. 15, ECF No. 165-1.  Under the doctrine of *respondeat superior*, they contend, Plaintiffs must show that the named brokers' conduct was "in furtherance of the employer's business and authorized by the employer." *Id.* (citing *Antonio v. SSA Security, Inc.*, 110 A.3d 654, 658 (2015)).  Here, they argue, Plaintiffs have not pleaded facts sufficient to establish that the mortgage brokers named in this case were acting on behalf of their employers by participating in the alleged kickback scheme.  *Id.* at 16.  On the contrary, Defendants contend, the alleged monetary kickbacks were paid to brokers themselves, not to the Defendant Lenders.  *Id.* at 16.  Furthermore, they argue, Plaintiffs do not allege that the marketing materials offered as kickbacks induced any of the named plaintiffs to borrow from Defendant Lenders.  Reply Supp. PNC Mot. to Dismiss, p. 10, ECF No. 196.

Plaintiffs respond that the phrase "authorized by" does not mean ' "authority expressly conferred [by the employer], but whether the act was such as was incident to the performance of the duties entrusted to the employee by the employer, *even [if] in opposition to*

*his express and positive orders.*"  Pl.'s Response in Opp'n, p. 26, ECF No. 175-1 (citing *Blue Rider*

*Fin., Inc. v. Harbor Bank Maryland*, No. ELH-11-3101, 2013 WL 1196204 at *6 (D. Md. Mar.

22, 2014) (quoting *Sawyer v. Humphries*, 587 A.2d 467, 470 (1991))).  This Court's decision in

*Blue Rider* is highly instructive on this issue.  The Plaintiffs in *Blue Rider* brought claims of

fraud, negligence, and negligent misrepresentation against Dunn, a Vice President at Harbor

Bank, arising out of his alleged mismanagement of Plaintiffs' escrow financing.  *Blue Rider*,

2013 WL 1196204 at *5.  Additionally, Plaintiffs claimed that Harbor Bank was vicariously

liable for Dunn's alleged tortious conduct.  *Id.*  Harbor Bank proceeded to file a motion to

dismiss the complaint, arguing that Plaintiffs had not sufficiently pleaded *respondeat superior*

liability.  *Id.*  This Court rejected their argument, finding that Dunn's conduct did fall within

the scope of his employment.  *Id.* at *14.

This Court in *Blue Rider* stated that " 'an act may be within the scope of employment,

even though forbidden or done in a forbidden manner, or consciously criminal or tortious . .

.' " *Id.* at *6 (quoting *Tall v. Bd. of Sch. Commis. Of Baltimore City*, 706 A.2d 659, 667 (1998)).

This Court identified several factors for assessing whether an employee's conduct falls within

the scope of his employment, including:

> (a) whether or not the act is one commonly done by such servants; (b) the
> time, place and purpose of the act; (c) the previous relations between the
> master and the servant; (d) the extent to which the business of the master is
> apportioned between different servants; (e) whether the act is outside the
> enterprise of the master or, if within the enterprise, has not been entrusted to
> any servant; (f) whether or not the master has reason to expect that such an
> act will be done; (g) the similarity in quality of the act done to the act
> authorized; (h) whether or not the instrumentality by which the harm is done
> has been furnished by the master to the servant; (i) the extent of departure
> from the normal method of accomplishing an authorized result, and (j)
> whether or not the act is seriously criminal.

*Id.* at *7 (quoting *Great Atl. & Pac. Tea Co. v. Noppenberger*, 171 Md. 378, 391 (1937)). With respect to Dunn, this Court noted that Dunn's handling of Plaintiff's financing clearly fell within the ordinary scope of a bank vice president's job responsibilities and that the transaction at issue certainly fell within the enterprise of banking. *Id.* Furthermore, the "instrumentality" by which Dunn allegedly harmed the Plaintiffs—his position, offices, and communications infrastructure at Harbor Bank—were all furnished to him by the bank. *Id.* Finally, there was no indication that Dunn's acts were performed outside of normal business hours or that he was a new hire. *Id.*

