IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EDWARD J. AND VICKI FANGMAN, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. RDB-14-0081 |
| | * | |
| GENUINE TITLE, LLC, *et al.* | * | |
| | * | |
| Defendants. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM ORDER

Plaintiffs Edward J. Fangman and Vicki Fangman ("the Fangmans") and forty-six other Plaintiffs (collectively "Plaintiffs") bring this purported class action lawsuit against Genuine Title, LLC ("Genuine Title"); Brandon Glickstein, Inc.; Dog Days Marketing, LLC ("Dog Days Marketing"); Competitive Advantage Marketing Group, LLC ("Competitive Advantage") (collectively "Genuine Defendants"); Wells Fargo Home Mortgage, Inc. and Wells Fargo, N.A. ("Wells Fargo"); West Town Bank & Trust ("West Town"); PNC Mortgage and PNC Bank, N.A. ("PNC"); MetLife Home Loans, LLC and MetLife Bank, N.A. ("MetLife"); Net Equity Financial ("Net Equity"); Eagle National Bank ("Eagle National"); E Mortgage Management ("E Mortgage"); and JP Morgan Chase Bank ("Chase") (collectively "Defendant Lenders") alleging violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2607(a), (b), and MD. CODE ANN., REAL

PROP. § 14-127 ("Section 14-127").[1]   Currently pending before this Court is Defendants Wells Fargo[2], West Town, Net Equity, Emery Federal Credit Union ("Emery")[3], Eagle National[4], Chase, E Mortgage Management, and MetLife's (collectively "Movants") Joint Motion to Suspend Plaintiffs' Discovery Rights and Restrict Use of Third Party Personal and Financial Information (ECF No. 146).[5]   The parties' submissions have been reviewed, and a hearing on the pending motion was held before this Court on December 9, 2015.   For the reasons that follow, Defendants' Joint Motion to Suspend Plaintiffs' Discovery Rights and Restrict Use of Third Party Personal and Financial Information (ECF No. 146) is GRANTED IN PART and DENIED IN PART.   Specifically, this Court will not suspend Plaintiffs' discovery rights or restrict Plaintiffs' future contact with potential class members,

---

[1] Plaintiffs' claims under the Maryland Consumer Protection Act, MD. CODE ANN., COM. LAW § 13-301 were dismissed by this Court's Amended Order, dated December 9, 2015 (ECF No. 214).  By that same Amended Order, nine Motions to Dismiss Plaintiffs' claims under MD. CODE ANN., REAL PROP. § 14-127 were stayed, pending clarification from the Court of Appeals of Maryland as to whether Section 14-127 implies a private right of action.

[2] Pursuant to this Court's Amended Order dated December 9, 2015 (ECF No. 214), this Court will suspend consideration of the pending Motion with respect to Wells Fargo.

[3] Emery was previously named as a Defendant in this case, but all claims against Emery were transferred to the Cincinnati Division of the United States District Court for the Southern District of Ohio by this Court's Amended Order dated December 9, 2015 (ECF No. 214).  Therefore, Defendants' Joint Motion (ECF No. 146) is DENIED AS MOOT with respect to Emery.

[4] Plaintiffs' RESPA claims against Eagle National were dismissed by this Court's Amended Order dated December 9, 2015 (ECF No. 214).  Therefore, Plaintiffs' claim under MD. CODE ANN., REAL PROP. § 14-127 is the only remaining claim against Eagle National.

[5] Specifically, the Movants move to rescind this Court's Orders dated July 8, 2014 (ECF No. 27) and October 31, 2014 (ECF No. 42), and to suspend Plaintiffs' right to conduct discovery in this action until:
>     (a) this case is at issue;
>     (b) a Rule 26(f) conference between all joined parties has occurred; and
>     (c) a Scheduling Order has been entered.
In addition, the Movants seek the entry of an Order:
>     (a) protecting all confidential and sensitive personal and financial information relating to absent members of the putative class (and other third party borrowers who closed loans with Genuine Title, LLC) which the Plaintiffs have sought through premature discovery in this case; and
>     (b) requiring the Plaintiffs to cease the use of such information obtained through the issuance of subpoenas to third party deponents and the Receiver of Genuine Title, LLC unless and until a class is certified in this action.

but will enter a Confidentiality Order governing the discovery of sensitive third-party personal and financial information.

