IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EDWARD J. AND VICKI       *
FANGMAN, *et al.*,
      *
    Plaintiffs,
      *
    v.                         Civil Action No. RDB-14-0081
      *
GENUINE TITLE, LLC, *et al.*
      *
    Defendants.
      *

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

## MEMORANDUM ORDER

Plaintiffs Edward J. Fangman and Vicki Fangman ("the Fangmans") and forty-six other Plaintiffs (collectively "Plaintiffs") bring this purported class action lawsuit against Genuine Title, LLC ("Genuine Title"); Brandon Glickstein, Inc.; Dog Days Marketing, LLC ("Dog Days Marketing"); Competitive Advantage Marketing Group, LLC ("Competitive Advantage") (collectively "Genuine Defendants"); Wells Fargo Home Mortgage, Inc. and Wells Fargo, N.A. ("Wells Fargo"); West Town Bank & Trust ("West Town"); PNC Mortgage and PNC Bank, N.A. ("PNC"); MetLife Home Loans, LLC and MetLife Bank, N.A. ("MetLife"); Net Equity Financial ("Net Equity"); Eagle National Bank ("Eagle National"); E Mortgage Management ("E Mortgage"); and JP Morgan Chase Bank ("Chase") (collectively "Defendant Lenders") alleging violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2607(a), (b), and MD. CODE ANN., REAL

PROP. § 14-127 ("Section 14-127").[1]  Currently pending before this Court is Defendants Wells Fargo[2], West Town, Net Equity, Emery[3], Eagle National, Chase, E Mortgage, and MetLife's Joint Motion for a Protective Order (ECF No. 145) and PNC's Motion for a Protective Order (ECF No. 148).  The parties' submissions have been reviewed, and a hearing on the pending motions was held before this Court on December 9, 2015.  Via Letter Order dated December 10, 2015 (ECF No. 216), this Court requested supplemental briefing on the pending motions.  However, Defendants have since indicated their intent to forego supplemental briefing and "rest on the papers previously filed with the Court." Letter, ECF No. 231.  The deadline for supplemental briefing has passed, and this Court has received no further communications from the parties regarding the pending motions.  For the reasons that follow, Defendants' Joint Motion for a Protective Order (ECF No. 145) is DENIED, and PNC's Motion for a Protective Order (ECF No. 148) is also DENIED.

## BACKGROUND

Plaintiffs' factual allegations were set forth fully in this Court's Memorandum Opinion dated December 9, 2015 (ECF No. 211). The relevant procedural history of this case is as follows: Plaintiffs allege that they, and all class members, "were victims of an illegal kickback scheme whereby the Defendant[] [Lenders] . . . received unearned fees and

---

[1] This Court's Amended Order dated December 9, 2015 (ECF No. 214) stayed nine Motions to Dismiss Plaintiffs' claims under MD. CODE ANN., REAL PROP. § 14-127, pending clarification from the Court of Appeals of Maryland as to whether Section 14-127 implies a private right of action.  That same Amended Order dismissed Plaintiffs' RESPA claims against Eagle National.  Therefore, Plaintiffs' claim under MD. CODE ANN., REAL PROP. § 14-127 is the only remaining claim against Eagle National.

[2] Pursuant to this Court's Amended Order dated December 9, 2015 (ECF No. 214), this Court will suspend consideration of the pending Joint Motion with respect to Wells Fargo.

[3] Emery was previously named as a Defendant in this case, but all claims against Emery were transferred to the Cincinnati Division of the United States District Court for the Southern District of Ohio by this Court's Amended Order dated December 9, 2015 (ECF No. 214).  Therefore, Defendants' Joint Motion (ECF No. 145) is DENIED AS MOOT with respect to Emery.

kickbacks from Defendant[] Genuine Title, LLC" and a series of sham companies created by Genuine Title for the purpose of distributing kickbacks (collectively "Genuine Defendants"). Second Am. Compl. at ¶ 3, ECF No. 138.  The Consumer Financial Protection Bureau and the Maryland Attorney General have investigated this alleged kickback scheme.  *See, e.g.,* CFPB Takes Action Against Wells Fargo and JPMorgan Chase for Illegal Mortgage Kickbacks, Consumer Financial Protection Bureau (Jan. 22, 2015), http://www.consumerfinance.gov/newsroom/cfpb-takes-action-against-wells-fargo-and-jpmorgan-chase-for-illegal-mortgage-kickbacks/.

