IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EDWARD J. AND VICKI     *
FANGMAN, *et al.*,

         *

      Plaintiffs,

         *

      v.                       Civil Action No. RDB-14-0081

         *

GENUINE TITLE, LLC, *et al.*

         *

      Defendants.

         *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiffs Edward J. Fangman and Vicki Fangman ("the Fangmans") and forty-six other Plaintiffs (collectively "Plaintiffs") have brought this purported class action lawsuit against Genuine Title, LLC ("Genuine Title"); Brandon Glickstein, Inc.; Dog Days Marketing, LLC ("Dog Days Marketing"); Competitive Advantage Marketing Group, LLC ("Competitive Advantage") (collectively "Genuine Defendants"); Wells Fargo Home Mortgage, Inc. and Wells Fargo, N.A. ("Wells Fargo"); West Town Bank & Trust ("West Town"); PNC Mortgage and PNC Bank, N.A. ("PNC"); MetLife Home Loans, LLC and MetLife Bank, N.A. ("MetLife"); Net Equity Financial ("Net Equity"); Eagle National Bank ("Eagle National"); E Mortgage Management ("E Mortgage"); and JP Morgan Chase Bank ("Chase") (collectively "Lender Defendants") alleging violations of the anti-kickback provisions of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2607(a), (b). Currently pending before this Court is Plaintiffs' Motion for Class Certification

[SEALED] (ECF No. 320) with respect to the West Town Class.[1]  The parties' submissions have been reviewed, and a hearing on the pending motion was held before this Court on October 27, 2016. For the reasons that follow, and for the reasons stated on the record at this Court's October 27, 2016 hearing, The West Town Plaintiffs' Motion for Class Certification [SEALED] (ECF No. 320) is GRANTED.

## BACKGROUND

This purported class action lawsuit involves an alleged home mortgage kickback scheme in which Defendant Genuine Title, LLC ("Genuine Title"), by itself and through sham companies, allegedly provided cash payments and marketing materials to mortgage lenders, including Defendant West Town Bank & Trust ("West Town"), representatives of which referred its clients to Genuine Title for settlement services.  Second. Am. Compl., ¶¶ 3-4, ECF No. 138. Plaintiffs allege violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2607(a), (b) (Count I).  *Id.* at ¶¶ 241-54.

Several of the mortgage lenders named as Defendants in connection with this alleged kickback scheme ("Lender Defendants") have entered into mediation with the Plaintiffs. This Court has preliminarily approved Settlement Agreements between the Plaintiffs and Defendants JPMorgan Chase Bank ("Chase") and Wells Fargo Home Mortgage, Inc. and Wells Fargo, N.A. ("Wells Fargo").  *See* Orders Granting Preliminary Approval, ECF Nos. 251, 286.  This Court has certified "for settlement purposes" the class of Plaintiffs who obtained mortgages from Chase (the "Chase Class") and the class of Plaintiffs who obtained

---

[1] As discussed *infra*, West Town is now the only Lender Defendant still litigating this action in this Court. The remaining lender defendants have either submitted a joint proposed settlement agreement to this Court or are in the process of mediation.  The named West Town Plaintiffs, and proposed class representatives of the West Town Class, are Jameson Cooper, Katherine Cooper, and Geraldine Walters.

mortgages from Wells Fargo (the "Wells Fargo Class"). *Id.* at 1-2. Plaintiffs have indicated that West Town is the only Lender Defendant moving forward with litigation in this Court at this time. *See* Mem. Supp. Mot. for Class Certification, p. 2, ECF No. 320-1.

Through discovery, the West Town Plaintiffs have identified approximately 400 borrowers who secured federally-related mortgage loans from West Town and whose loans were referred to Genuine Title for settlement services. *Id.* West Town has confirmed more than 200 of them as borrowers. *Id.* at 20. Named Plaintiffs and proposed Class Representatives Jameson Cooper, Katherine Cooper (the "Coopers"), and Geraldine Walters ("Walters") are three members of this putative class (the "West Town Class"). The Coopers refinanced their home mortgage with West Town in January of 2011. *Id.* at 13; J. Cooper Dep., Def. Ex. 5, p. 37:1-7, ECF No. 358-6. Their loan was brokered by West Town broker George Makoutz. Broker Agmt., Def. Ex. 10, ECF No. 358-11. Genuine Title is listed as Settlement Agent on the Cooper's HUD-1 form[2]. Cooper HUD-1, Pl. Ex. 15, ECF No. 320-16. Geraldine Walters obtained a reverse mortgage loan from West Town in August of 2011. Her mortgage was handled by West Town broker Curtis Cullison. Walters Dep., Def. Ex. 7, p. 47:6-9, ECF No. 358-8. Genuine Title is listed as Settlement Agent on Walters' HUD-1 form. Walters HUD-1, Def. Ex. 6, ECF No. 358-7.

Although Plaintiffs have indicated that they were dissatisfied with their settlement costs, there is no indication that they knew anything about West Town's alleged kickback scheme with Genuine Title. Def. Opp'n, p. 5-7, ECF No. 358. The alleged kickback relationship between Genuine Title and West Town was not disclosed on the HUD-1 forms.

---

[2] The HUD-1 Settlement Statement is a standard form indicating fees charged to a borrower by a mortgage lender or broker.

However, Genuine Title President Jay Zuckerberg has since stated that "[d]uring its existence, Genuine Title paid for marketing materials . . . on behalf of brokers, managers, banks, and other lenders . . . in exchange for an agreement . . . to refer borrowers to Genuine Title for title services." Zuckerberg Aff., Pl. Ex. 2, ¶ 4, ECF No. 320-3. Zuckerberg has further indicated that Genuine Title "pa[id] money to Referrers . . . for each borrower they, their office, or in some cases, their company referred to Genuine Title." *Id.* at ¶ 5. The costs of these "[a]greement[s] . . . were paid on a monthly basis based on the number of referred settlements in the previous month." *Id.* Zuckerberg indicated that "Genuine Title would have preferred to compete by providing lower pricing instead of paying Referring Agreement Costs and kickbacks," but this scheme was "more effective . . . even though it was prohibited by law." *Id.* at ¶ 6. Brandon Glickstein, Genuine Title's Lead Account and Marketing Representative, confirmed that Genuine Title sent money, through sham marketing companies, to "loan officers that were getting direct payment to refer title work to Genuine Title." Glickstein Dep., Pl. Ex. 8, p. 214:5-215:3, ECF No. 320-9.

