IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EDWARD J. AND VICKI FANGMAN, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. RDB-14-0081 |
| | * | |
| GENUINE TITLE, LLC, *et al.* | * | |
| | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM ORDER

On November 4, 2016, this Court conducted a Final Fairness Hearing on the Proposed Settlement (ECF No. 237-2) of all claims asserted in this action against Defendants Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage, Inc. ("Wells Fargo"). Via Order dated that same day (ECF No. 400), this Court granted final approval of the Settlement Agreement, dismissed all claims against the Wells Fargo Defendants, and approved the parties' requested $5,000 Service Awards to be paid to each of the five Class Representatives[1], for a total of $20,000. Final Judgement has been entered in this case against Wells Fargo in "an amount[2] necessary to fund Settlement Benefits payable to [Wells Fargo] Subclass 1 Members and those Subclass 2 members with Allowed Claims, in accordance with the Settlement Agreement," discussed *infra*. Order, ¶¶ 12, 16, ECF No. 400.

---

[1] The Wells Fargo Class Representatives are Plaintiffs Damon M. Oliver, Betty M. Howard, and Clayton J. Anthony (Subclass 1) and Robert L. Voelker and Shelia K. Voelker (Subclass 2).
[2] As discussed *infra*, the Settlement Administrator has subsequently calculated that amount to be $15,572,416.11.

Still pending before this Court are Settlement Counsels' Petition for Attorneys' Fees and Expenses (ECF No. 328)[3] and Plaintiffs' Interim Motion to Seal Plaintiffs' Supplemental Affidavits to Settlement Counsels' Petition for Attorneys' Fees and Expenses and Class Representatives' Service Awards for Wells Fargo Settlement (ECF No. 347). The parties' submissions have been reviewed, and argument on the pending Motions was heard at this Court's November 4, 2016 hearing. For the reasons stated herein, the pending Settlement Counsels' Petition for Attorneys' Fees and Expenses (ECF No. 328) is GRANTED in the amount of $2,335,862.42, an award equal to 15% of the Common Fund, and Plaintiffs' Interim Motion to Seal Plaintiffs' Supplemental Affidavits to Settlement Counsels' Petition for Attorneys' Fees and Expenses and Class Representatives' Service Awards for Wells Fargo Settlement (ECF No. 347) is DENIED. Accordingly, Plaintiffs' Supplemental Affidavits, and accompanying exhibits, (ECF No. 346) shall be UNSEALED.

## BACKGROUND

In January of 2014, Plaintiffs Edward J. and Vicki Fangman brought this class action against Defendant Genuine Title, LLC alleging, *inter alia*, violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2607(a), (b)[4]. *See* Compl., ECF No. 2. Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage, Inc. ("Wells Fargo") were not named as Defendants in this action until the First Amended Complaint (ECF No. 47) was filed in January of 2015. An additional twelve home mortgage lenders have also been named

---

[3] As discussed *infra*, Class Counsel have subsequently amended their request for attorneys' fees and expenses via an Amended Petition dated November 9, 2016 (ECF No. 404). Class Counsel initially requested an award equal to 25% of the Common Fund, but now seek an award equal to 20% of the Common Fund.

[4] Additionally, Plaintiffs alleged violations of Md. Code Ann., Real Prop. § 14-127 ("Section 14-127") and the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-301. Those claims were subsequently dismissed by this Court. *See* Orders, ECF Nos. 214, 281.

as Defendants (collectively "Lender Defendants") via the First and Second Amended Complaints in this action. Attorneys Michael Paul Smith, Timothy Maloney, and Veronica Nannis of the law firms of Smith, Gildea & Schmidt, LLC ("SGS") and Joseph, Greenwald & Laake, P.A. ("JGL") (collectively "Class Counsel") have represented all Plaintiffs, including the Wells Fargo Plaintiffs, throughout this litigation.

In prosecuting this case, Class Counsel have incurred significant expense and have undergone significant investigation. For example, in July of 2013, Plaintiffs filed a Petition for Emergency Appointment of a Receiver for the purpose of retrieving and preserving the documents, books, and records of Genuine Title in the Circuit Court for Baltimore County, Maryland. That court granted the petition on July 30, 2014, and Class Counsel were able to retrieve vast amounts of evidence from Genuine Title's records, including the identities of potential class members. Additionally, Class Counsel have subpoenaed records, documents, and testimony from a prior investigation into Wells Fargo's home mortgage lending practices conducted by the Consumer Financial Protection Bureau ("CFPB") and the State of Maryland. *See Fangman, et al. v. Genuine Title, LLC, et al.*, No. RDB-14-0081, 2016 WL 560483, at *2 (D. Md. Feb. 12, 2016). That investigation involved similar allegations to those raised by the Plaintiffs in this action. In that case, Wells Fargo ultimately agreed to a Stipulated Final Judgment and Order (the "Consent Decree") with the CFPB and the State that was entered by this Court on February 5, 2015, just over a month after Wells Fargo was named as a Defendant in this case. *See CFPB, et al. v. Wells Fargo, et al.*, RDB-15-0179. Pursuant to the Consent Decree, Wells Fargo agreed to refund certain settlement charges to certain Wells Fargo borrowers.

Shortly thereafter, Wells Fargo was the first Lender Defendant in this case to begin settlement discussions with the Plaintiffs in March of 2015. Wells Fargo filed a Motion to Dismiss on July 21, 2015 (ECF No. 163), to which Plaintiffs responded on September 4, 2015 (ECF No. 176). However, the parties subsequently requested that consideration of that Motion be stayed pending private mediation with Judge Benson E. Legg, retired Chief Judge of this Court. The parties "reached a conceptual settlement on October 27, 2015." Def. Opp'n, p. 6, ECF No. 363.