Like in *Blue Rider*, Plaintiffs have alleged that the named brokers in this case were engaged in home mortgage lending, a function well within the scope of their job responsibilities. Additionally, there is no indication that they engaged in the alleged kickback scheme after-hours or away from their offices. On the contrary, it was only through their positions as mortgage brokers at Defendant Lenders' offices that they were able to recruit clients and refer them to Genuine Title. The "instrumentality" of the brokers' alleged harm was their status as mortgage brokers, employed by Defendant Lenders. As this Court stated in *Blue Rider*, the fact that Defendant Lenders did not authorize their brokers' allegedly tortious participation in the kickback scheme does not mean that the brokers acted outside the scope of their employment by participating in that scheme. Finally, marketing materials allegedly provided to the named brokers as kickbacks included Defendant Lenders' names. *See, e.g.*, Pl.'s Ex. 11 (PNC); Pl.'s Ex. 13 (MetLife), ECF No. 138-1. While Plaintiffs have not specifically alleged that these marketing materials resulted in business for Defendant Lenders, that is not dispositive, especially at this stage of the proceedings. *See Blue Rider*,

27

2013 WL 1196204 at *12 (". . .[T]his case is only at the pleading stage. Evidence that is more strongly suggestive of a benefit to Harbor Bank may emerge in discovery. At this juncture, Blue Rider has articulated sufficient facts that the Court cannot say, as a matter of law, that Dunn's alleged conduct was outside the scope of his employment—an issue that . . . is ordinarily a question for the fact finder.")  For these reasons, any and all arguments to dismiss Plaintiffs' claims against Defendant Lenders for failure to allege *respondeat superior* liability fail.

**V.**     **Plaintiffs' Claims Against Emery Federal Credit Union Shall Be Severed and Transferred to the Cincinnati Division of the United States District Court for the Southern District of Ohio**

Defendant Emery contends that all claims against it "should be dismissed because the Emery Plaintiffs are bound by a forum selection clause in their Membership Agreement, which prohibits venue in this Court."  Mem. Supp. Emery Mot. to Dismiss, p. 7, ECF No. 171-1.  Alternatively, Emery argues that the claims against it should be severed from the other claims in this case and transferred to the Cincinnati Division of the United States District Court for the Southern District of Ohio.  *Id.* at 7-8.  Emery claims that the Emery Plaintiffs "signed up to be members of Emery FCU, which was required before obtaining a mortgage loan from the credit union."  *Id.* at 8.  Therefore, Emery argues, the Emery Plaintiffs are bound by Emery's Membership Agreement, which provides as follows: "As permitted by applicable law, you agree that *any legal action regarding this Agreement* shall be brought in the county in which the Credit Union is located."  *Id.* (citing Membership Agreement initial paragraph ¶ 34) (emphasis added).  Emery Federal Credit Union is located in Hamilton County, Ohio.  *Id.*

Plaintiffs object that the forum selection clause does not apply to their claims because the alleged kickback scheme between the Genuine Defendants and Emery is in no way "regarding" the Membership Agreement. Pl.'s Response in Opp'n, p. 10-13. While this Court has previously held that similar forum selection clauses do apply to non-contract claims, they argue that the claims in this case lack the "type of close relationship between the allegations and the agreement" present in those cases. *Id.* at 12. Plaintiffs further contend that "[b]ecause the [forum selection] clause points to a federal venue, *forum non conveniens* does not apply . . . , dismissal would be improper," and this Court should "apply [28 U.S.C.] § 1404(a) to determine whether transfer to the federal district court in Hamilton County is appropriate." *Id.* at 9-10.

In determining whether a forum selection clause applies, federal courts begin by determining which law governs the clause's enforceability and applicability. *See Varsity Gold, Inc. v. Lunenfeld*, No. CCB-08-550, 2008 WL 5243517 at *2 (D. Md. Dec. 12, 2008) (citing *Eisaman v. Cinema Grill Systems, Inc.*, 87 F. Supp. 2d 446, 448 (D. Md. 1999)). "If the underlying action is based on federal question jurisdiction, federal law applies. *Id.* (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590 (1991)). Here, Plaintiffs claims are based on federal question jurisdiction. *See* Second Am. Compl. at ¶ 56 (ECF No. 138). Therefore, federal law dictates this Court's analysis. "[F]ederal law presumes mandatory forum selection clauses to be *prima facie* enforceable for claims within their scope 'unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances.' " *Varsity Gold*, 2008 WL 5243517 at *2. Assessing the enforceability and applicability of a forum selection clause requires a three-step analysis. *Id.* First, this Court must determine

whether the clause is mandatory. *Id.* If so, the clause is presumptively enforceable. *Id.* Second, this Court must identify whether the specific claims in this case fall within the scope of the clause. *Id.* If they do fall within the clause's scope, the clause presumptively bars their adjudication outside of the designated forum. *Id.* Third, this Court must determine whether the party opposing enforcement has rebutted the presumption of enforceability by proving that enforcement would be unreasonable. *Id.*