## **BACKGROUND**

Plaintiffs' factual allegations were set forth fully in this Court's Memorandum Opinion dated December 9, 2015 (ECF No. 211). The relevant procedural history of this case is as follows: Plaintiffs Edward J. Fangman and Vicki Fangman ("the Fangmans") filed the initial class action complaint in this case against Genuine Title, LLC ("Genuine Title") on December 6, 2013. *See* Compl., ECF No. 2. The Complaint asserted only claims on behalf of a purported class of borrowers who obtained loans from Genuine Title between 2007 and 2011. Compl. at ¶ 1, ECF No. 2. On July 2, 2014, this Court held a conference call with the parties. Following that call, this Court issued a Letter Order dated July 8, 2014 (ECF No. 27), granting Plaintiffs leave to amend the Complaint and permitting counsel for Genuine Title to withdraw from this action in light of Genuine Title's insolvency.

According to Plaintiffs, they made clear to this Court during the call that they sought discovery for the purpose of amending their Complaint to add additional parties given Genuine Title's insolvency. *See* Pl.'s Response, p. 3-4, ECF No. 150-2. Plaintiffs allege that "[t]he Court indicated that its ruling would not operate to prohibit discovery." *Id.* at 3. Subsequently, Plaintiffs issued subpoenas *duces tecum* to the Maryland Insurance Administration and several third parties[6], requesting information about Genuine Title and an alleged kickback scheme involving the Defendant Lenders. After several parties objected to

---

[6] Defendants object that many of these third-party subpoenas were broader in scope than initially disclosed by Plaintiffs, in both time and subject matter, seeking *all* documents related to the Genuine Defendants and documents from years prior to 2007 and after 2011 (*i.e.*, broader than the temporal limitations of the then-existing complaint). Defs' Joint Mem., p. 11, ECF No. 145-2.

their subpoenas, Plaintiffs submitted a letter to this Court on July 30, 2014, seeking clarification of the scope of authorized discovery (ECF No. 28).[7]  Also in July of 2013, Plaintiffs filed a Petition for Emergency Appointment of a Receiver for the limited purpose of retrieving and preserving the documents, books, and records of Genuine Title in the Circuit Court for Baltimore County, Maryland.  That court granted the petition on July 30, 2014.  The Receiver immediately seized records that Plaintiffs allege were scheduled for destruction.  *See* Pl.'s Response, p. 5, ECF No. 150-2. Jay Zuckerberg, Genuine Title's owner, provided the Receiver with information necessary to access Genuine Title's server.

In response to Genuine Title's failure to appoint counsel or respond to litigation, Plaintiffs filed a [SEALED] Motion for Discovery Prior to the Time Specified in Rule 26(d) (ECF No. 39).  In their Motion, Plaintiffs requested the ability to conduct limited discovery for the purpose of amending the Complaint and adding additional parties.  This Court GRANTED that Motion via Letter Order on October 31, 2014, following a conference call held that same day (ECF No. 42).

Shortly thereafter, Plaintiffs served a subpoena *duces tecum* on the Receiver, and began working with the Receiver to extract documents and records responsive to the subpoena. Plaintiffs have uncovered many of Genuine Title's records, but claim that they have purposively limited their search to information pertaining to those lenders believed to be involved in the alleged kickback scheme that is the focus of this action.  *See* Pl.'s Response, p. 7, ECF No. 150-2.  Furthermore, Plaintiffs claim that they have not disseminated the information in any way, and have maintained the documents in a secure manner, although

---

[7] Defendants contend that Plaintiffs learned before submitting this letter "that Genuine Title did not intend to hire new counsel to defend this case."  Defs' Joint Mem., p. 11, ECF No. 145-2.

they have used the contact information found within Genuine Title's records to contact a small group of Plaintiffs who they believe were impacted by the alleged kickback scheme.  *Id.*

On January 2, 2015, the Fangmans and thirty other Plaintiffs filed an Amended Complaint on behalf of themselves and the alleged class, adding Brandon Glickstein, Inc., Dog Days Marketing, Competitive Advantage, and all-but-one of the Defendant Lenders as Defendants in this case.  Am. Compl., p. 5-6, ECF No. 47.  Chase, the final Defendant Lender to be added, was named as a Defendant in the Second Amended Complaint, filed on May 20, 2015.  Second Am. Compl. at ¶ 3, ECF No. 138.  An additional sixteen Plaintiffs were named at that time.  *Id.* at p. 1.