Plaintiffs have issued a subpoena to the Maryland Insurance Administration ("MIA"), dated May 15, 2015 (ECF No. 145-3).  That subpoena seeks the following records:

1. All written and/or recorded statements by Genuine Title, LLC and/or its agents, servants, representatives and/or employees in [the MIA's] possession, including, but not limited to the deposition transcripts of Jay Zuckerberg and Brandon Glickstein.[4]
2. A copy of Genuine Title, LLC's hard drive, network server(s), electronic data and/or computer files in [MIA's] possession.
3. A complete copy of any and all documents seized from Genuine Title, LLC and/or its agents, servants, representatives and/or employees.

MIA Subpoena, Def.'s Ex. A, p. 7, ECF No. 145-3.

Defendants have filed a Joint Motion for a Protective Order (ECF No. 145), requesting the entry of a protective order under Rule 26(c) of the Federal Rules of Civil Procedure (1) "forbidding the Plaintiffs from obtaining the records sought by them under" the MIA subpoena and (2) "requiring the Plaintiffs to withdraw the MIA subpoena."  Joint Mot., p. 1, ECF No. 145.  Additionally, PNC has filed a Motion for a Protective Order (ECF

---

[4] Plaintiffs allege that Jay Zuckerberg was Genuine Title's owner and that Brandon Glickstein was one of Genuine Title's marketing and account representatives.  Second Am. Compl. at ¶¶ 78, 81, ECF No. 138.

No. 148), requesting the entry of a protective order under Rule 26(c) of the Federal Rules of Civil Procedure prohibiting Plaintiffs from obtaining documents pursuant to the MIA subpoena.  PNC Mot., p. 1, ECF No. 148.[5]

## ANALYSIS

### I.   Defendants Have Standing to Seek a Protective Order Forbidding the MIA from Disclosing the Records Requested in the MIA Subpoena

Plaintiffs contend that Defendants lack standing to challenge the MIA Subpoena. Pl.'s Opposition, p. 11, ECF No. 150-2.  "Ordinarily," they argue, "a party does not have standing to challenge a subpoena issued to a non-party unless the party claims some personal right or privilege in the information sought by the subpoena."  *Id.*  (citing *United States v. Idema*, 118 F. App'x 740, 744 (4th Cir. 2005)).  Plaintiffs point out that Defendants have not claimed a personal right or privilege in the MIA's information that would confer standing upon all of them to seek protection from the Court.  *Id.*

"Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena"  *United States v. Idema*, 118 Fed. Appx. 740, 744 (4th Cir. 2005).  However, under Rule 26(c) of the Federal Rules of Civil Procedure,   "[a] *party* or any person from whom discovery is sought may move for a protective order in the court where the action is pending."  Fed. R. Civ. P. 26(c) (2015) (emphasis added).  "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or

---

[5] Defendants object that Plaintiffs have no urgent need to conduct early discovery and can wait until "the ordinary course of discovery after the issuance of a Scheduling Order in this case." Joint Mot., p. 2, ECF No. 145.  However, a Joint Scheduling Order has now been issued in this case and was approved by this Court on December 14, 2015.  Joint Scheduling Order, ECF No. 220.  Therefore, Defendants' objections to the MIA subpoena on the grounds that it is improper "early" discovery are now moot.

undue burden or expense, including . . . forbidding the disclosure or discovery . . . [or] forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." *Id.* This Court in *Sirpal v. Fengrong Wang*, No. WDQ-12-0365, 2012 WL 2880565 (D. Md. July 12, 2012) has recognized that a party may challenge a third party subpoena through a motion for a protective order. *Sirpal*, 2012 WL 2880565, at *4 n. 12 ("Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty . . . the court could construe the motion as one for a protective order, and consider the Rule 26 factors, including relevance, in deciding the motion") (citing *Wash. V. Thurgood Marshall Acad.*, 230 F.R.D. 18, 22 (D.D.C. 2005) (construing defendant's motion to quash subpoena served on third parties as a motion for protective order and applying analysis as it would for a motion to quash)); *see also HDSherer LLC v. Natural Molecular Testing Corp.*, 292 F.R.D. 305, 307 (D.S.C. 2013) (" 'Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty' " . . . Notably, however, Defendant has also made a motion for a protective order under Rule 26; therefore, Defendant has standing to challenge the subpoenas under Rule 26 standards, " 'regardless of whether [it has] standing to bring a motion to quash under Rule 45.' ") (quoting *Singletary v. Sterling Transp. Co.* 289 F.R.D. 237, 239, 240 n. 2 (E.D. Va. 2012).