In the wake of Genuine Title's insolvency, a receiver was appointed to secure Genuine Title's servers and electronic records. Mem. Supp. Mot. for Class Certification, p. 4, ECF No. 320-1. Plaintiffs' counsel extracted a spreadsheet ("TSS Spreadsheet") from Genuine Title's server, which documented loans referred to Genuine Title from roughly 2006 through 2013, including borrower names and referring loans officers. *Id.* Additionally, Plaintiffs have obtained more than 40,000 pages of bank records that document millions of dollars in payments from Genuine Title and the allegedly "sham" marketing companies to loan officers, branch managers, and other employees of the Lender Defendants. *See, e.g.,*

Genuine Title Checks, Pl. Ex. 9, ECF No. 320-10. Similarly, Plaintiffs have uncovered checks from Genuine Title to third-party marketing companies to provide marketing materials for loan officers and employees of the Lender Defendants. *See* Genuine Title Checks, Pl. Ex. 10, ECF No. 320-11. F&N Mailing Services has produced sample invoices issued to Genuine Title for production of marketing materials, sample marketing materials, and an email from a Genuine Title employee ordering production of the marketing materials for delivery to a specific loan officer. *See* Marketing Docs., Pl. Ex. 11, ECF No. 320-12.

Plaintiffs' counsel have represented that Defendants used various methods to hide this alleged kickback scheme, including some instances in which Genuine Title would issue checks to a spouse of a Lender Defendant's loan officer, who would in turn endorse the check to the loan officer for deposit in a personal bank account. Mem. Supp. Mot. for Class Certification, p. 7-8, ECF No. 320-1. In other cases, employees of the Lender Defendants would establish their own sham entity to receive payments from Genuine Title and the allegedly sham marketing companies. *Id.* at 8.

Plaintiffs' counsel obtained the names of the members of the putative West Town Class from the TSS Spreadsheet and West Town's loan records. *Id.* West Town's records indicate that the West Town Class members are "disbursed in a relatively tight geographic area, primarily contained to the southern Mid-Atlantic states." *Id.* at 9. Plaintiffs' counsel have indicated that West Town has the HUD-1s for the members of the putative West Town Class, which will reflect the amount they paid for settlement services, the basis for RESPA's statutory measure of damages. *Id.*

5

Evidence uncovered by Plaintiffs' counsel at this point in their investigation has revealed that West Town branch managers Chris Casazza and Brent Erickson (through his wife, Jami Erickson) both received checks from Genuine Title and the allegedly "sham" marketing companies. *See, e.g.,* Jami Erickson Checks, Pl. Ex. 19, ECF No. 320-20. Casazza and Erickson maintained a joint bank account into which they deposited some of the checks and, in turn, made payments to themselves and other loan officers at West Town's Bel Air branch. *See* Casazza/Erickson Checks, Pl. Ex. 20, ECF No. 320-21. West Town has identified five West Town loan officers who each referred a high volume of loans to Genuine Title during the time period alleged in the kickback scheme—Todd Tabor, Brian Portner, Jason McCotter, John Shiner, and Brian Brockmeyer—all of whom were employed at West Town's Bel Air office. *See* West Town Interrog., Pl. Ex. 13, p. 20-25, ECF No. 320-14. Furthermore, George Makoutz, branch manager in West Town's Ellicott City/Westminster branch, received a series of payments from Genuine Title through an LLC named Cambridge Business Services, which he paid to himself and others, including Jeanne Forney, an employee who referred more than 100 loans to Genuine Title. *See* CBS Checks, Pl. Ex. 23, ECF No. 320-24.

Plaintiffs have identified additional loan officers in West Town's Reisterstown, Abingdon, and Owings Mills branches who received checks from Genuine Title. Mem. Supp. Mot. for Class Certification, p. 11-12, ECF No. 320-1. Based on evidence they have uncovered thus far, Plaintiffs contend that the alleged kickback scheme was a "pattern of practice" that infected other branches in a similar fashion. *Id.* at 12. Discovery is ongoing.

Plaintiffs allege that the West Town Class members all retained Genuine Title for settlement and title services and West Town on the purchase and/or refinance of their residences from 2009 to 2014. However, West Town was not named as a Defendant in this action until the First Amended Complaint was filed in January of 2015.

## STANDARD OF REVIEW

To obtain class certification, the Plaintiffs must meet all four requirements of Rule 23(a) of the Federal Rules of Civil Procedure and at least one of the requirements of Rule 23(b). *See Gunnells v. Healthplan Servs.*, Inc., 348 F.3d 417, 423 (4th Cir. 2003). Plaintiffs must first establish the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a). With respect to Rule 23(b), the Plaintiffs in this case seek certification of the proposed class under Rule 23(b)(3) which requires a finding that common questions "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Plaintiffs bear the burden of showing that a proposed class satisfies the Rule 23 requirements . . . but they need not make that showing to a degree of absolute certainty . . . [i]t is sufficient if each disputed requirement has been proven by a preponderance of evidence." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012) (citations omitted). "[T]he court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Id.*

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotation marks and citation omitted). "Rule 23 does not set forth a

mere pleading standard . . . [a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common issues of law or fact, etc." *Id.* at 350.  In ruling on a class certification motion, a court must take a close look at the facts relevant to the certification question, even if those facts "tend to overlap with the merits of the case." *Thorn v. Jefferson–Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006); a*ccord Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 366 (4th Cir. 2004) ( "[W]hile an evaluation of the merits is not part of a Rule 23 analysis, the factors spelled out in Rule 23 must be addressed through findings, even if they overlap with issues on the merits.").