On February 4, 2016, Wells Fargo and the Wells Fargo Plaintiffs filed a Proposed Settlement Agreement (ECF No. 237-2) of all claims asserted against Wells Fargo in this action. Following a hearing on February 29, 2016, this Court granted preliminary approval to that settlement. *See* Order, ECF No. 251. Via that same Order, this Court appointed Class Counsel to represent the Wells Fargo Class in settlement proceedings. The Settlement Agreement organizes the Wells Fargo Class as follows:

- **Subclass 1** – Those members of the Settlement Class whose Wells Fargo loans were originated by one of the Specified Loan Officers; and
- **Subclass 2** – Those members of the Settlement Class whose Wells Fargo loans were not originated by one of the Specified Loan Officers.

Settlement Agmt, p. 8, ECF No. 237-2. The Settlement Agreement provides for the payment of the following benefits to the members of each subclass:

- Those members of Subclass 1 who do not file a complete and valid Request for Exclusion by the Exclusion Deadline established by the Court will receive an amount equal to 120% the Section 1100 Charges that were paid to Genuine Title (excluding title underwriter's fees) as reflected on the member's HUD-1 Settlement Statement for the member's Wells Fargo loan; and
- Those members of Subclass 2 who did not file a complete and valid Request for Exclusion by the Exclusion Deadline and who submit an Allowed Claim (as defined

under the Settlement Agreement) to the designated Settlement Administrator, will receive an amount equal to 50% of the Section 1100 Charges that were paid to GT (excluding title underwriter's fees) as reflected on the member's HUD-1 Settlement Statement for the member's Wells Fargo loan.

*Id.* at p. 11-12. The settlement benefits are to be deposited into a Common Fund, which the Settlement Administrator has subsequently indicated will reach a total value of **$15,572,416.11**. Cowen Declaration, p. 2, ECF No. 363-1.

With respect to attorneys' fees and expenses, the Settlement Agreement provides that Wells Fargo will pay attorneys' fees and expenses up to a total 25% of the Common Fund, not to exceed $4.1 million, and will raise no objection to an award of 20% of the Common Fund or less.[5] Settlement Agreement, p. 21, ECF No. 237-2. The agreement further provides that attorneys' fees, expenses, and service awards for Class Representatives will be paid "in addition to, not out of the Common Fund." *Id.* Under the terms of the Settlement Agreement, a notice plan was completed pursuant to which all members of the Wells Fargo Class were informed of the terms of the settlement. *See Id.* at p. 16-17. No objections or requests for exclusion were filed. On November 4, 2016, this Court conducted a Final Fairness Hearing on the proposed settlement and granted final approval of the Settlement Agreement that same day.

<u>ANALYSIS</u>

I.  <u>Plaintiffs' Motion to Seal Supplemental Affidavits (ECF No. 347)</u>

Plaintiffs have moved to seal the affidavits, and attached billing sheets, of Class Counsel Michael Paul Smith and Veronica B. Nannis, which "identify the hours, rate

---

[5] As discussed herein, Class Counsel initially requested an award of attorneys' fees and expenses equal to 25% of the Common Fund, but have since reduced their request to 20% of the Common Fund.

structures, and costs counsels' firms have recorded in this case." Mot. to Seal, ¶ 2, ECF No. 347. Plaintiffs contend that "the Affidavits are under seal to prevent the disclosure of confidential information," *Id.* at ¶ 4, but have not identified any specific information in the affidavits that must be kept confidential. Items listed on the billing sheets have already been heavily redacted. *See* Ex. A & B, ECF Nos. 346-2, 346-3, 346-5 & 346-6.

The public's common law "presumptive right of access" to court documents "extends to all judicial documents and records, and . . . can be rebutted only by showing that countervailing interests heavily outweigh the public interests in access. . . . [T]he First Amendment secures a right of access only to particular judicial records and documents, . . . and, when it applies, access may be restricted only if closure is necessitated by a compelling government interest and the denial of access is narrowly tailored to serve that interest." *Doe v. Pub. Citizen*, 749 F.3d 246, 265–66 (4th Cir. 2014) (internal quotations and citations omitted). Plaintiffs cite no authority indicating that sealing their affidavits and billing sheets is warranted in this case. They object that "the bills are irrelevant to the Court's consideration of Plaintiffs' percentage of recovery fee request." Reply, ¶ 2, ECF No. 372. However, as discussed *infra*, they are necessary for this Court to conduct a lodestar cross-check of Class Counsels' fee request. For these reasons, Plaintiffs' Interim Motion to Seal Plaintiffs' Supplemental Affidavits to Settlement Counsels' Petition for Attorneys' Fees and Expenses and Class Representatives' Service Awards for Wells Fargo Settlement (ECF No. 347) is DENIED. Accordingly, Plaintiffs' Supplemental Affidavits, and accompanying exhibits, (ECF No. 346) shall be UNSEALED.