In *Belfiore v. Summit Federal Credit Union*, this Court considered the enforceability of a forum selection clause identical to the one in this case. *See Belfiore v. Summit Federal Credit Union*, 452 F. Supp. 2d 629, 631 (D. Md. 2006). This Court held, unequivocally, that the clause was "mandatory" because it "contain[ed] 'clear language showing that jurisdiction is appropriate only in the designated forum.' " *Id.* at n. 2 (citing *Koch v. Am. Online, Inc.*, 139 F. Supp. 2d 690, 693 (D. Md. 2000)). For the same reasons, the forum selection clause in this case is also mandatory. Therefore, it is presumptively enforceable, and this Court will proceed to the second step of the analysis.

Plaintiffs contend that their claims against Emery are not "regarding the agreement" and, therefore, do not fall within the scope of the forum selection clause. However, they cite no case from this circuit in which a Defendant's motion to transfer or dismiss was denied because Plaintiffs' claims did not fall within the scope of a forum selection clause. On the contrary, this Court has repeatedly interpreted forum selection clauses like the one at issue as applying to a broad array of claims related to the parties' contractual relationship. *See, e.g., Belfiore*, 452 F. Supp. 2d at 632 (holding that Plaintiff borrower's claims against Defendant credit union under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq., were

"regarding" the credit union's Membership and Account Agreement); *Varsity Gold*, 2008 WL 5243517 at *3 (holding that Plaintiff product developer's claims of tortious interference with contractual or business relations and unjust enrichment against Defendant sales representative arose out of or were related to the Sales Representative Agreement). "[P]leading alternate non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms." *Belfiore*, 452 F. Supp. 2d at 632 (citing *Crescent Int'l, Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944 (3d Cir. 1988)). "[C]ourts in this circuit have consistently found facially contractual forum selection clauses to apply to related tort claims." *Varsity Gold*, 2008 WL 5243517 at *3.

In order to obtain a home mortgage from Emery Federal Credit Union, a borrower who is not already a member of the credit union must sign up to join the credit union. Declaration of Troy Cyrus, ¶ 6, ECF No. 171-2. Emery Federal Credit Union's Membership and Account Agreement states that it "covers your rights and responsibilities concerning your accounts and the rights and responsibilities of the Credit Union providing this Agreement." Membership Account Agmt., ECF No. 171-8. Additionally, it provides that "[a]ny conflict regarding what you and our employees say or write will be resolved by reference to this agreement." *Id.* The agreement's forum selection clause is drafted broadly to cover "any legal action" regarding the agreement. *Id.* Plaintiffs' factual allegations in this case focus on referrals made to Plaintiffs by mortgage brokers employed by Emery and Plaintiffs' alleged harm as a result of a kickback scheme that motivated the brokers to make those referrals. Those referrals supposedly occurred around the time of closing, and

involved loans obtained from Emery by the Emery Plaintiffs.   Given these connections between the terms of the membership agreement and Plaintiffs' allegations, and the fact that this Court has previously interpreted similar forum selection clauses as covering non-contractual tort and FCRA claims, Plaintiffs claims in this case are covered by Emery's forum selection clause.  This Court now proceeds to the final step in its analysis.

Finally, this Court must determine whether Plaintiffs have rebutted the presumption of enforceability by proving that enforcement would be unreasonable.  They have not.  As in *Belfiore*, nothing suggests "fraud or overreaching" in the forum selection clause's conception. *Belfiore*, 452 F. Supp. 2d at 632.  Additionally, there is no suggestion that enforcing the forum selection clause will deny the Emery Plaintiffs of their day in Court.  *See id.* at 633.  In fact, only two of the five sets of Emery Plaintiffs currently reside in Maryland.   Therefore, Plaintiffs have not rebutted the presumption of enforceability of the forum selection clause, it will be applied to their claims against Emery, and this Court must now determine whether to dismiss or transfer Plaintiffs' claims.