## ANALYSIS

### I.    This Court Will Not Suspend Plaintiffs' Discovery Rights

Movants object that Plaintiffs have conducted discovery where "*none* of the claims asserted by the Plaintiffs are at issue, *no* Rule 26(f) Scheduling Conference has occurred and *no* Scheduling Order has been issued."[8]   Defs' Joint Mem., p. 3, ECF No. 145-2. Furthermore, after July 29, 2015, Plaintiffs no longer needed "discovery to determine whether the Fangmans could meet the standard for class certification of their claims against Genuine Title – as it was insolvent and apparently willing to subject itself to a judgment by default."  *Id.* at 20.  Therefore, Movants contend, Plaintiffs' discovery requests after that point "were, by [Plaintiffs'] own admissions, designed to identify new plaintiffs in order to sue new defendant lenders which the Fangmans did not themselves have standing to sue – a quintessential abuse of the discovery process and invasion of the privacy rights of numerous

---

[8] This Court has now ruled on Defendants' Motions to Dismiss (ECF No. 214) and a Scheduling Order in this case was entered on December 14, 2015.

borrowers." *Id.* For these reasons, the Movants urge this "Court to . . . rescind its prior discovery orders and to prohibit the Plaintiffs' counsel from using any information or documents produced by the Receiver" *Id.* at p. 21.

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides the following:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. Pro. 26(b)(1) (2015). "Plaintiffs [are] entitled to pre-certification discovery to establish the record the court needs to determine whether the requirements for a class action suit have been met." *See, e.g., Buchanan v. Consolidated Stores Corp.* 217 F.R.D. 178, 185 (citing *Miller v. Baltimore Gas & Elec. Co.*, 202 F.R.D. 195, 201-02 (D. Md. 2001)). The United States Supreme Court has contemplated discovery for this purpose. *Griffin v. Harley Davidson Credit Corp.*, No. 8:08-cv-466-HFF-BHH, 2010 WL 233764, at *1 (D.S.C. Jan. 14, 2010) (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 354 n. 20 (1978) ("We do not hold that class members' names and addresses never can be obtained under the discovery rules. There may be instances where this information could be relevant to issues that arise under Rule 23, *see* n. 13, *supra,* or where a party has reason to believe that communication with some members of the class could yield information bearing on these or other issues.")). The Fourth Circuit has indicated the same. *Id.* (citing *Doctor v. Seaboard Coast Line Railroad Co.,* 540 F.2d 699, 707 n.

25 (4th Cir. 1976) (approving use of precertification discovery to determine if action was maintainable as class action)).

While Defendants accept that Plaintiffs are entitled to pre-certification discovery, they object that Plaintiffs' use of discovery to identify new Plaintiffs in order to sue new Lender Defendants is an impermissible use of pre-certification discovery. Defendants cite the Manual for Complex Litigation (Fourth) § 21.14 (2014) for the proposition that "[d]iscovery of unnamed members of a proposed class requires a demonstration of need." However, the one and only decision cited in the Manual for that proposition is *Baldwin & Flynn v. National Safety Associates*, 149 F.R.D. 598 (N.D. Cal. 1993), a case in which Plaintiffs sought not to examine a defunct Defendant's computer system, as in the present case, but rather to depose fifteen unnamed plaintiffs. *Baldwin*, 149 F.R.D. at 599. Furthermore, that case states that "the extent of pre-certification discovery is at the discretion of the trial court." *Id.* at 600 (citing *Kamm v. California City Development Co.*, 509 F.2d 205, 209 (9th Cir. 1975)).

Defendants cite several cases from courts outside the Fourth Circuit for the proposition that pre-certification discovery must not be used for client solicitation. *See, e.g.*, *First Am. Title Ins. Co. v. Superior Court*, 53 Cal. Rptr. 3d 734, 744 (Cal. Ct. App. 2007) (denying discovery to plaintiff who was not a member of the proposed class and stating that "the potential abuse of the class action procedure is overwhelming"); *Flanigan v. American Finance System of Georgia, Inc.*, 72 F.R.D. 563 (M.D. Ga. 1976) (holding that Rule 23 should not be used to enable client solicitation as neither plaintiffs nor plaintiffs' counsel have a duty to act as unsolicited champion of others); *Roshto v. Chrysler Corp.*, 67 F.R.D. 28, 30 (E.D. La.