Defendants contend that the records obtained by the MIA during their investigation "contain loan-specific information relating to borrowers that is protected by the Graham Leach Bliley Act." Def.'s Joint Reply, p. 13-14, ECF No. 514. Additionally, they argue that the records sought contain "confidential loan records" of the Defendant lenders themselves. *Id.* For the reasons stated above, Defendants have standing to challenge the MIA subpoena

5

by requesting a protective order that addresses their concerns, in accordance with Rule 26 of

the Federal Rules of Civil Procedure.  However, for the reasons stated *infra*, this Court will

not issue the order they have requested.

## II.   The MIA Subpoena is Not Overbroad

Defendants object that the MIA subpoena "transcends the temporal limitations of

the putative class proposed in the Second Amended Complaint."  Joint Mot., p. 2, ECF No.

145.   PNC specifically objects that "the MIA subpoena is overly broad.   It seeks all

documents in the MIA's possession that relate to Genuine Title, without regard to the

parties, claims, and time period alleged in the Second Amended Complaint."  PNC Mot. at ¶

12, ECF No. 148.  Plaintiffs have represented that they "seek information from the MIA

regarding its investigation . . ., most importantly, the deposition transcripts of Zuckerberg

and Glickstein."  Pl.'s Opposition, p. 10, ECF No. 150-2.  Plaintiffs argue that they are

seeking the information in the possession of the MIA not to "determine if a cause of action

exists," but to put themselves on par with Defendants who Plaintiffs speculate have "been

advised of the contents."  *Id.* at 13.

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides the following:

> Unless otherwise limited by court order, the scope of discovery is as follows:
> Parties may obtain discovery regarding any nonprivileged matter that is
> relevant to any party's claim or defense and proportional to the needs of the
> case, considering the importance of the issues at stake in the action, the
> amount in controversy, the parties' relative access to relevant information, the
> parties' resources, the importance of the discovery in resolving the issues, and
> whether the burden or expense of the proposed discovery outweighs its likely
> benefit. Information within this scope of discovery need not be admissible in
> evidence to be discoverable.

Fed. R. Civ. Pro. 26(b)(1) (2015).

"Plaintiffs [are] entitled to pre-certification discovery to establish the record the court needs to determine whether the requirements for a class action suit have been met." *See, e.g., Buchanan v. Consolidated Stores Corp.* 217 F.R.D. 178, 185 (citing *Miller v. Baltimore Gas & Elec. Co.*, 202 F.R.D. 195, 201-02 (D. Md. 2001)). The United States Supreme Court has contemplated discovery for this purpose. *Griffin v. Harley Davidson Credit Corp.*, No. 8:08-cv-466-HFF-BHH, 2010 WL 233764, at *1 (D.S.C. Jan. 14, 2010) (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 354 n. 20 (1978) ("We do not hold that class members' names and addresses never can be obtained under the discovery rules. There may be instances where this information could be relevant to issues that arise under Rule 23, *see* n. 13, *supra,* or where a party has reason to believe that communication with some members of the class could yield information bearing on these or other issues.")). The Fourth Circuit has indicated the same. *Id.* (citing *Doctor v. Seaboard Coast Line Railroad Co.,* 540 F.2d 699, 707 n. 25 (4th Cir. 1976) (approving use of precertification discovery to determine if action was maintainable as class action)).

Courts may restrict the scope of discovery requests, but "must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." *Innovative Therapies, Inc. v. Meents*, 302 F.R.D. 364, 377 (D. Md. 2014) (citing Fed. R. Civ. P. 26 advisory committee's note). "The burden is on the movant to establish good cause under Rule 26(c); the movant must set forth specific and particular facts, rather than broad conclusory statements as to why a protective order should issue." *Id.* (citing *Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006)). "In order to obtain a protective order, the moving party must demonstrate 'that the discovery sought lacks

relevance to the extent that the likelihood and severity of the harm or injury caused . . . outweighs any need for the information.' " *Id.* (citing *Baron*, 240 F.R.D. at 202). Rule 26 grants trial courts broad discretion "to decide when a protective order is appropriate and what degree of protection is required." *Id.* (citing Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2036).