The Supreme Court has noted that " 'sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,' and that certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.' " *Wal–Mart*, 564 U.S. at 350-51 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).  However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."  *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194–95 (2013).  "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."  *Id.* at 1191.

<u>ANALYSIS</u>

I.      <u>Statute of Limitations Under the Real Estate Settlement Procedures Act</u>

Claims brought pursuant to Section 8 of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607, must be asserted within one year "from the date of the

occurrence of the violation, which generally refers to the date of closing for loan origination violations." *Grant v. Shapiro & Burson, LLP*, 871 F. Supp. 2d 462, 470 (D. Md. 2012) (internal quotation omitted).   Plaintiffs Jameson and Katherine Cooper (the "Coopers") settled on their West Town home mortgage loan in January of 2011, and Plaintiff Geraldine Walters ("Walters") settled on her West Town reverse mortgage in August of 2011.   First Am. Compl., ¶¶ 111-112, ECF No. 47.   However, the West Town Plaintiffs did not bring RESPA claims against West Town until the First Amended Complaint, naming West Town as a Defendant in this action for the first time, was filed on January 2, 2015.   *Id.* Accordingly, the named Plaintiffs, and all class members who closed on their loans prior to January 2, 2014[3], seek equitable tolling of RESPA's one-year statute of limitations.

In order to toll RESPA's statute of limitations, "a plaintiff must allege with specificity 'fraudulent concealment on the part of the defendants' and the inability of the plaintiff, despite due diligence, to discover the fraud." *Grant*, 871 F. Supp. 2d at 470, n. 10. (quoting *Kerby v. Mortg. Funding Corp.*, 992 F. Supp. 787, 792-98 (D. Md. 1998)).   Defendant West Town has previously moved to dismiss the West Town Plaintiffs' claims on the grounds that they had failed to state a claim for equitable tolling.   *See Fangman, et al. v. Genuine Title, LLC, et al.*, No. RDB-14-0081, 2015 WL 8315704, at *7 (D. Md. Dec. 9, 2015).   Via Memorandum Opinion dated December 9, 2015, this Court held that Plaintiffs' averments were sufficient

---

[3] As discussed *infra*, West Town suggests that the West Town class members fall into three classes: (1) The Proposed Equitably Tolled Group: Those who obtained their loans before January 2, 2014 and, accordingly, must satisfy the requirements of equitable tolling in order for their claims to be considered timely; (2) The Time-Barred Group: Those who obtained a solicitation letter from Plaintiffs' counsel regarding the alleged kickback scheme, yet still waited more than a year after receiving that letter to pursue claims against West Town; and (3) The Timely Group: Those who obtained loans closed by West Town between January 2, 2014 and December 31, 2014, less than a year before the First Amended Complaint was filed.   *See* Def. Opp'n, p. 36-37, ECF No. 358.

and that their claims were "[e]ligible for [e]quitable [t]olling." *Id.* However, this Court did not decide whether RESPA's statute of limitations *would in fact be tolled.*

West Town has now renewed its timeliness argument in opposition to the pending Motion for Class Certification (ECF No. 320). West Town objects that the named West Town Plaintiffs lack standing to represent the proposed class because the evidence in the record before this Court does not support equitable tolling of the named Plaintiffs' individual claims. Def. Opp'n, p. 20, ECF No. 358. West Town argues that even if the named Plaintiffs did have standing, the remaining class members' entitlement to equitable tolling is an individualized inquiry incapable of determination on a class-wide basis. However, for the following reasons, the named West Town Plaintiffs *have* provided sufficient evidence that their individual claims should be equitably tolled and that the issue of equitable tolling is appropriate for class-wide adjudication. Accordingly, the proposed West Town Class's reliance on equitable tolling with respect to certain class members' claims does not preclude certification of the class at this time. However, "an order certifying a class must be reversed if it becomes apparent, at any time during the pendency of the proceeding, that class treatment of the action is inappropriate." *Stott v. Haworth*, 916 F.2d 134, 139 (4th Cir. 1990).

A. Due Diligence

As discussed *supra*, a plaintiff seeking equitable tolling must produce sufficient evidence of (1) " 'fraudulent concealment on the part of the defendants' " and (2) "the inability of the plaintiff, despite due diligence, to discover the fraud." *Grant*, 871 F. Supp. 2d at 470, n. 10. With respect to due diligence, named Plaintiff Walters indicated in her

deposition that she "didn't really know that people would be giving kickbacks" and only learned of the alleged kickback scheme after being contacted by Plaintiffs' counsel.  Walters Dep., Pl. Ex. 44, p. 59:2-4, 71:14-72:1, ECF No. 374-8.  The Coopers have likewise indicated that they were unaware of the alleged kickback scheme until contacted by counsel.   K. Cooper Dep., Pl. Ex. 43, p. 28:4-14, 93:21-94:22, ECF No. 374-7; J. Cooper Dep., Pl. Ex. 42, p. 69:11-18; 99:7-100:5, ECF No. 374-6.  The Second Amended Complaint indicates that the Plaintiffs then proceeded to file suit within one year of learning of the alleged kickback scheme from counsel.  *See* Second Am. Compl., ¶ 94, ECF No. 138.