II.     <u>Settlement Counsels' Petition for Attorneys' Fees and Expenses (ECF No. 328)</u>

Rule 23(h) of the Federal Rules of Civil Procedure provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Additionally, the Real Estate Settlement Procedures Act ("RESPA") provides that "[i]n any private action brought pursuant to this subsection, the court may award to the prevailing party the court costs of the action together with reasonable attorneys fees." 12 U.S.C. § 2607(d)(5). As this Court has previously noted, "[t]here are two primary methods of calculating attorneys' fees: the lodestar method and the 'percentage of recovery' method." *Whitaker v. Navy Fed. Credit Union*, No. RDB-09-2288, 2010 WL 3928616, at *4 (D. Md. Oct. 4, 2010). "The lodestar method requires the multiplication of the number of hours worked by a reasonable hourly rate, the product of which this Court can then adjust by employing a 'multiplier.'" *Id.* "The percentage of the recovery method involves an award based on a percentage of the class recovery, set by the weighing of a number of factors by the court." *Id.*

At this Court's November 4, 2016 hearing, Class Counsel sought an award of "25% of the common fund, not to exceed $4.1 million[6], as fees and expenses and as a separate payment that does not come out of or deplete the common fund." Pl. Mot., p. 2, ECF No. 328. However, via an Amended Petition dated November 9, 2016 (ECF No. 404), Class Counsel have subsequently reduced that request to an award equal to 20% of the Common Fund. Class Counsel contend that this Court should utilize the "percentage of recovery

---

[6] As discussed *infra*, the claims of all Wells Fargo Class members have now been processed, and the Settlement Administrator has calculated that "the Settlement Benefits to be paid to class members from the Common Fund" will be $15,572,416.11. Def. Opp'n, p. 13, ECF No. 363 (citing Cowen Declaration, p. 2, ECF No. 363-1). Accordingly, Class Counsel's requested award of 20% of the Common Fund equates to an award of $3,114,483.22.

method" to calculate attorneys' fees, as opposed to the "lodestar" method. Mem. Supp. Pl. Mot., p. 13, ECF No. 328-1. At this Court's November 4, 2016 hearing, Wells Fargo objected that "[t]he [c]alculation of Class Counsel's [l]odestar [i]s [r]equired [h]ere," "at least as a cross-check to [the] requested percentage of recovery fee," "[a]nd [i]s [t]he [p]resumptive [r]easonable [f]ee." Def. Opp'n, p. 14, ECF No. 363. However, pursuant to the Settlement Agreement's clear sailing provision, discussed *supra*, Wells Fargo neither supports nor opposes Class Counsels' revised request for attorneys' fees and expenses. *See* Response, ¶ 5, ECF No. 405. Because the Settlement Administrator has now calculated the exact amount of the Common Fund needed to pay settlement benefits ($15,572,416.11), Wells Fargo requests that this Court "specify in its Order the awarded amount in dollars and cents . . . rather than in the narrative manner" suggested by Class Counsel. *Id.* at ¶¶ 3,7.

"District courts in the Fourth Circuit, and the majority of courts in other jurisdictions, use the percentage of recovery method in common fund cases." *Durm v. Am. Honda Fin. Corp.*, No. WDQ-13-223, 2015 WL 6756040, at *6 (D. Md. Nov. 4, 2015). " '[T]he percentage method is more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases.' " *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 681 (D. Md. 2013) (quoting *Strang v. JHM Mortgage Sec. Ltd. Partnership*, 890 F. Supp. 499, 503 (E.D. Va. 1995)). "An attractive aspect of the 'percentage of recovery' method is its results-driven nature which 'ties the attorneys' award to the overall result achieved rather than the hours expended." *Id.* (citing *Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756, 759 (S.D. W. Va. 2009)).

The United States Supreme Court has held that the "common-fund doctrine" entitles "'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client . . . to a reasonable attorney's fee *from the fund as a whole.*'" *U.S. Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1545 (2013) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (emphasis added)). This Court has held that "the percentage of recovery method" is an "inappropriate" method for determining attorneys' fees where "the attorneys' fees are not being deducted from the Plaintiffs' recovery." *Cerrato v. All. Material Handling, Inc.*, No. WDQ-13-2774, 2014 WL 7190687, at *4 (D. Md. Dec. 16, 2014); *see also Durm,* 2015 WL 6756040 at *6 ("Here, the percentage of recovery method is inappropriate because the attorney fees will not be deducted from a common fund."). In this case, the Settlement Agreement provides that a "Common Fund" shall be established for the benefit of eligible Wells Fargo Class members. Settlement Agreement, p. 11, ECF No. 237-2. However, like in *Cerrato* and *Durm*, the Settlement Agreement specifically provides that any "Court-awarded fees and expenses" will be paid "*in addition to*, *not out of* the Common Fund." *Id.* at 21 (emphasis added). Accordingly, as stated *supra*, Class Counsel have requested that their fees and expenses "not come out of or deplete the common fund." Pl. Mot., p. 2, ECF No. 328.

Because the Wells Fargo Class settlement benefits will not be paid out of the same fund as Class Counsel's attorneys' fees, a traditional "common fund" does not exist in this case. However, several courts have held that the "percentage of recovery" method is still the appropriate method for determining attorneys' fees in class action settlements where a "*constructive* common fund" has been created. The United States Court of Appeals for the

Third Circuit in *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) explained this principle as follows:

> Courts have relied on "common fund" principles and the inherent management powers of the court to award fees to lead counsel in cases that do not actually generate a common fund. *See, e.g., In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006 (5th Cir. 1977) (using common fund principles in settlement of consolidated cases). The rationale behind the percentage of recovery method also applies in situations where, although the parties claim that the fee and settlement are independent, they actually *come from the same source.*

*In re Gen. Motors Corp.*, 55 F.3d at 821 (emphasis added). Likewise, the United States Court of Appeals for the Eighth Circuit in *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) held the following:

> Although under the terms of each settlement agreement, attorney fees technically derive from the defendant rather than out of the class' recovery, *in essence the entire settlement amount comes from the same source.* The award to the class and the agreement on attorney fees represent *a package deal.* Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery. *See In re General Motors*, 55 F.3d at 821 ("The rationale behind the percentage of recovery method also applies in situations where, although the parties claim that the fee and settlement are independent, they actually come from the same source.") Accordingly, the *direct payment of attorney fees by defendants should not be a barrier to the use of the percentage of the benefit analysis in the cases.*

*Johnston*, 83 F.3d at 246 (emphasis added).