The United States Supreme Court's decision in *Atlantic Marine* sets out the mechanisms available for enforcement of forum selection clauses.  *Atlantic Marine Const. Co. v. U.S. District Court for the Western District of Texas, et al.*, 134 S. Ct. 568, 579 (2013).  While the doctrine of *forum non conveniens* dictates the enforcement of a forum-selection clause pointing to a state or foreign forum, 28 U.S.C. § 1404(a)[14] is a codification of that doctrine for cases in which the transferee forum is within the federal court system.  *Id.* at 579-580.  "When the

---

[14] 28 U.S.C. § 1404(a) provides the following: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Id.* at 581. "Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.* These circumstances include public-interest factors, but "a court evaluating a § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." *Id.* at 582. The "practical result is that forum-selection clauses should control except in unusual cases." *Id.*

The Emery forum-selection clause directs that "legal action . . . be brought *in the county in which the Credit Union is located.*" The United States Court of Appeals for the Fourth Circuit has adopted "the widely-accepted rule that forum selection clauses that use the term "in [a state]" express the parties' intent as a matter of geography, permitting jurisdiction in both the state and federal courts of the named state, whereas forum selection clauses that use the term "of [a state]" connote sovereignty, limiting jurisdiction over the parties' dispute to the state courts of the named state." *FindWhere Holdings, Inc. v. Systems Environment Optimization, LLC*, 626 F.3d 752, 755 (4th Cir. 2010). The Fourth Circuit reiterated this position in Devil's Advocate, LLC and held that the forum selection clause at issue in that case, because it permitted the filing of a complaint in the Alexandria Division of the United States District Court for the Eastern District of Virginia, should not have been dismissed under the doctrine of *forum non conveniens. Devil's Advocate, LLC v. Grynberg Petroleum Company*, 588 Fed. Appx. 264 (4th Cir. 2014) (unpublished). Since the forum selection clause in this case permits jurisdiction in the Cincinnati Division of the United States District Court for the Southern District of Ohio, this Court limits its inquiry to whether or not the case should

be transferred to that Court, pursuant to 28 U.S.C. § 1404(a).  Given that transfer should only be denied in "extraordinary circumstances" and that the parties have not presented any compelling public-interest factors that weigh against transferring this case, *see Atlantic Marine*, 124 S. Ct. at 581-82, Emery's Motion to Transfer is GRANTED.  Consequently, all claims currently pending against Defendant Emery will be TRANSFERRED to the Cincinnati Division of the United States District Court for the Southern District of Ohio.

## CONCLUSION

For the reasons stated above, West Town Bank & Trust's Motion to Dismiss the Second Amended Complaint (ECF No. 161) is GRANTED IN PART, DENIED IN PART, and STAYED IN PART; Net Equity Financial's Motion to Dismiss the Second Amended Complaint (ECF No. 162)  is GRANTED IN PART, DENIED IN PART, and STAYED IN PART; Wells Fargo Home Mortgage and Wells Fargo Bank, N.A.'s Motion to Dismiss the Second Amended Complaint is GRANTED IN PART and STAYED IN PART; PNC Bank, N.A. and PNC Mortgage's Motion to Dismiss the Second Amended Complaint (ECF No. 165) is GRANTED IN PART, DENIED IN PART, and STAYED IN PART; Eagle National Bank's Motion to Dismiss the Second Amended Complaint (ECF No. 167) is GRANTED IN PART and STAYED IN PART; MetLife Bank, N.A. and MetLife Home Loans, LLC's Motion to Dismiss the Second Amended Complaint (ECF No. 168) is GRANTED IN PART, DENIED IN PART, and STAYED IN PART; Competitive Advantage Media Group, LLC and Dog Days Marketing, LLC's Motion to Dismiss the Second Amended Complaint (ECF No. 169) is GRANTED IN PART, DENIED IN PART, and STAYED IN PART; JPMorgan Chase Bank, N.A.'s Motion to Dismiss the

Second Amended Complaint is GRANTED IN PART and STAYED IN PART; Emery Federal Credit Union's Motion to Dismiss, or in the alternative to Sever and Transfer the Case (ECF No. 171) is GRANTED IN PART, DENIED IN PART, and STAYED IN PART; Bank of America, N.A.'s Motion to Dismiss the Second Amended Complaint (ECF No. 172) is DENIED AS MOOT; E Mortgage Management's Motion to Dismiss the Second Amended Complaint (ECF No. 203) is GRANTED IN PART, DENIED IN PART, and STAYED IN PART; the Joint Consent Motion Regarding Wells Fargo Home Mortgage, Inc. and Wells Fargo, N.A.'s Pending Motions (ECF No. 205) is GRANTED IN PART and DENIED IN PART; and the Joint Consent Motion Regarding JPMorgan Chase Bank, N.A.'s Pending Motions (ECF No. 206) is GRANTED IN PART and DENIED IN PART. By separate Order, this Court will certify the following question to the Court of Appeals of Maryland: "Does MD. CODE ANN., REAL PROP. § 14-127 imply a private right of action?"

Dated:         December 9th, 2015


_/s/_____

Richard D. Bennett
United States District Judge