1975) ("The awakening of sleeping plaintiffs by either the plaintiff or the Court would fly in the teeth of the centuries-old doctrine against the solicitation of claims").  These cases are in many ways distinguishable from the present case.  For example, the California Court in *First American* denied pre-certification discovery because the plaintiff seeking the discovery was not a member of the putative class.  *First Am.,* 53 Cal. Rptr. 3d at 743.  Additionally, plaintiffs in *Flanigan* had not demonstrated how they would "in any way satisfy the basic requirement of Rule 23."  *Flanigan*, 72 F.R.D. at 563.  "Until they do," the Court held, "they may not engage in discovery for the purpose of 'digging up' information to satisfy Rule 23."  *Id.*  Finally, *Roshto* is unique in that the Court expressly declined to follow standard procedures of class action suits under Rule 23, but rather proceeded pursuant to Section 211(b) of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*  *Roshto*, 67 F.R.D. at 28.

The present case poses unique discovery challenges because Genuine Title, the Defendant at the heart of the alleged kickback scheme, is no longer in business and is no longer represented in this matter.  Plaintiffs' counsel have suggested that many of Genuine Title's documents were either destroyed or slated for destruction until seized by a Court-appointed Receiver.  Only through the use of a sophisticated software system have Plaintiffs been able to uncover the extent of the alleged kickback scheme, and to identify parties who may have been affected.  Plaintiffs' counsel contend that, without their efforts, the class members would never have discovered their cause of action due to Defendants' concealment of their unlawful relationship.  It was Plaintiffs' counsel's concern that RESPA's one year statute of limitations would run before potential class members became aware of their cause

of action that motivated Plaintiffs to file a Motion for Early Discovery, which this Court granted via Letter Order dated October 31, 2014 (ECF No. 42).

*CashCall, Inc. v. Superior Court*, 159 Cal. App. 4th 273 (2008) involved a situation similar to the present case.  The plaintiffs in *CashCall* brought a class action suit against CashCall, Inc., a consumer lender, alleging violations of privacy rights in connection with CashCall's secret monitoring of their collection calls.  *CashCall*, 159 Cal. App. 4th at 278-79. After discovering that their named Plaintiffs' calls had not been recorded, but that approximately 551 individuals had been monitored, Plaintiffs filed a motion for pre-certification discovery of the identities of absent class members.  *Id.* at 291.  "[B]ecause of the secret nature of CashCall's monitoring of its employees' calls with customers," they argued, "none of the class members could have known their privacy rights had been violated."  *Id.*  The trial court granted Plaintiffs' motion and required that CashCall provide names and contact information for the customers it had monitored.  *Id.* at 292.  The Court of Appeal affirmed, agreeing with the trial court that the rights of the class members outweighed the potential for abuse of the class action procedure.  *Id.* at 292-93; *see also* 27 C.J.S. Discovery § 27 (2015) ("Contact information regarding the identity of potential class members is generally discoverable, so that the lead plaintiff may learn the names of other persons who might assist in prosecuting the case.").

Similar to *CashCall*, Plaintiffs in the present case requested pre-certification discovery in order to identify the scope of an allegedly concealed kickback scheme and to identify potential class members who could not otherwise have known of their cause of action.  This Court subsequently granted Plaintiffs' request for pre-certification discovery, an exercise of

its broad discretion to control discovery under Rule 26 of the Federal Rules of Civil Procedure. Therefore, this Court will not suspend Plaintiffs' discovery rights at this time.

## II. This Court Will Not Restrict Plaintiffs' Future Contact With Potential Class Members

Movants contend that Plaintiffs have solicited absent class members with misleading mailings, including (1) a postcard dated May 14, 2013 that reads "We are currently investigating allegations of *widespread overcharging* of customers and the payment of illegal *kickbacks*," Defs' Ex. G, ECF No. 145-9 (emphasis added), and (2) a letter dated January 9, 2015 that reads "We are currently investigating allegations of the payment of illegal kickbacks by Genuine Title to numerous *lenders* . . . ," Defs' Ex. H, ECF No. 145-10 (emphasis added). Defs' Joint Mem., p. 17, ECF No. 145-2. With respect to the postcard, Defendants object that the Second Amended Complaint contains no allegation of "overcharge*"* and that "Plaintiffs' allegations of widespread kickbacks are disputed and misleading." *Id.* With respect to the letter, Defendants object that Plaintiffs have only alleged "kickbacks" to loan officers, not to the Defendant Lenders themselves. *Id.* In light of these misleading statements and "the recognized potential for abuse that arises from pre-certification mailings to putative class members," Movants argue that "due cause exists" for this Court "to restrain further communications with putative class members by the Plaintiffs and their counsel, absent review and approval by the Court, or unless and until this case is certified as a class action." *Id.*