In its Memorandum Order dated December 15, 2015, this Court acknowledged that "[t]he present case poses unique discovery challenges because Genuine Title, the Defendant at the heart of the alleged kickback scheme, is no longer in business and is no longer represented in this matter." *Fangman, et al., v. Genuine Title, et al.*, No. RDB-14-0081, 2015 WL 8915564, at *4 (D. Md. Dec. 15, 2015). The records requested in the MIA subpoena are "relevant" to Plaintiffs' action because they will likely include information about Genuine Title's activities and relationship with Defendants, information that Plaintiffs can no longer obtain from Genuine Title itself. *See* Fed. R. Civ. P. 26(b)(1) (instructing courts to consider "the parties' relative access to relevant information").

Plaintiffs' counsel have suggested that many of Genuine Title's documents were either destroyed or slated for destruction until seized by a Court-appointed Receiver. Only through the use of a sophisticated software system have Plaintiffs been able to uncover the extent of the alleged kickback scheme, and to identify parties who may have been affected. Plaintiffs' counsel requested pre-certification discovery in order to identify potential class members who could not otherwise have known of their cause of action. This Court subsequently granted Plaintiffs' request for pre-certification discovery, an exercise of its broad discretion to control discovery under Rule 26 of the Federal Rules of Civil Procedure.

8

Case 1:14-cv-00081-RDB   Document 240   Filed 02/12/16   Page 9 of 10


This Court has already declined to suspend Plaintiffs' discovery rights because of their clearly demonstrated need to obtain information about the extent of Genuine Title's actions, by whatever means they can. *See Fangman*, 2015 WL 8915564, at *5. For the same reasons, this Court rejects Defendants' pending request to prevent Plaintiffs from obtaining records from the MIA's investigation of Genuine Title.

## III.   A Confidentiality Order Will Protect Personal Identifying and Financial Information

Defendants argue that the "MIA subpoena seeks to invade the same kind of personal identifying and financial information belonging to putative class members and other individuals who closed real estate and loan transactions with Genuine Title, LLC that is the subject of the Movants' Motion to Suspend the Plaintiffs' Discovery Rights and Restrict Use of Third Party Personal and Financial Information." Joint Mot., p. 2, ECF No. 145. As stated *supra*, this Court has already ruled on the Defendants' Motion to Suspend Plaintiffs' Discovery Rights and Restrict Use of Third Party Personal and Financial Information (ECF No. 146). Via Memorandum Order dated December 15, 2015 (ECF No. 218), this Court granted Defendants' Motion in part, and denied it in part. Specifically, this Court refused to suspend Plaintiffs' discovery rights or restrict Plaintiff's future contact with potential class members, but directed the parties to submit a Joint Proposed Confidentiality Order, pursuant to Local Rule 104.3 (D. Md. 2015), governing the discovery of sensitive thirty-party personal and financial information. *Fangman,* 2015 WL 8915564, at *8.

In a Joint Rule 26(f) Status Report dated January 6, 2016, the parties stated that they were negotiating the terms of a Joint Confidentiality Order addressing the procedure for handling confidential information in accordance with this Court's Order. Status Report, p.

5, ECF No. 229.   In that same report , the parties stated that "they plan to develop a mutually agreeable protocol for the disclosure and discovery of electronically stored information." *Id.*   This Confidentiality Order should address Defendants' concerns and will ensure mutually agreeable handing and use of any personal identifying and financial information that may be present in records requested from the MIA.   A protective order further restricting Plaintiffs' discovery rights in the interest of safeguarding that information is not necessary.

<u>**CONCLUSION**</u>

For the reasons stated above, it is this 12th day of February, 2016, ORDERED that:

1.     Defendants' Joint Motion for a Protective Order (ECF No. 145) is DENIED;

2.     PNC's Motion for a Protective Order (ECF No. 148) is DENIED; and

3.     The Clerk of the Court transmit a copy of this Memorandum Order to Counsel.


_____/s/_____
Richard D. Bennett
United States District Judge