West Town objects that the named Plaintiffs cannot satisfy the "due diligence" requirement because they were dissatisfied with their loans and related fees from the start, yet did nothing to investigate until contacted by Plaintiffs' counsel.  *See* Def. Opp'n, p. 27, ECF No. 358.  While it is true that Ms. Walters "thought [she] should have gotten" more money out of her loan and the Coopers thought their fees were too "high," there is no indication that any Plaintiff had any idea that the alleged kickback agreement existed between West Town and Genuine Title or that any wrongdoing had occurred.   On the contrary, Jameson Cooper stated at his deposition that he "trusted [his broker] . . . was using the best people, getting a fair deal [ ], and if [he] had known it was an inflated amount then [he] would have questioned it."   J. Cooper Dep., Pl. Ex. 42, p. 76:9-13, ECF No. 374-6.  The United States Court of Appeals for the Fourth Circuit has indicated that due diligence only requires investigation where "an individual has been placed on inquiry notice of *wrongdoing*." *Brumbaugh v. Princeton Partners*, 985 F.2d 157, 162 (4th Cir. 1993).

B.     Fraudulent Concealment

With respect to "fraudulent concealment," the Plaintiffs have indicated that the HUD-1 forms they received at closing did not disclose that their West Town mortgage brokers were receiving any sort of payment or benefit from Genuine Title in exchange for loan referrals. *See* Walters HUD-1, Def. Ex. 6, ECF No. 358-7; Cooper HUD-1, Pl. Ex. 15, ECF No. 320-16.   The HUD-1 Settlement Statement is a standard form indicating fees charged to a borrower by a mortgage lender or broker.   Pursuant to federal regulations, HUD-1 forms "must include any amounts received for origination services, including administrative and processing services, performed by or on behalf of the loan originator." 12 C.F.R. § 1024, App. A.   Additionally, the regulations require that lenders provide loan "applicant[s] with a GFE [Good Faith estimate]" that states "all charges that all loan originators involved in [the] transaction will receive."  12 C.F.R. § 1024, App. C.  West Town did not list the alleged kickbacks on any of the loan documents provided to Plaintiffs.

West Town objects that no concealment occurred with respect to the HUD-1 forms because they accurately stated the charges that the Plaintiffs paid.  *See* Def. Opp'n, p. 25-26, ECF No. 358.  However, the United States Court of Appeals for the Third Circuit explicitly rejected that argument in the case of *In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig.*, 795 F.3d 380, 403 (3d Cir. 2015), *cert. denied sub nom. PNC Bank v. Brian W.,* 136 S. Ct. 1167 (2016).  The Third Circuit reasoned as follows:

> Even assuming that a HUD–1 correctly summarizes the fees and charges actually paid by a borrower for settlement services in connection with a federally related mortgage loan, it does not follow that the HUD–1 should be viewed in isolation. Federal regulations associated with that form control the nature and quality of information that is supposed to be included in each

HUD–1, and borrowers should be able to rely on that information in fact being of the requisite nature and quality . . . . We therefore conclude that inclusion of misleading information in a HUD–1 can constitute an independent act of concealment. *Id.*

At this Court's hearing on Thursday, October 27, 2016, counsel for West Town cited *Arthur v. Ticor Title Ins. Co. of Florida*, 569 F.3d 154, 156 (4th Cir. 2009) for the proposition that a HUD-1 correctly listing the dollar amounts charged and collected does not constitute a false statement. However, Plaintiffs do not simply allege that the charges actually listed on their HUD-1s were inaccurate or that those charges constitute false statement. Rather, they object that the HUD-1s omitted any evidence of the alleged kickback arrangement. Additionally, the issue before the Fourth Circuit in *Ticor* was not whether "fraudulent concealment" had occurred, as required for equitable tolling of a RESPA claim, but whether the plaintiffs had demonstrated "false statement," a necessary element of their state law "negligent misrepresentation" claim. *Arthur*, 569 F.3d at 162, n. 3. Additionally, West Town cites *Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 988 (D. Md. 2002), *aff'd*, 92 F. App'x 933 (4th Cir. 2004) for the proposition that "the statement of a monetary charge says nothing whatsoever about the lawfulness of the underlying transaction" and, therefore, that the mere statement of an allegedly illegal charge does not constitute misrepresentation of its legality. *Miller*, 224 F. Supp. 2d at 988. However, the Plaintiffs in this case do not simply object that the charges listed on their HUD-1 settlement statements are themselves somehow a misrepresentation of those same charges' illegality. Rather, they object that the HUD-1s contained no indication that the alleged kickback relationship existed. Furthermore, unlike the plaintiffs in either *Arthur* or *Miller*, the West Town Plaintiffs have

provided additional evidence of specific acts taken by West Town branch managers to conceal their receipt of money and services under the alleged kickback agreement. Those additional acts are discussed herein.

West Town further objects that "mere silence" does not itself establish fraudulent concealment "because a RESPA violation is not a 'self-concealing wrong.' " Def. Opp'n, p. 21, EF No. 358. (quoting *Minter v. Wells Fargo Bank, NA.*, 924 F. Supp. 2d 627, 642 (D. Md. 2013)). However, Plaintiffs have provided evidence of additional acts of concealment by Wells Fargo, beyond the incomplete HUD-1 forms. First, Plaintiffs allege that West Town brokers received kickback payments not only from Genuine Title, but from a series of "sham" companies set up for that purpose. The kickbacks were not always monetary payments, but were also delivered in the form of marketing materials and even postage stamps. *See* Casazza Aff., Pl. Ex. 39, ¶ 5, ECF No. 374-5. Plaintiffs have submitted a series of checks from those allegedly sham companies to West Town brokers. *See, e.g.*, Casazza Checks, Pl. Ex. 18, ECF No. 320-19. Additionally, Plaintiffs have provided evidence that West Town branch managers Brent Erickson and Chris Casazza opened a joint bank account into which they deposited checks from these companies and then used to funnel money to certain West Town brokers. *See* Casazza/Erickson Checks, Pl. Ex. 20, ECF No. 320-21. George Makoutz, another West Town branch manager, received a series of payments from Genuine Title through an allegedly sham entity named Cambridge Business Services. *See* CBS Checks, Pl. Ex. 23, ECF No. 320-24. Furthermore, the record suggests that Brent Erickson arranged for some of his kickbacks to be disguised as payments from Genuine Title to his wife, Jami Erickson. *See, e.g.*, Jami Erickson Checks, Pl. Ex. 19, ECF

14

No. 320-20.  For these reasons, the named Plaintiffs have provided sufficient evidence that their individual claims are entitled to equitable tolling to proceed as representatives of the proposed class.