The United States District Court for the District of Columbia has re-affirmed this principle in *Hubbard v. Donahoe*, 958 F. Supp. 2d 116, 124–25 (D.D.C. 2013):

> This, of course, is not a classic common fund case. Class counsel and DOJ, on behalf of USPS, negotiated a separate fee accord to be paid by USPS. For all practical purposes, however, *the attorneys' fees and class recovery in this case come from the same source—USPS revenues. See* Jt. Memo at 4. Here, USPS, "unlike the loser in a fee-shifting case, stands to lose no more if the attorneys' fee award is greater and therefore cannot be relied upon to provide an adversarial approach to deleting unreasonable time entries." In order to guard against

potential abuses and ensure fairness to the class members in this situation, other judges on this Court "ha[ve] previously considered similar settlement agreements as constructive common funds and awarded fees on a percentage basis." [collecting cases]. Accordingly, this Court will similarly consider this settlement to be a constructive common fund of $4,550,000, and the Court will apply the percentage of recovery method to determine an appropriate fee award.

*Hubbard*, 958 F. Supp. 2d at 124–25 (internal citations omitted); *see also In re Vitamins Antitrust Litig.*, No. MDL 1285, 2001 WL 34312839, at *6 (D.D.C. July 16, 2001) ("The Court determines that it is appropriate to treat this case as a constructive common fund despite the fact that the fees in the instant action are to be paid by defendants and despite the existence in this Settlement Agreement of a clear sailing provision[7]."); *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 734 (E.D. Pa. 1995) ("In situations where counsel and the class share a common fund, or where the fee and settlement are claimed to be independent of each other, but actually derive from the same source, a percentage of the total recovery is more appropriate."). Like in the cases of *Hubbard* and *Johnston*, the attorneys' fees in this case will not come out of the "Common Fund," but will still come from the "same source" as the class members' settlement benefits. Like in *Johnston*, the Wells Fargo Class settlement benefits and Class Counsel's attorneys' fees "represent a package deal" and "are still best viewed as an aspect of the class' recovery" because they were negotiated through the same mediation process and have both been incorporated into the Settlement Agreement.

However, the United States District Court for the Middle District of North Carolina declined to apply the "percentage of recovery" method in *Deloach v. Philip Morris Companies*,

---

[7] A "clear sailing provision" is a clause in a class action settlement agreement under which the defendant agrees not to contest the class counsel's petition for attorneys' fees. The Wells Fargo Settlement Agreement includes a clear sailing provision. Wells Fargo previously agreed "not to object to any such Petition [for Attorneys' Fees] if the Plaintiffs' Counsel's Petition seek[s] an award of fees and expenses of no more than an aggregate amount equal to twenty percent (20%) of the Common Fund." Settlement Agreement, p. 21, ECF No. 237-2.

No. 1:00CV01235, 2003 WL 23094907, at *3–4 (M.D.N.C. Dec. 19, 2003), a similar case in which settlement counsel sought attorneys' fees under a "common fund" theory although their fees were to be paid directly by Defendants. The Court in *Deloach* specifically distinguished the facts of that case from cases like *Johnston*, *Vitamins*, and the present case, in which "the parties had reached a 'clear sailing' agreement limiting the amount of fees that could be awarded." *Deloach,* 2003 WL 23094907 at *4. The Court held that "the parties' decision to allow the court to award fees, *rather than agreeing to a finite maximum amount*, clearly removes this case from the common fund scheme." *Id.* (emphasis added). Like in *Johnston* and *Vitamins*, and unlike the *Deloach* case, the Wells Fargo Settlement Agreement in this case does provide a "finite maximum amount" of attorneys' fees. The Agreement states that "Wells Fargo will pay Court-awarded fees and expenses under this Settlement in an aggregate amount not to exceed $4.1 Million." Settlement Agreement, p. 21, ECF No. 237-2.

Judge Quarles of this Court held in *Cerrato,* 2014 WL 7190687, at *4 and *Durm,* 2015 WL 6756040 at *6, discussed *supra*, that "the percentage of recovery method" was an "inappropriate" method for determining attorneys' fees where "the attorneys' fees [were] not being deducted from the Plaintiffs' recovery." However, those cases are easily distinguishable from the present case. Neither *Durm* nor *Cerrato* discussed the "constructive common fund" doctrine, nor did those cases attempt to distinguish *Deloach*, *Johnston*, *Vitamins*, or any of the "constructive common fund" cases discussed *supra*. Additionally, counsel in *Durm* and *Cerrato* did not actually request attorneys' fees as a percentage of recovery, whereas Class Counsel in this case have specifically requested an award of attorneys' fees and expenses in the amount of 20% of the common fund, pursuant to the

Settlement Agreement. The parties in *Cerrato* agreed that class counsel should be awarded $42,302.89, and this Court awarded fees in that exact amount. *Cerrato,* 2014 WL 7190687, at *4-5. Class counsel in *Durm* requested $350,000 in attorneys' fees, which this Court also approved. *Durm,* 2015 WL 6756040 at *6-8.