The Plaintiffs have cited *Gulf Oil Co., et al. v. Bernard, et al.*, 452 U.S. 89, 99-104 (1981), in which the United States Supreme Court observed that class actions "present . . . opportunities for abuse as well as problems for courts and counsel in the management of

cases." *Gulf Oil*, 452 U.S. at 100. "Because of the potential for abuse," the Court reasoned,

"a district court has both the duty and the broad authority to exercise control over a class

action and to enter appropriate orders governing the conduct of counsel and parties." *Id.*

Under Rule 23(d) of the Federal Rules of Civil Procedure, courts "may issue orders that . . .

protect class members and fairly conduct the action" and "impose conditions on the

representative parties." Fed. R. Civ. Pro. 23(d) (2015). *Gulf Oil* involved a class action claim

by Gulf Oil Company employees against Gulf Oil Company and one of the unions at its

Port Arthur, Texas refinery, alleging racial discrimination in employment. *Gulf Oil*, 452 U.S.

at 91.

Following a conciliation agreement with the Equal Employment Opportunity

Commission ("EEOC"), including a requirement that Gulf Oil "offer backpay to alleged

victims," Gulf Oil sent notices to its eligible employees, "stating the exact amount available

to each person in return for execution within 30 days of a full release of all discrimination

claims dating from the relevant period." *Id.* Around that same time, plaintiffs' counsel held

a meeting with employees discussing the case. *Id.* at 93-94. According to Gulf Oil, at that

meeting Plaintiffs "recommended that the employees not sign the releases." *Id.* at 92-93.

Upon Gulf Oil's Motion, a United States District Court issued a series of orders banning

communication between counsel and actual or potential class members, with limited

exceptions. *Id.* at 95-97. The Supreme Court held that the District Court had abused its

discretion in issuing the communications bans. *Id.* at 104. The Court observed that "[t]he

order interfered with [plaintiffs'] efforts to inform potential class members of the existence

of a lawsuit, and may have been particularly injurious—not only to [the plaintiffs] but to the

class as a whole—because the employees at that time were being pressed to decide" whether or not to accept Gulf Oil's offer and opt-out of the litigation. *Id.* at 101. Additionally, the Court observed, the order "made it more difficult for [plaintiffs], as the class representatives, to obtain information about the merits of the case from the persons they sought to represent." *Id.* "Because of these potential problems," the Court concluded, "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* "[T]he mere possibility of abuses does not justify routine adoption of a communications ban that interferes with the formation of a class or the prosecution of a class action in accordance with the Rules." *Id.* at 104.

This Court applied *Gulf Oil* in *Ross, et al., v. Wolf Fire Protection, Inc., et al.*, 799 F. Supp. 2d 518, 521 (D. Md. 2011), a class action against Wolf Fire Protection brought by its employees, alleging violations of the Fair Labor Standards Act ("FLSA"). *Ross*, 799 F. Supp. 2d at 521. Shortly after plaintiffs filed the Complaint, a Wolf Fire Protection attorney held a meeting with the company's employees. *Id.* She informed them that she was conducting an investigation into the allegations, had prepared an affidavit, and that they should sign it if "they agreed with the contents." *Id.* In response, plaintiffs requested a protective order " 'prohibiting further unapproved contact with class members' " and striking the affidavits collected. *Id.* at 525. Plaintiffs contended that the meeting was an attempt to " 'stave off a wave of additional plaintiffs' " and " 'subvert the proper function of [the] class action.' " *Id.* This Court reasoned that plaintiffs seeking a protective order must "show that (1) 'a particular form of communication has occurred or is threatened' and (2) 'the particular form