C.    Suitability for Class-Wide Determination

The issues surrounding equitable tolling in this case are susceptible to class-wide proof because the Plaintiffs have demonstrated that it was West Town's "pattern of practice" to not disclose the alleged kickback scheme on any class members' HUD-1 form and it was a pattern among West Town agents to receive kickbacks in the manner discussed above.  *See* 12 C.F.R. § 1024.14(e) ("An agreement or understanding for the referral of business incident to or part of a settlement service need not be written or verbalized but may be established by a practice, pattern or course of conduct.").

This Court has already certified a similar class in *Baehr v. Creig Northrop Team, P.C.*, No. WDQ-13-0933, 2014 WL 346635, at *11 (D. Md. Jan. 29, 2014).  Like the West Town Plaintiffs, the *Baehr* plaintiffs alleged a "scheme for real estate agents to receive over half a million dollars in illegal kickbacks from a title insurance service" in violation of RESPA's anti-kickback provision, 12 U.S.C. § 2607.  *Baehr*, 2014 WL 346635 at 1.  Additionally, they alleged that the Defendants "devised two separate sham arrangements . . . to disguise payments of illegal referral fees."  *Id.* (internal citations and quotations omitted).  Most importantly, like the West Town Plaintiffs, the *Baehr* plaintiffs also requested that RESPA's statute of limitations be tolled with respect to their claims because they "did not discover their claim" until "counsel sent solicitation letters to potential class members."  *Id.* at 5.  This Court certified the class, reasoning as follows:

15

The Defendants argue that common questions of law or fact will not predominate because the Plaintiffs cannot establish equitable tolling on a class-wide basis. [ ] Although some individualized inquiry may be necessary to determine due diligence or whether a class member was aware of his potential claim before the limitations ran, the common issues predominate over those inquiries. Whether the Defendants violated RESPA by engaging in a referral fee kickback scheme, and actively concealed their scheme through a sham Marketing Agreement and uniform ABA Disclosures, are predominate issues common to all members of the redefined class. Much of the Defendants' arguments against predominance go to the merits of the Plaintiffs' equitable tolling claims. Thus, these arguments are not dispositive of the issue of class certification. *Id.* at 10.

At this Court's October 27, 2016 hearing, counsel for West Town sought to distinguish *Baehr* from this case on the grounds that the acts of concealment alleged in *Baehr* were entity-wide, while the acts of concealment alleged in this case were limited to individual West Town branch employees. However, Chris Casazza has specifically stated that he "informed West Town" of the alleged kickback agreement with Genuine Title and "gave them a copy of marketing outlines whereby Genuine Title would be paying a percentage of the marketing expenses in [ ] exchange for referrals." Casazza Aff., Pl. Ex. 39, ¶ 6, ECF No. 374-3. "No one informed [Casazza] that [his] branch was not to accept Marketing Subsidies from Genuine Title." *Id.* at ¶ 6. West Town did later approach him about "ceasing to take Marketing Subsidies," but only after his branch had already been referring borrowers to Genuine Title pursuant to the kickback agreement. *Id.* at ¶ 7. At this Court's hearing, counsel for West Town argued that this evidence was insufficient and that Plaintiffs should be required to show that the "head of [West Town's] marketing department" or the "director of the mortgage division" explicitly entered into an agreement with West Town. However, West Town has cited no authority supporting this position. For these reasons, the

named Plaintiffs' and class members' reliance on equitable tolling does not preclude certification of this action as a class action.

II.     Motion for Class Certification

Plaintiffs have filed the pending Motion (ECF No. 320), pursuant to Rule 23 of the Federal Rules of Civil Procedure, to certify the following class ["West Town Class"]:

> All individuals in the United States who were borrowers on a federally related mortgage loan (as defined under the Real Estate Settlement Procedures Act, 12 U.S.C § 2602) from West Town Bank & Trust for which Genuine Title provided a settlement service, as identified in Section 1100 on the HUD-1, between January 1, 2009, and December 31, 2014.  Exempted from this class is any person who, during the period of January 1, 2009 through December 31, 2014, was an employee, officer, member and/or agent of Defendants West Town Bank & Trust, Genuine Title LLC, Brandon Glickstein, Inc., Competitive Advantage Media Group LLC, and/or Dog Days Marketing, LLC.  *See* Mot. for Class Certification, p. 1, ECF No. 320.

As explained *supra*, to obtain class certification, the Plaintiffs must meet all four requirements of Rule 23(a) of the Federal Rules of Civil Procedure and at least one of the requirements of Rule 23(b).  *See Gunnells,* 348 F.3d at 423.

A.     Rule 23(a) Requirements

Plaintiffs seeking class certification must first establish—by a preponderance of the evidence—the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Each will be addressed in turn.

a.     Numerosity

Rule 23(a)(1) provides that one of the requirements to bring a class action is that the class be "so numerous that joinder of all members is impracticable."  The Fourth Circuit has held that "[n]o specified number is needed to maintain a class action." *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984) (quoting *Cypress v. Newport News Gen. & Nonsectarian*

*Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967)). This Court has previously noted that, generally speaking, "courts find classes of at least 40 members sufficiently large to satisfy the impracticability requirement." *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 497 (D. Md. 1998). In fact, " '[a] class consisting of as few as 25 to 30 members raises the presumption that joinder would be impractical.' " *Baehr*, 2014 WL 346635 at 8 (quoting *Dameron v. Sinai Hosp. of Balt., Inc.*, 595 F. Supp. 1404, 1408 (D. Md. 1984)).