For these reasons, this case shall be treated as a "constructive common fund" case, and the "percentage of recovery" method shall be used to calculate Class Counsel's award of attorneys' fees and expenses. However, this Court will cross-check its "percentage of recovery" analysis with a lodestar analysis. This Court has previously recognized that "using the percentage of fund method and supplementing it with the lodestar cross-check . . . take[s] advantage of the benefits of both methods." *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 681 (D. Md. 2013) (quoting *In re The Mills Corp. Securities Litig.*, 265 F.R.D. 246, 261 (E.D. Va. 2009)).

A.    "Percentage of Recovery" Analysis

Although the United States Court of Appeals for the Fourth Circuit "has not yet identified factors for district courts to apply when using the 'percentage of recovery' method, . . . District courts in this circuit have analyzed the following seven factors:"

> (1) the results obtained for the class; (2) the quality, skill, and efficiency of the attorneys involved; (3) the risk of nonpayment; (4) objections by members of the class to the settlement terms and/or fees requested by counsel; (5) awards in similar cases; (6) the complexity and duration of the case; and (7) public policy. [citing, *e.g.*, *The Kay Company v. Equitable Production Co.*, 749 F. Supp. 2d 455, 464 (S.D. W. Va. 2010); *Jones*, 601 F. Supp. 2d at 760]. Importantly, "fee award reasonableness factors 'need not be applied in a formulaic way' because each case is different, 'and in certain cases, one factor may outweigh the rest.' " *In re AT & T Corp.*, 455 F.3d 160, 166 (3d Cir. 2006) (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3rd Cir. 2005)).

*Singleton,* 976 F. Supp. 2d at 682.

a. <u>Results Obtained for the Class</u>

" '[T]he most critical factor in calculating a reasonable fee award is the degree of success obtained.' " *Id.* (quoting *McKnight v. Circuit City Stores, Inc.,* 14 F. App'x. 147, 149 (4th Cir. 2001)). In this case, Class Counsel have secured a significant financial recovery for the members of the Wells Fargo Class. As outlined *supra*, members of Subclass 1 will directly receive more than 100% of the settlement charges paid to Genuine Title on their loans, in addition to payments they have already received from Wells Fargo pursuant to its prior settlement with the Consumer Financial Protection Bureau ("CFPB"). Members of Subclass 2 will receive 50% of the settlement charges paid by them to Genuine Title. The claims of all Wells Fargo Class members have now been processed, and the Settlement Administrator has calculated that "the Settlement Benefits to be paid to class members from the Common Fund" will be $15,572,416.11. Def. Opp'n, p. 13, ECF No. 363 (citing Cowen Declaration, p. 2, ECF No. 363-1). Pursuant to the Settlement Agreement, the Common Fund will not be diminished by attorneys' fees, expenses, or the Class Representatives' service awards. Additionally, as this Court observed in *Singleton*, "[t]he fact that no objections have been filed further suggests that the result achieved is a desirable one." *Singleton*, 976 F. Supp. 2d at 683.

b. <u>Quality, Skill, and Efficiency of the Attorneys Involved</u>

Class Counsel are experienced litigators who went to great lengths to prosecute this action and obtained a quick and substantial settlement for the Wells Fargo Class. Lead Counsel, Mr. Michael Paul Smith, "has represented plaintiffs for 24 years and has tried over 50 cases in state and federal courts," including numerous "complex civil cases in the areas of commercial litigation, fraud and banking/real estate issues." Mem. Supp. Mot., p. 15, ECF

No. 328-1. Mr. Smith and the law firm of Smith, Gildea & Schmidt, LLC have significant experience preparing and trying complex civil cases, including *Mosaic Lounge v. BCR*, Case No.: 03-C-14-00449, in the Circuit Court for Baltimore County and *Possidente v. GBMC*, Case No. 03-C-10-003295, in the Circuit Court for Baltimore County. *Id.* at 16.

The attorneys of Joseph, Greenwald & Laake, P.A. are also experienced plaintiffs' counsel. Mr. Timothy Maloney "has represented plaintiffs for 30 years and has tried over 100 cases in state and federal courts." *Id.* Mr. Maloney "regularly tries complex civil cases in the areas of commercial litigation, fraud and constitutional violations" and has served as plaintiffs' counsel in several class action cases before this Court, including *Robert J. England, et al. v. Marriot International, Inc. et al.*, No. 8: 10-cv-01256-RWT, and *In re Michelin North America, Inc., PAX System Marketing & Sales Practice Litigation*, No. 08:08-md-01911-RWT. *Id.* Additionally, Ms. Veronica Nannis "has practiced in the area of complex civil litigation for 14 years and for the past 10 years has focused on complex fraud, kickback and whistleblower actions." *Id.* at 17.