of communication at issue is abusive in that it threatens the proper functioning of the litigation.' " *Id.* at 526 (quoting *Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696, 697-98 (S. D. Ala. 2003) (collecting cases)).[9]  "A communication is sufficiently abusive to warrant a protective order if it seeks to coerce prospective class members into excluding themselves from the litigation, contains false, misleading or confusing statements, or undermines "cooperation with or confidence in class counsel." *Id.*  (citing *Cox*, 214 F.R.D. at 698 (collecting cases)).  This Court denied plaintiffs' requests to strike and for a protective order, concluding that the defendants' communication with absent class members was not a concern, even considering " 'the danger of . . . coercion between employers and employees.' " *Id.* at 526 (citing *E.E.O.C. v. Morgan Stanley & Co.*, 206 F. Supp. 2d 559, 562 (S.D.N.Y. 2002)).  "[T]he record does not demonstrate a 'blatant attempt' to subvert the class action process, or show the bad faith typically present in cases in which broad protective orders, such as the one sought by the Plaintiffs, have been issued," this Court concluded.  *Id.* at 527. "There is no indication that the Defendants will engage in bad faith tactics in the future." *Id.*

In support of their argument for restraints on plaintiffs' future communications, Defendants cite *Randolph v. PowerComm Const., Inc.*, 41 F. Supp. 3d 461, 465 (D. Md. 2014), a case in which this Court found attempted settlement communications between a defendant employer and plaintiff employees abusive and issued a protective order prohibiting future discussions.  *Randolph*, 41 F. Supp. 3d at 467.  That case is distinguishable from the present case in that the communications in *Randolph* were made by defendants to plaintiffs who had

---

[9] As in *Ross*, the allegedly abusive communications in *Cox* were also issued by the defendants, not the plaintiffs.  The "alleged misrepresentation" was that a letter sent to putative class members by defendants characterized defendants' alleged conduct as "inadvertent," while the plaintiffs characterized it as "knowing, willful and intentional."  *Cox*, 214 F.R.D. at 698-99.  The Court found for Defendants, finding that this distinction was not relevant to plaintiffs' breach of contract claim.  *Id.*

already opted-in to a conditionally certified collective action.  *Id.* at 463, 466-67.  More importantly, the plaintiffs in that case were "confused and misled" by the negotiations, " 'illustrative of the many harms which may occur when employers are allowed to 'bargain' with their employees.' "  *Id.* at 467 (quoting *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354-55 (11th Cir. 1982)).

Additionally, Defendants cite *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999 (11th Cir. 1997), where the United States Court of Appeals for the Eleventh Circuit held that the District Court abused its discretion in authorizing plaintiffs to communicate their allegations against Motel 6 to current and former Motel 6 employees through mass mailings.  The Court found that the communications were injurious to the employer and the integrity of the judicial system and were "surely causing serious and irreparable harm to Motel 6's reputation and to its relationship with its employees." *Jackson*, 130 F.3d at 1004.

Rather than misleading potential class members, Plaintiffs' communications in this case have clearly conveyed the existence of a cause of action of which the recipients would have remained unaware had they not received notification.  Like in *Gulf Oil*, restrictions on Plaintiffs' communications with absent class members may "interfer[e] with their efforts to inform potential class members of the existence of a lawsuit."  *Gulf Oil*, 452 U.S. at 101. While the Second Amended Complaint does not allege the "overcharges" referenced in Plaintiffs' May 14, 2013 postcard, the Complaint did allege "inflated settlement charges" and "elevated fees."  Compl. at ¶¶ 27, 43, ECF No. 2.  This language was removed when the complaint was amended, but long after the postcard was distributed.  Plaintiffs' January 9, 2015 letter may reference kickbacks paid "to numerous lenders," whereas the Complaint

14

describes kickbacks to specific brokers, but Plaintiffs have successfully pled the Defendant

Lenders into this action under the doctrine of *respondeat superior*.[10]   Additionally, unlike in

*Jackson*, the allegations against Genuine Title and Defendant Lenders have already been well-

publicized as a result of the Consumer Financial Protection Bureau's investigation.  *See, e.g.,*

*CFPB Takes Action Against Wells Fargo and JPMorgan Chase for Illegal Mortgage Kickbacks,*

Consumer        Financial        Protection        Bureau        (Jan.        22,        2015),

http://www.consumerfinance.gov/newsroom/cfpb-takes-action-against-wells-fargo-and-

jpmorgan-chase-for-illegal-mortgage-kickbacks/.   Furthermore, unlike the mass mailings at

issue in *Jackson*, Plaintiffs' counsel have stated that they "advise[d] a limited pool of

consumers."  Pl's Response, p. 14, ECF No. 150-2.  Overall, Defendants have not presented

a "clear record and specific findings" of abusive conduct or threatened conduct by Plaintiffs

that warrants "a limitation and . . . interference with the rights of the parties."  *Gulf Oil*, 452

U.S. at 101.   Consequently, Defendants' argument for restrictions on Plaintiffs' future

contact with and use of potential class members' personal and financial information fails.