In this case, Plaintiffs have identified more than 400 West Town Class members, and West Town to date has confirmed more than 200 of these as borrowers. West Town does not seriously contest the "numerosity" requirement. Accordingly, the "numerosity" requirement is met in this case.

b.   Commonality

Rule 23(a)(2) requires a question of law or fact common to the class. "A common question is one that can be resolved for each class member in a single hearing," and does not "turn[ ] on a consideration of the individual circumstances of each class member." *Thorn v. Jefferson–Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (internal quotation marks and citation omitted). The Fourth Circuit has held that, "in a class action brought under Rule 23(b)(3), the 'commonality' requirement of Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over' other questions." *Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 147 n. 4 (4th Cir. 2001) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997)). Therefore, in the Fourth Circuit "[t]he common questions must be dispositive and overshadow other issues." *Lienhart*, 255 F.3d at 146. "Thus, the commonality requirement is relatively toothless

18

in comparison with the related requirements of typicality and predominance." *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 131 (D.P.R. 2010).

As the Supreme Court has noted, "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal–Mart*, 131 S. Ct. at 2551 (internal quotations and citation omitted). In this case, the proposed West Town class members allege the same injury. Specifically, Plaintiffs claim that they "were deprived of kickback free settlement services and process" and that "[b]ut for" the alleged kickback scheme, their settlement fees "would have been much lower." Second Am. Compl., ¶¶ 90, 261, ECF No. 138. The Plaintiffs have demonstrated by a preponderance of the evidence that the claims of all class members involve the central legal and factual issue of the existence of the alleged illegal kickback scheme between West Town and Genuine Title. This Court in *Baehr*, a similar RESPA class action discussed *supra*, held that the class members in that case satisfied Rule 23(a)'s "commonality" requirement. This Court reasoned as follows:

> In this case, there are factual and legal issues common to the proposed class members. The action is based on whether the Defendants violated RESPA by engaging in an illegal referral fee scheme during the time when class members used the Defendants' services to purchase and settle on a primary residence. Because the claims of the proposed class members rest on the same legal issues and similar facts, the class has met the low threshold for commonality.

*Baehr*, 2014 WL 346635 at 8; *see also Edwards v. First Am. Corp.*, 798 F.3d 1172, 1183 (9th Cir. 2015), *cert. dismissed sub nom. First Am. Fin. Corp. v. Edwards*, 136 S. Ct. 1533 (2016) ("This common scheme, if true, presents a significant aspect of First American's transactions that warrant class adjudication: Whether First American paid a thing of value to get its agreement for exclusive referrals. We vacate the district court's denial of class certification in part as to these transactions that involved the common scheme.").

West Town contends that individual questions predominate this case; specifically, (1) whether each individual class member did in fact secure a "federally-related mortgage loan" to which RESPA applies and (2) whether loan "referrals" pursuant to the alleged kickback scheme actually occurred with respect to each class member's specific loan.  Def. Opp'n., p. 41, 44-45, ECF No. 358.  With respect to the first question, Plaintiffs' counsel have indicated that readily-available loan documents, including the Uniform Residential Loan Application, provide more than enough information to ascertain whether the class members' individual loans are covered under RESPA.  *See, e.g.*, Walters Loan App., Pl. Ex. 49, p. 2, ECF No. 374-13 (indicating "purpose" of the loan).  Even if making this determination does ultimately require some individual investigation, "[i]ndividual questions need not be absent" for a putative class action to satisfy Rule 23(a)'s "commonality" requirement.  *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012).  Rule 23(a) requires only that common questions "predominate," and there is no indication that this technical inquiry predominates.

With respect to the second question, West Town branch managers Brent Erickson and Chris Casazza have both stated that "[t]he West Town borrowers generally would rely on [his] or [his] loan officers' referral of their loan closings to Genuine Title, unless they had a relative in the business or it was a new purchase and their real estate agent was referring them to a title company."  *See* Casazza Aff., Pl. Ex. 39, ¶ 9, ECF No. 374-5; Erickson Aff., Pl. Ex. 40, ¶ 9, ECF No. 374-4.  The United States Supreme Court has held that "a settlement-service provider who gives a portion of a charge to another person who has not rendered any services in return would violate § 2607(b), even if an express referral arrangement does not exist or cannot be shown."  *Freeman v. Quicken Loans, Inc.*, 132 S. Ct.

2034, 2043 (2012).   Furthermore, even if determining whether "referrals" occurred does require some level of individualized examination, "[m]inor differences in the underlying facts of individual class members' cases do not defeat a showing of commonality where there are common questions of law." *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 216 (D. Md. 1997).   "This requirement is not onerous."   *Baehr*, 2014 WL 346635 at 8.   For these reasons, the "commonality" requirement is satisfied.

      c.    <u>Typicality</u>

Rule 23(a)(3) requires that "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).   Courts have recognized that the commonality and typicality requirements of Rule 23(a) tend to merge. "Both serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected . . . ." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982).   As this Court has previously noted, the typicality requirement determines "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Bullock v. Bd. of Educ. of Montgomery County*, 210 F.R.D. 556, 560 (D. Md. 2002) (citations omitted).   The class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998).   Essentially, the typicality requirement ensures that "only those plaintiffs who can advance the same factual and legal arguments may be grouped together as a class." *Id.* at 340. "The essence of the typicality requirement is captured by the notion that

'as goes the claim of the named plaintiff, so goes the claims of the class.' " *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (citing *Broussard*, 155 F.3d at 340).

In this case, the Coopers and Ms. Walters allege the same violations of 12 U.S.C. § 2607 that are alleged by the remaining West Town Class members.  In order to prevail on the merits, the named Plaintiffs, and the class members, will need to prove the same elements.  Their claims arise out of the same alleged kickback scheme between Genuine Title and West Town.  *See In re Polyester Staple Antitrust Litig.*, 2007 WL 2111380, at *10 (W.D.N.C. July 19, 2007) ("In determining whether the claims of the class representatives are typical of the class, the Court looks to the nature of the claims asserted (i.e., the legal theory) rather than any specific factual differences amongst class members.").  Because the named Plaintiffs' claims arose from the same alleged conduct, their claims are typical insofar as they will seek relief under the same legal theory and will "tend to advance the interests of the absent class members." *Deiter*, 436 F.3d at 466.