In order to identify potential Wells Fargo Plaintiffs and class members, Class Counsel went to great lengths to secure the records of the now-defunct Genuine Title, LLC. In July of 2013, Class Counsel filed a Petition for Emergency Appointment of a Receiver for the limited purpose of retrieving and preserving the documents, books, and records of Genuine Title in the Circuit Court for Baltimore County, Maryland. That court granted the petition on July 30, 2014. The Receiver immediately seized records that Plaintiffs have alleged were scheduled for destruction. Subsequently, Class Counsel have completed additional pre-suit and settlement discovery, fully briefed a response to Wells Fargo's Motion to Dismiss, and

"prepared mediation statements and participated in two, full days of mediation with private mediator Judge Legg." *Id.*

The fact that the Wells Fargo Class obtained a quick settlement also speaks to Class Counsels' skill and efficiency. Wells Fargo was named as a Defendant in the First Amended Complaint in January of 2015, the parties began settlement discussions two months later in March of 2015, and this Court granted final approval to the parties' Settlement Agreement on November 4, 2016. *See Singleton*, 976 F. Supp. 2d at 683 ("The fact that settlement was reached relatively quickly—short of two years from the filing of the complaint on July 1, 2011—further indicates the attorneys' skills and efficiency.").

c. Risk of Nonpayment

" 'In determining the reasonableness of an attorneys' fee award, courts consider the relative risk involved in litigating the specific matter compared to the general risks incurred by attorneys taking on class actions on a contingency basis.' " *Singleton*, 976 F. Supp. 2d at 683 (quoting *Jones*, 601 F. Supp. 2d at 762). "The risk undertaken by class counsel is evaluated by, among other things, the presence of government action preceding the suit, the ease of proving claims and damages, and, if the case resulted in settlement, the relative speed at which the case was settled." *Id.*

Class Counsel correctly note that many plaintiffs have recovered nothing after prosecuting class actions under the Real Estate Settlement Procedures Act ("RESPA"). *See, e.g., Minter v. Wells Fargo Bank, N.A.*, 2014 WL 3827671 (4th Cir. Aug. 5, 2014); *Taggart v. Wells Fargo Home Mortg., Inc.*, -- Fed. App'x. --, 2014 WL 1613715 (3d Cir. Apr. 23, 2014). However, Plaintiffs' claims against Wells Fargo settled quickly. The parties have indicated

that they began settlement discussions in March of 2015 and "reached a conceptual settlement on October 27, 2015 through private mediation." Def. Opp'n, p. 6, ECF No. 363. Then, following a hearing on November 4, 2016, this Court granted final approval to the Settlement Agreement. Although additional Defendants in this action have subsequently entered into Settlement Agreements with the Plaintiffs, the Wells Fargo Settlement Agreement was the first to be filed in this action and the first to receive final approval of this Court. The speed at which the Wells Fargo Settlement was reached weighs in favor of decreasing Class Counsels' award. *See Strang*, 890 F. Supp. at 503 (finding that risks to plaintiffs' counsel were minimized by early settlement).

Additionally, Wells Fargo was only named as a Defendant in this action following the initiation of a government investigation into the alleged kickback scheme. *See, e.g.*, CFPB Takes Action Against Wells Fargo and JPMorgan Chase for Illegal Mortgage Kickbacks, Consumer Financial Protection Bureau (Jan. 22, 2015), http://www.consumerfinance.gov/newsroom/cfpb-takes-action-against-wells-fargo-and-jpmorgan-chase-for-illegal-mortgage-kickbacks/. In fact, in prosecuting their own case against Wells Fargo, Class Counsel relied upon records, documents, and testimony obtained from Genuine Title by the government over the course of its investigation. *See Fangman, et al. v. Genuine Title, LLC, et al.* No. RDB-14-0081, 2016 WL 560483, at *2 (D. Md. Feb. 12, 2016). However, the presence of this government investigation weighs in favor of decreasing Class Counsels' requested award. *See, e.g., In re Cardinal Health Inc. Sec. Litigations*, 528 F. Supp. 2d 752, 768–69 (S.D. Ohio 2007) (finding that lower fee was justified where "formal SEC investigation . . . paved the Class's path to recovery in this action.").

d.      Objections

As discussed *supra*, Wells Fargo Class members were notified of the proposed Settlement Agreement, their expected recovery, and Class Counsels' request for attorneys' fees. The Notice provided that Class Counsel would "ask the Court for an award of attorneys' fees, costs, and expenses up to a maximum of $4.1 Million." Notice, Ex. A, p. 4, ECF No. 266-1. No objections were filed. "The lack of objections tends to show that at least from the class members' perspective, the requested fee is reasonable for the services provided and the benefits achieved by class counsel." *Singleton*, 976 F. Supp. 2d at 684 (D. Md. 2013). "Nevertheless, the court must still determine the reasonableness of the requested fee applying the remaining factors." *Id.*

e.      Awards in Similar Cases

"Attorneys' fees awarded under the 'percentage of recovery' method are generally between twenty-five (25) percent and thirty (30) percent of the fund." *Singleton,* 976 F. Supp. 2d at 684 (citing Manual for Complex Litigation ("MCL"), § 14.121). "Fees awarded under 'the percentage-of-recovery' method in settlements under $100 million have ranged from 15% to 40%." *Singleton,* 976 F. Supp. 2d at 685 (citing *Stoner v. CBA Information Services*, 352 F. Supp. 2d 549, 553 (E.D. Pa. 2005)). This Court in the *Singleton* case, discussed *supra*, found that a percentage fee award of 25% fell "within the range of awards deemed fair and reasonable by courts within the Fourth Circuit." *Id.* at 685. Additionally, Class Counsel have cited recent cases involving Wells Fargo in which courts have found percentage fee awards over 20% to be reasonable. *See Wakefield v. Wells Fargo & Co.*, No. 3:13-cv-05053 LB, 2015 WL 3430240 (N.D. Cal. May 28, 2015) (attorney fee award of 24.2% awarded from