### III.   This Court Will Enter a Confidentiality Order Governing the Discovery of Sensitive Third-Party Personal and Financial Information.

Movants object that, by complying with an unlawfully broad subpoena issued by

Plaintiffs, Genuine Title and its appointed Receiver breached their obligation to protect the

private information of borrowers whose loans Genuine Title closed.  Defs' Joint Mem., p.

19, ECF No. 145-2.  They specifically cite the Gramm-Leach-Bliley-Act, 15 U.S.C. § 6801 *et*

*seq.*, and its limitations on disclosure of nonpublic personal information by "financial

---

[10] *See* this Court's Memorandum Opinion dated December 9, 2015 (ECF No. 211), denying Defendants' Motion to Dismiss the Second Amended Complaint for failure to plead *respondeat superior*.

institutions." *Id.* at p. 18.   Movants claim that "the documents and data subpoenaed were produced by the Receiver without any objection or redaction, and without any limitation on the temporal or topical scope of the production or any restriction on the use of such material."   *Id.* at 21.   Therefore, they have requested that this Court issue an order "protecting all confidential and sensitive personal and financial information . . . which the Plaintiffs have sought through premature discovery."   Defs' Joint Mot., p. 2, ECF No. 146.

Local Rule 104.13 provides as follows:

> Any proposed confidentiality order shall include (a) a definition of confidentiality consistent with Fed. R. Civ. P. 26(c); (b) a method for challenging particular designations of confidentiality with the burden remaining on the party seeking confidentiality to justify it under Rule 26(c); (c) a provision that whenever materials subject to the confidentiality order (or any pleading, motion or memorandum referring to them) are proposed to be filed in the Court record under seal, the party making such filing must simultaneously submit a motion and accompanying order pursuant to L.R. 105.11; and (d) a provision permitting the Clerk to return to counsel or destroy any sealed material at the end of the litigation.

Local Rule 104.13 (D. Md. 2015).

In light of the fact that Plaintiffs' discovery requests have included, and likely will include, the sensitive personal and financial information of absent class members and other third party borrowers who closed loans with Genuine Title, this Court will enter a Confidentiality Order governing discovery in this matter.   The parties are directed to submit

a Proposed Confidentiality Order[11], pursuant to Local Rule 104.13.   Accordingly, Defendants' Joint Motion to Suspend Plaintiffs' Discovery Rights and Restrict Use of Third Party Personal and Financial Information (ECF No. 146) is GRANTED IN PART and DENIED IN PART.  Specifically, this Court will not suspend Plaintiffs' discovery rights or restrict Plaintiffs' future contact with potential class members, but will enter a Confidentiality Order governing the discovery of sensitive third-party personal and financial information.

## CONCLUSION

For the reasons stated above, it is this 15th day of December, 2015, ORDERED that:

1.   Defendants' Joint Motion to Suspend Plaintiffs' Discovery Rights and Restrict Use of Third Party Personal and Financial Information (ECF No. 146) is GRANTED IN PART and DENIED IN PART;

2.   The parties shall submit a Proposed Confidentiality Order, pursuant to Local Rule 104.13; and

3.   The Clerk of the Court transmit a copy of this Memorandum Order to Counsel.


_____/s/_____
Richard D. Bennett
United States District Judge

---

[11] The Proposed Confidentiality Order shall include provisions with respect to the redaction of personal information as to any exhibits to be filed in this case.  However, the exhibits themselves will remain a matter of public record.  The public and the press have a qualified right of access to judicial documents and records filed in civil proceedings. *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014). The right of access exists even if no objections to a motion to seal are made. *See Bureau of Nat'l Affairs v. Chase*, Civ. No. ELH–11–1641, 2012 WL 3065352, at *2 (D. Md. July 25, 2012) (stating that a presumptive right to access exists after noting that no objections to sealing had been made). This right of access derives from both the "First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny." *Id.* (citations omitted).