West Town objects that the proposed West Town class includes "three materially different groups of individuals:" (1) The Proposed Equitably Tolled Group: Those who obtained their loans before January 2, 2014 and, accordingly, must satisfy the requirements of equitable tolling in order for their claims to be considered timely; (2) The Time-Barred Group: Those who obtained a solicitation letter from Plaintiffs' counsel regarding the alleged kickback scheme, yet still waited more than a year after receiving that letter to pursue claims against West Town; and (3) The Timely Group: Those who obtained loans closed by West Town between January 2, 2014 and December 31, 2014, less than a year before the First Amended Complaint was filed.  *See* Def. Opp'n, p. 36-37, ECF No. 358.  Accordingly, West

Town argues that the Plaintiffs, who fall into the first group, do not meet the requirements of "typicality" with respect to the entire class. However, this Court in the *Baehr* case explicitly rejected this argument, reasoning as follows:

> That the Named Plaintiffs had to prove equitable tolling, does not alone make the class representatives atypical of those members of the class with timely claims. The underlying facts of the claims of the Named Plaintiffs and of those members of the redefined class with timely claims are the same. They involve the same actors, disclosures, and sham Marketing Agreement. Accordingly, the Named Plaintiffs' claims are typical of those of the redefined class. *Baehr*, 2014 WL 346635 at 9.

West Town further argues that the named Plaintiffs' and class members' claims are founded on different facts and different legal theories because they dealt with separate West Town brokers and "have ***no evidence of an entity-level kickback scheme***." Def. Opp'n, p. 38-39, ECF No. 358. However, as discussed *supra*, West Town branch manager Chris Casazza has specifically stated that West Town was informed of the alleged kickback scheme and allowed it to proceed in at least one of its branches. *See* Casazza Aff., Pl. Ex. 39, ¶ 6, ECF No. 374-3. Additionally, federal regulations provide that a kickback agreement "need not be written or verbalized but may be established by a practice, pattern or course of conduct." 12 C.F.R. 1024.14(e). For these reasons, Plaintiffs have established "typicality."

d. <u>Adequacy of Representation</u>

The final prerequisite under Rule 23(a) is that the persons representing the proposed class must be able "fairly and adequately to protect the interests" of all members of the class. The adequacy inquiry under Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625 (citing *Falcon*, 457 U.S. at 157–58 n. 13). As noted by the Fourth Circuit, for a conflict to defeat class

certification, the conflict "must be more than merely speculative or hypothetical;" it "must be fundamental" and "go to the heart of the litigation." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430–31 (4th Cir. 2003) (internal quotations and citations omitted).

As discussed *supra*, the interests of the named Plaintiffs and class members align. Their claims arise out of the same alleged kickback arrangement between West Town and Genuine Title.   In order to prevail on the merits, the named Plaintiffs, and the class members, will need to prove the same elements.   Additionally, the named Plaintiffs have assisted Plaintiffs' counsel in the collection of evidence and have appeared for depositions. In fact, Ms. Walters and Jameson Cooper attended this Court's October 27, 2016 class certification hearing.   Plaintiffs' counsel in this case, Michael Paul Smith, Sarah Zadrozny, and the law firm of Smith, Gildea, and Schmidt, and co-counsel, Timothy Maloney, Veronica Nannis, and the law firm of Joseph, Greenwald, and Laake have extensive experience trying complex cases in both state and federal court.   Mr. Maloney in particular has litigated a series of class action cases before this Court.  *See Robert J. England, et al. v. Marriot International, Inc. et al.*, No. 10-01256-RWT; *In re Michelin North America, Inc., PAX System Marketing & Sales Practice Litigation*, No. 08-md-01911-RWT; *Travis, et al. v. Walden University, LLC, et al.*, No. 15-00235-MJG; *see also Stubbs, et al. v. Board of Education of Anne Arundel County*, Case No. C-02-CV-15-003934.

West Town objects that the named Plaintiffs are only "superficially involved" in this matter and are relying too heavily on their attorneys.  *See* Def. Opp'n., p. 48, ECF No. 358. West Town indicates that the "Coopers [ ] were never informed that two of the three claims they asserted against West Town were dismissed, and while Ms. Walters knew that some of

her claims were lost, she only learned of that during the first week of August 2016." *Id.* at 49. However, "Rule 23 does not require the representative plaintiffs to have extensive knowledge of the intricacies of litigation, rather, the named plaintiffs must have a general knowledge of what the action involves and a desire to prosecute the action vigorously." *Benway v. Res. Real Estate Servs., LLC*, 239 F.R.D. 419, 425-26 (D. Md. 2006). For these reasons, the named Plaintiffs are "adequate" representatives of the West Town Class.

B.      Rule 23(b)(3) Requirements

Having determined that the Plaintiffs have satisfied Rule 23(a)'s requirements, the Court now turns Rule 23(b)(3) which requires a finding that common questions "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Although the predominance inquiry of Rule 23(b)(3) is similar to the commonality requirement of Rule 23(a), the Fourth Circuit has held that the predominance requirement is "more stringent" than the Rule 23(a) requirement. *Thorn*, 445 F.3d at 319 (quoting *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 147 n. 4 (4th Cir. 2001)); *see also Amchem*, 521 U.S. at 624 (the Rule 23(b)(3) criterion is "far more demanding" than the commonality requirement). In determining whether the Plaintiffs have satisfied their burden, this Court must conduct a "rigorous analysis" of the Rule 23(b)(3) requirements and the Plaintiffs' methodology for proving those requirements. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 323–24. In order to meet the predominance prong of Rule 23(b)(3), a plaintiff must "demonstrate that

the element[s] of [the legal claim] [are] capable of proof at trial through evidence that is common to the class rather than individual." *Id.* at 311.

a.   Predominance

As discussed *supra*, Plaintiffs allege that all West Town Class Members were victims of a wide-spread kickback scheme between West Town and Genuine Title.  The existence of this scheme is a common question that predominates over any individual questions.   In order to prevail on their claims, the class members must all prove (1) a payment of thing of value, (2) given and received pursuant to an agreement to refer settlement business, and (3) an actual referral. *Guliano v. Fidelty Nat. Title Ins. Co.*, 684 F.3d 309, 314 (2d Cir. 2012).