$7,420,000 settlement amount); *Guerrero v. Wells Fargo Bank, N.A.*, No. C 12-04026 WHA, 2014 WL 4351113 (N.D. Cal. Sep. 2, 2014) (attorney's fee award of 23% given out of $625,000 settlement).  Therefore, Class Counsels' requested award of 20% of the Common Fund is a reasonable fee, but remains subject to modification for reasons stated herein.

f.    <u>The Complexity and Duration of the Litigation</u>

" 'In evaluating the complexity and duration of the litigation, courts consider not only the time between filing the complaint and reaching settlement, but also the amount of motions practice prior to settlement, and the amount and nature of discovery.' " *Singleton*, 976 F. Supp. 2d at 686 (quoting *Jones*, 601 F. Supp. 2d at 761).  As discussed *supra*, Class Counsel went to great lengths to identify potential Wells Fargo Class members and to obtain the evidence necessary to prosecute this case, including retrieving records from Genuine Title's server.  Class Counsel have indicated that "[t]hrough February 29, 2016, [they] have spent a total of $101,255.35 in costs in this matter, which includes court filing fees, IT fees to preserve the Genuine Title database, process server fees, and other administrative costs." Mem. Supp. Mot., p. 27, ECF No. 328-1.

However, Class Counsel and Wells Fargo began settlement discussions in March of 2015 and "reached a conceptual settlement on October 27, 2015 through private mediation." Def. Opp'n, p. 6, ECF No. 363.  Additionally, although Wells Fargo did file a Motion to Dismiss, the Wells Fargo Plaintiffs' claims were settled even before Wells Fargo's Motion to Dismiss was ruled upon by this Court.  The quick resolution of the Wells Fargo claims weighs in favor reducing Class Counsels' requested award.  *See Singleton*, 976 F. Supp. 2d at 686 (citing *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 469 (W.D. Va. 2011), in

which the United States District Court for the Western District of Virginia reduced Class Counsels' requested award of 25% of the common fund to 18% of the common fund " 'due to the lack of complexity and the brevity of discovery in [the] case,' " "despite finding that the settlement produced a favorable result for the class, there were relatively few objections, class counsel was experienced in consumer advocacy, and that there was substantial risk of nonpayment.").

      g.    <u>Public Policy</u>

" 'The most frequent complaint surrounding class action fees is that they are artificially high, with the result (among others) that plaintiffs' lawyers receive too much of the funds set aside to compensate victims.' " *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 687 (D. Md. 2013) (quoting Report on Contingent Fees in Class Action Litigation, 25 Rev. Litig. 459, 466 (2006)). "Thus, in assessing the reasonableness of the requested attorneys' fees, the court must strike the appropriate balance between promoting the important public policy that attorneys continue litigating class action cases that 'vindicate rights that might otherwise go unprotected,' and perpetuating the public perception that 'class action plaintiffs' lawyers are overcompensated for the work that they do.' " *Id.* (quoting Third Circuit Task Force Report, 208 F.R.D. 340, 342, 344 (Jan. 15, 2002)). This case does not pose serious concerns with respect to public policy because no Wells Fargo Class member has objected to Class Counsels' requested attorneys' fees, and Class Counsels' fees will not be deducted from class members' benefits, but will be paid separately by Wells Fargo. However, for the reasons stated *supra* with respect to the prior six factors, particularly "The Complexity and Duration of the Litigation" and "Risk of Nonpayment," a

reduction in attorneys' fees to an award equal to 15% of the Common Fund is warranted. A lodestar cross-check confirms that this is a more reasonable award.

B.      Lodestar Cross-Check

As discussed *supra*, Class Counsel have requested an award of 20% of the common fund, now valued at $15,572,416.11. Def. Opp'n, p. 13, ECF No. 363 (citing Cowen Declaration, p. 2, ECF No. 363-1). Accordingly, Class Counsels' requested award of 20% of the Common Fund equates to an award of **$3,114,483.22**. However, for the reasons stated *supra*, an award of 15% of the Common Fund is more appropriate in this case. A lodestar cross-check confirms this.

Under the "lodestar" method, a district court identifies a reasonable fee award, or lodestar award, by multiplying the reasonable hours expended by a reasonable hourly rate. *See Xiao–Yue Gu v. Hughes STX Corp.*, 127 F. Supp. 2d 751, 764 (D. Md. 2001). The court may then adjust that award by employing a "multiplier." *See Whitaker*, 2010 WL 3928616 at *4. "The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar." *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 688 (D. Md. 2013) (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 306). "Importantly, 'where the lodestar fee is used as a mere cross-check to the percentage method of determining reasonable attorneys' fees, the hours documented by counsel need not be exhaustively scrutinized by the district court.'" *Id.* (quoting *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 385 (D. Md. 2006)). "Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee."

*Singleton*, 976 F. Supp. 2d at 689 (citing *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 439 (D. Md. 1998)).

Here, Class Counsel Michael Paul Smith of the law firm Smith, Gildea & Schmidt, LLC ("SGS") and Veronica Nannis of the law firm Joseph, Greenwald & Laake, P.A. ("JGL") have each submitted affidavits documenting their firms' respective fees and expenses. *See* Smith Aff., ECF No. 346-1; Nannis Aff., ECF No. 346-4.

        a.      <u>Class Counsels' Reported Fees and Expenses</u>

        i.      <u>Smith, Gildea & Schmidt, LLC</u>

Mr. Smith has indicated that his work on this case was billed at the rate of $475 per hour, his associates Natalie Mayo, Lauren Benjamin, and Sarah Zadrozny's time was billed at the rate of $225 per hour, his associate Melissa English's time was billed at the rate of $350 per hour, and paralegals and law clerks' time was billed at the rate of $150 per hour. [8] Smith Aff., ¶ 4, ECF No. 346-1.