West Town renews its objection that the individual issues addressed *supra* with respect to "commonality" predominate.  For the reasons stated *supra*, that argument fails. While the Plaintiffs and class members closed on separate loans with separate West Town agents, the Supreme Court has indicated that payment of a thing of value need not be tied in any respect to a particular borrower. *Freeman*, 132 S. Ct. at 2043.  Furthermore, as discussed *supra*, federal regulations indicate that an "agreement to refer" may be established through evidence of a pattern of conduct.  *See* 12 C.F.R. 1024.14(e).  Additionally, RESPA's statutory damages will be calculated in the same way for the named Plaintiffs and class members. RESPA violations are subject to a statutory measure of damages equal to three times the amount of any charges paid for a settlement service, typically reflected in Section 1100 on the borrower's HUD-1 settlement statement. 12 U.S.C. § 2607(d)(2).

Furthermore, this Court has previously rejected West Town's argument in the highly analogous case of *Baehr v. Craig Northrop Team, P.C.*, discussed *supra*.  While recognizing that

individualized inquiries may exist, this Court in *Baehr* concluded that "[w]hether the Defendants violated RESPA by engaging in a referral fee kickback scheme, and actively concealed their scheme through a sham Marketing Agreement and uniform ABA Disclosures, are predominate issues common to all members of the redefined class." *Baehr*, 2014 WL 346635 at 10.  For these reasons, "predominance" has been established.

       b.    <u>Superiority</u>

The final requirement of Rule 23(b)(3) is that this Court must determine that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "In deciding whether certification of a class is superior to other trial methods, the Court considers whether the resolution of common issues advances the litigation as a whole, as opposed to leaving a large number of issues for case-by-case adjudication." *In re Polyester Staple Antitrust Litig.*, 2007 WL 2111380, at *31 (W.D.N.C. July 19, 2007) (internal quotation and citation omitted).

As discussed *supra*, the named Plaintiffs' and class members claims all arise out of the same alleged kickback arrangement.  In fact, the Plaintiffs and class members rely on one another's individual loan transactions to establish a "practice, pattern or course of conduct" between West Town and Genuine Title.  *See* 12 C.F.R. § 1024.14(e) ("An agreement or understanding for the referral of business . . . may be established by a practice, pattern or course of conduct.").  Additionally, as discussed *supra*, all of the West Town Class members are subject to the same statutorily defined measure of damages.  Plaintiffs' counsel have indicated that there will be "virtually no managerial difficulties in managing the West Town Class . . . [g]iven the status of settlement with the great majority of Defendants in this case,

the remaining class is composed of West Town borrowers only and does not pose any of the

potential managerial problems that may have arisen if all of the Settled Defendants were still

active defendants." Mem. Supp. Mot. for Class Certification, p. 37-38, ECF No. 320.

As to "superiority," West Town renews its objections to class certification discussed

*supra*, particularly with respect to equitable tolling. West Town objects that "resolution of

each putative tolling class member's claim over a six-year span will require the presentation

of individualized evidence necessitating numerous mini-trials, defeating the judicial

efficiencies promoted by the class action vehicle." Def. Opp'n., p. 34, ECF No. 358. West

Town relies on *Minter v. Wells Fargo Bank, N.A.*, No. WMN-07-3442, 2013 WL 1795564, at

*1 (D. Md. Apr. 26, 2013), in which this Court decertified a class in a similar RESPA class

action because of the individualized issues associated with equitable tolling. However, this

Court specifically rejected West Town's argument as to "superiority" in *Baehr v. Creig*

*Northrop Team, P.C.*, reasoning as follows:

> The Defendants rely on *Minter v. Wells Fargo Bank, N.A.*, No. WMN–07–3442,
> 2013 WL 1795564 (D. Md. April 26, 2013), to argue that equitable tolling
> renders this case unmanageable as a class action. [ ] In *Minter*, the Court
> decertified a class subject to equitable tolling because proving tolling became
> unmanageable. *Minter*, 2013 WL 1795564, at *4. There, the Plaintiffs relied on
> the violations of RESPA itself for equitable tolling, requiring inquiries into the
> transactions of individual class members. *Id.* Here, the Plaintiffs allege a
> violation of RESPA based on the exchange of illegal referral fees, separate
> from the alleged acts of concealment involving the creation of a sham
> Marketing Agreement and an agreement to conceal the arrangements from
> ABA Disclosures. The Plaintiffs' equitable tolling claims rely on uniform facts
> that do not require an individualized inquiry into each class member's
> transaction. Accordingly, equitable tolling does not render the case
> unmanageable.

*Baehr*, 2014 WL 346635 at 11. Unlike the *Minter* plaintiffs, the Plaintiffs in this case do not

rely "on the violations of RESPA itself for equitable tolling." Rather, like the *Baehr*

plaintiffs, the Plaintiffs in this case have alleged a separate pattern of concealment on the part of West Town and its agents.  For these reasons, Rule 23(b)(3)'s "superiority" requirement is satisfied.  Accordingly, the proposed West Town Class shall be certified.

<u>CONCLUSION</u>

For the foregoing reasons, and for the reasons stated on the record at this Court's October 27, 2016 hearing, Plaintiffs' Motion for Class Certification (ECF No. 320) is GRANTED.

A separate Order follows.

Dated:        November 8th, 2016

\_\_\_\_\_/s/_____
Richard D. Bennett
United States District Judge