From the opening of their file on this case through October 27, 2015, the date of the conditional settlement with Wells Fargo, SGS has spent numerous hours "generally applicable to all defendants" which, when multiplied at the rates referenced above, would yield $344,187.50. Multiplying this figure by 57.19%, the percentage of all plaintiffs who obtained loans through Wells Fargo, yields $196,840.83, which Mr. Smith contends is Wells Fargo's proportional share of these fees.

Additionally, from the opening of the file through August 25, 2016, one date prior to Mr. Smith's affidavit, SGS spent numerous hours "specific to Wells Fargo" which, when

---

[8] All hourly rates proposed by Class Counsel are reasonable under this Court's "Guidelines Regarding Hourly Rates." *See* Local Rules Appendix B (D. Md. 2016).

multiplied by the rates references above, would yield $112,772.50. Accordingly, SGS attributes a total of **$309,613.33** in fees to Wells Fargo.

        ii.        <u>Joseph, Greenwald & Laake, P.A.</u>

Ms. Nannis has indicated that firm shareholders Tim Maloney and Steve Pavsner's work on this case was billed at a rate of $475 per hour, her own work was billed at a rate of $350 per hour, associates Tim Creed and Alyse Prawde's work was billed at a rate of $225 per hour, and paralegal and law clerks' time was billed at the rate of $150 per hour. Nannis Aff., ¶ 4, ECF No. 346-4.

From the opening of their file on this case through October 27, 2015, the date of the conditional settlement with Wells Fargo, JGL has spent numerous hours "generally applicable to all defendants" which, when multiplied at the rates referenced above, would yield $74,621.50. *Id.* at ¶ 5. Multiplying this figure by 57.19%, the percentage of all plaintiffs who obtained loans through Wells Fargo, yields $42,676.04, which Ms. Nannis contends is Wells Fargo's proportional share of these fees. *Id.*

Additionally, from the opening of the file through August 25, 2016, one date prior to Ms. Nannis' affidavit, JGL spent numerous hours "specific to Wells Fargo" which, when multiplied by the rates references above, would yield $59,025.00. *Id.* at ¶ 6. Accordingly, JGL attributes a total of **$101,701.04** in fees to Wells Fargo.

Therefore, Class Counsel attribute a total of **$411,314.37** in fees to Wells Fargo. With respect to costs and expenses, SGS has incurred an additional **$45,198.18** in costs and JGL has incurred an additional **$1,737.50** in costs attributable to Wells Fargo for a total of **$46,935.68**. *Id.* at ¶ 7; Smith Aff., ¶ 8, ECF No. 346-1.

       b.      <u>Lodestar Multiplier</u>

As discussed *supra*, Class Counsels' requested award of 20% of the Common Fund in fees and expenses equates to an award of $3,114,483.22. Subtracting $46,935.68 in expenses from $3,114,483.22 yields **$3,067,547.54**—the total amount that Class Counsel seek *for fees alone*. Accordingly, accepting a lodestar of $411,314.37[9], based on Class Counsels' affidavits discussed *supra*, Class Counsel are proposing a multiplier of nearly **7.5**. A 15% award ($2,335,862.42), less expenses ($46,935.68), comes to a total of $2,288,926.74. That award would require a lodestar multiplier of only **5.6**. As discussed *supra*, this Court has previously held that "lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee." *Singleton*, 976 F. Supp. 2d at 689 (citing *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 439 (D. Md. 1998)). While a lodestar multiplier of 5.6 still falls outside of this range, it is much closer than Class Counsels' requested figure and, in this case, it represents a reasonable award.

## <u>CONCLUSION</u>

For the foregoing reasons, it is this 18th day of November, 2016, ORDERED that:

1.    Settlement Counsels' Petition for Attorneys' Fees and Expenses (ECF No. 328) is GRANTED in the amount of **$2,335,862.42**, an award equal to 15% of the Common Fund;

2.    Pursuant to the Settlement Agreement (ECF No. 237-2) Wells Fargo shall pay Class Counsel attorneys' fees and expenses in the amount of **$2,335,862.42** in addition to,

---

[9] Class Counsel indicated at this Court's November 4, 2016 hearing that their fees and expenses totaled $418,809. However, as discussed *supra*, this Court need not "exhaustively scrutinize[]" the hours reported by Counsel because this lodestar analysis is being used only as a cross-check. *Singleton*, 976 F. Supp. 2d at 688.

not out of the Common Fund. Payment shall be remitted by check jointly payable to Class Counsel within ninety (90) days of this Order.

3. Plaintiffs' Interim Motion to Seal Plaintiffs' Supplemental Affidavits to Settlement Counsels' Petition for Attorneys' Fees and Expenses and Class Representatives' Service Awards for Wells Fargo Settlement (ECF No. 347) is DENIED;

4. Plaintiffs' Supplemental Affidavits, and accompanying exhibits, (ECF No. 346) shall be UNSEALED; and

5. The Clerk of this Court transmit a copy of this Memorandum Order to Counsel.


_____/s/_____
Richard D. Bennett
United States District Judge