IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| EDWARD J. AND VICKI FANGMAN, *et al.*, | * |
| Plaintiffs, | * |
| v. | * Civil Action No. RDB-14-0081 |
| GENUINE TITLE, LLC, *et al.* | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM ORDER**

On August 8, 2017, this Court conducted a Final Fairness Hearing on the Proposed Class Action Settlement (ECF No. 432-2) ("Settlement Agreement") of all claims asserted in this action against Defendant PNC Bank, N.A. ("PNC"). Via Order dated that same day (ECF No. 479), this Court granted final approval of the Settlement Agreement, dismissed all claims against PNC, and approved the requested service awards for Class Representatives Gerald F. and Ruby B. Coggins, Lusetha Rolle, and Rose A. Lease, in the total amount of $15,000, including their settlement benefits.[1]  *See* Order, ¶¶ 1, 9, 13, ECF No. 479. Final Judgement has been entered in this case against PNC in an "amount[2] necessary to fund the Settlement Benefits payable to the Settlement Class Members, in accordance with the Settlement Agreement," as discussed further *infra*.  *Id*. ¶¶ 11, 15.

---

[1] Pursuant to Section 11 of the Settlement Agreement, the Class Representatives' service awards will be paid from this Court's award of attorneys' fees and expenses to Settlement Class Counsel.
[2] Counsel have subsequently indicated to this Court that the value of the PNC Common Fund is approximately $997,128.03.  Mem. Supp. Mot., p. 6, ECF No. 474-1.

1

Still pending before this Court is Settlement Counsels' Petition for Attorneys' Fees and Expenses (ECF No. 462), in which Settlement Counsel request an award of attorneys' fees and expenses in an amount equal to 25% of the Common Fund, to be paid *in addition to*, and not out of, the Common Fund. PNC objects to any award "in excess of 20% of the [C]ommon [F]und."[3] *See* Response, ECF No. 465. The parties' submissions have been reviewed, and no additional hearing on the issue of attorneys' fees and expenses is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated herein, the pending Settlement Counsels' Petition for Attorneys' Fees and Expenses (ECF No. 462) is GRANTED, but in the reduced amount of **$199,425.61**, an award equal to **20% of the estimated value of the Common Fund**.[4]

BACKGROUND

In January of 2014, Plaintiffs Edward J. and Vicki Fangman brought this class action against Defendant Genuine Title, LLC alleging, *inter alia*, violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2607(a), (b)[5]. *See* Compl., ECF No. 2. Defendant PNC Bank, N.A. ("PNC") was named as a Defendant in the First Amended

---

[3] As discussed *infra*, the Settlement Agreement provides that PNC shall not object to an award of attorneys' fees and expenses up to 20% of the Common Fund, but reserves the right to object to any requested award greater than 20% of the Common Fund.

[4] This Court has previously awarded Settlement Class Counsel attorneys' fees and expenses in the amounts of 15%, 25%, and 20% of the Common Funds, and 20% of the Settlement Benefit to the Settlement Class, in the Wells Fargo, JPMorgan Chase, E Mortgage/E Properties, and Net Equity Settlements, respectively. In all prior settlements, with the exception of the Net Equity Settlement, the awards were paid by the settling defendants *in addition to*, and not *out of*, the Common Fund. As discussed *infra*, an award equal to 20% of the Common Fund is a reasonable award in this settlement. A lodestar cross-check confirms that this is a reasonable award. The lodestar multiplier for this award is approximately 1.06, well within the range of reasonable multipliers previously approved by this Court. *See, e.g., Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 689 (D. Md. 2013) ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee.").

[5] Additionally, Plaintiffs alleged violations of Md. Code Ann., Real Prop. § 14-127 ("Section 14-127") and the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-301. Those claims were subsequently dismissed by this Court. *See* Orders, ECF Nos. 214, 281.

Complaint (ECF No. 47). An additional thirteen home mortgage lenders have also been named as Defendants (collectively "Lender Defendants") via the First and Second Amended Complaints in this action. Attorneys Michael Paul Smith, Sarah Zadrozny, Timothy J. Maloney, and Veronica Nannis of the law firms of Smith, Gildea & Schmidt, LLC ("SGS") and Joseph, Greenwald & Laake, P.A. ("JGL") (hereinafter "Settlement Counsel") have represented all Plaintiffs, including the PNC Plaintiffs, throughout this litigation.

In prosecuting this case, Settlement Counsel have incurred significant expense and have undergone significant investigation. For example, in July of 2013, Plaintiffs filed a Petition for Emergency Appointment of a Receiver for the purpose of retrieving and preserving the documents, books, and records of Genuine Title in the Circuit Court for Baltimore County, Maryland. That court granted the petition on July 30, 2014, and Settlement Counsel were able to retrieve vast amounts of evidence from Genuine Title's records, including the identities of potential PNC Class Members. PNC filed a Motion to Dismiss the Second Amended Complaint on July 21, 2015 (ECF No. 165), to which Plaintiffs responded on September 4, 2015 (ECF No. 175). Following a hearing on November 24, 2015, this Court denied PNC's Motion to Dismiss with respect to Plaintiffs' claims under the Real Estate Settlement Procedures Act in a Memorandum Opinion and Order dated December 9, 2015 (ECF Nos. 211 & 212).

The parties filed a Joint Motion to Preliminarily Approve Settlement on January 20, 2017 (ECF No. 432), attaching the Settlement Agreement (ECF No. 432-2). This Court held a Preliminary Fairness Hearing on February 1, 2017 and granted the parties' Joint Motion via Order dated that same date (ECF No. 435). This Court's Order designated

3

Michael Paul Smith, Sarah Zadrozny, Timothy J. Maloney, and Veronica Nannis of the law firms of Smith, Gildea & Schmidt, LLC ("SGS") and Joseph, Greenwald & Laake, P.A. ("JGL") as Settlement Counsel.

Section 6.1 of the Settlement Agreement provides for the payment of the following benefits to the PNC Class Members:

> Within ninety (90) days after the Finality of the Settlement, the Settlement Administrator shall issue a check from the Common Fund account to each member of the Settlement Class who did not file a complete and valid Request for Exclusion by the Exclusion Deadline, in an amount equal to 220% of the Section 1100 Charges that were paid to Genuine Title (excluding Line 1108 title underwriter's fees) as reflected on the member's final HUD-1 Settlement Statement for the member's PNC loan less any Consumer Redress Payment actually paid and received by such Settlement Class Member.

Counsel have indicated that the Common Fund totals approximately $997,128.03.

With respect to attorneys' fees and expenses, the Settlement Agreement provides that Settlement Counsel shall limit their requested attorneys' fees and expenses to an amount equal to 25% of the Common Fund. Settlement Agreement, ¶ 12, ECF No. 432-2. The Agreement further provides that PNC reserves the right to oppose any petition for attorneys' fees and expenses that seeks *more than* an aggregate award equal to 20% of the Common Fund. *Id.* Attorneys' fees and expenses shall be paid in addition to, not out of, the Common Fund.

Under the terms of the Settlement Agreement, a notice plan was completed pursuant to which all members of the PNC Class were informed of the Settlement Agreement's terms, including the provisions for payment of attorneys' fees and expenses. *See id.* ¶ 10. No objections to the terms of the Settlement Agreement have been filed. On August 8, 2017,

4

this Court conducted a Final Fairness Hearing on the proposed settlement and granted final approval of the Settlement Agreement that same day.

ANALYSIS

Settlement Counsel have requested an award of attorneys' fees and expenses in an amount equal to 25% of the Common Fund, or $249,282.01. Mem. Supp. Mot., p. 29, ECF No. 462-1. PNC objects to any award in excess of 20% of the Common Fund.

Rule 23(h) of the Federal Rules of Civil Procedure provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Additionally, the Real Estate Settlement Procedures Act ("RESPA") provides that "[i]n any private action brought pursuant to this subsection, the court may award to the prevailing party the court costs of the action together with reasonable attorneys fees." 12 U.S.C. § 2607(d)(5). As this Court has previously noted, "[t]here are two primary methods of calculating attorneys' fees: the lodestar method and the 'percentage of recovery' method." *Whitaker v. Navy Fed. Credit Union*, No. RDB-09-2288, 2010 WL 3928616, at *4 (D. Md. Oct. 4, 2010). "The lodestar method requires the multiplication of the number of hours worked by a reasonable hourly rate, the product of which this Court can then adjust by employing a 'multiplier.'" *Id.* "The percentage of the recovery method involves an award based on a percentage of the class recovery, set by the weighing of a number of factors by the court." *Id.*

For the reasons explained in this Court's prior Memorandum Opinion of November 18, 2016 (ECF No. 411), the "percentage of recovery" method shall be used to calculate Settlement Counsels' attorneys' fees and expenses in this case. However, this Court will

cross-check the "percentage of recovery" analysis with a lodestar analysis. This Court has previously recognized that "using the percentage of fund method and supplementing it with the lodestar cross-check . . . take[s] advantage of the benefits of both methods." *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 681 (D. Md. 2013) (quoting *In re The Mills Corp. Securities Litig.*, 265 F.R.D. 246, 261 (E.D. Va. 2009)).

A. "Percentage of Recovery" Analysis

Although the United States Court of Appeals for the Fourth Circuit "has not yet identified factors for district courts to apply when using the 'percentage of recovery' method, . . . District courts in this circuit have analyzed the following seven factors:"

> (1) the results obtained for the class; (2) the quality, skill, and efficiency of the attorneys involved; (3) the risk of nonpayment; (4) objections by members of the class to the settlement terms and/or fees requested by counsel; (5) awards in similar cases; (6) the complexity and duration of the case; and (7) public policy. [citing, *e.g.*, *The Kay Company v. Equitable Production Co.*, 749 F. Supp. 2d 455, 464 (S.D. W. Va. 2010)]. Importantly, "fee award reasonableness factors 'need not be applied in a formulaic way' because each case is different, 'and in certain cases, one factor may outweigh the rest.' " *In re AT & T Corp.*, 455 F.3d 160, 166 (3d Cir. 2006) (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3rd Cir. 2005)).

*Singleton,* 976 F. Supp. 2d at 682.

a. Results Obtained for the Class

" '[T]he most critical factor in calculating a reasonable fee award is the degree of success obtained.' " *Id.* (quoting *McKnight v. Circuit City Stores, Inc.,* 14 F. App'x. 147, 149 (4th Cir. 2001)). In this case, Settlement Counsel have secured a significant financial recovery for the members of the PNC Class. Members of the Settlement Class will receive an amount equal to 220% of the Section 1100 Charges that were paid to Genuine Title (excluding Line 1108 title underwriter's fees) as reflected on the member's final HUD-1 Settlement

6

Statements. As discussed *supra*, the Common Fund totals approximately $997,128.03. As this Court observed in *Singleton*, "[t]he fact that no objections have been filed further suggests that the result achieved is a desirable one." *Singleton*, 976 F. Supp. 2d at 683.

      b.      <u>Quality, Skill, and Efficiency of the Attorneys Involved</u>

Settlement Counsel are experienced litigators who went to great lengths to prosecute this action and obtained a quick and substantial settlement for the PNC Class. Lead Counsel, Mr. Michael Paul Smith, "has represented plaintiffs for 24 years and has tried over 50 cases in state and federal courts," including numerous "complex civil cases in the areas of commercial litigation, fraud and banking/real estate issues." Mem. Supp. Mot., p. 12, ECF No. 462-1. Mr. Smith and the law firm of Smith, Gildea & Schmidt, LLC have significant experience preparing and trying complex civil cases, including *Mosaic Lounge v. BCR*, Case No.: 03-C-14-00449, in the Circuit Court for Baltimore County and *Possidente v. GBMC*, Case No. 03-C-10-003295, in the Circuit Court for Baltimore County. *Id.* at 13.

The attorneys of Joseph, Greenwald & Laake, P.A. are also experienced plaintiffs' counsel. Mr. Timothy Maloney "has represented plaintiffs for 30 years and has tried over 100 cases in state and federal courts." *Id.* Mr. Maloney "regularly tries complex civil cases in the areas of commercial litigation, fraud and constitutional violations" and has served as plaintiffs' counsel in several class action cases before this Court, including *Robert J. England, et al. v. Marriot International, Inc. et al.*, No. 8: 10-cv-01256-RWT, and *In re Michelin North America, Inc., PAX System Marketing & Sales Practice Litigation*, No. 08:08-md-01911-RWT. *Id.* Additionally, Ms. Veronica Nannis "has represented plaintiffs for 14 years and for the past 10 years has focused on complex fraud cases under the False Claims Act." *Id.*

7

In order to identify potential PNC Plaintiffs and class members, Settlement Counsel went to great lengths to secure the records of the now-defunct Genuine Title, LLC. In July of 2013, counsel filed a Petition for Emergency Appointment of a Receiver for the limited purpose of retrieving and preserving the documents, books, and records of Genuine Title in the Circuit Court for Baltimore County, Maryland. That court granted the petition on July 30, 2014. The Receiver immediately seized records that Plaintiffs have alleged were scheduled for destruction.

  c. <u>Risk of Nonpayment</u>

" 'In determining the reasonableness of an attorneys' fee award, courts consider the relative risk involved in litigating the specific matter compared to the general risks incurred by attorneys taking on class actions on a contingency basis.' " *Singleton*, 976 F. Supp. 2d at 683 (quoting *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 762 (S.D.W. Va. 2009)). "The risk undertaken by class counsel is evaluated by, among other things, the presence of government action preceding the suit, the ease of proving claims and damages, and, if the case resulted in settlement, the relative speed at which the case was settled." *Id.*

Settlement Counsel correctly note that several courts have dismissed similar RESPA claims in recent years. *See, e.g., Minter v. Wells Fargo Bank, N.A.*, 2014 WL 3827671 (4th Cir. Aug. 5, 2014); *Taggart v. Norwest Mort., Inc.*, 539 Fed. App'x. 42 (3d Cir. 2013); *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516 (10th Cir. 2013); *McCrimmon v. Wells Fargo Bank, N.A.*, 516 Fed. App'x. 372 (5th Cir. 2013).

d. <u>Objections</u>

As discussed *supra*, PNC Class members were notified of the proposed Settlement Agreement, their expected recovery, and Settlement Counsels' request for attorneys' fees. Particularly, a paragraph was included in the Notice providing as follows:

> **8. How will Class Counsel be paid?**
> Class Counsel will ask the Court to give final approval of the Settlement at the Final Fairness Hearing, and will also ask the Court for an award of attorneys' fees, costs, and expenses up to a maximum of 25% of the Settlement Benefits. The Court will make the final decision as to the amounts to be paid to Class Counsel at or after the Final Fairness Hearing. The attorneys' fees and expenses will be paid separately by PNC and will not reduce the amount paid to the Settlement Class

No objections were filed. "The lack of objections tends to show that at least from the class members' perspective, the requested fee is reasonable for the services provided and the benefits achieved by class counsel." *Singleton*, 976 F. Supp. 2d at 684 (D. Md. 2013).

e. <u>Awards in Similar Cases</u>

"Fees awarded under 'the percentage-of-recovery' method in settlements under $100 million have ranged from 15% to 40%." *Singleton,* 976 F. Supp. 2d at 685 (citing *Stoner v. CBA Information Services*, 352 F. Supp. 2d 549, 553 (E.D. Pa. 2005)). This Court in the *Singleton* case found that a percentage fee award of 25% fell "within the range of awards deemed fair and reasonable by courts within the Fourth Circuit." *Id.* at 685.

f. <u>The Complexity and Duration of the Litigation</u>

" 'In evaluating the complexity and duration of the litigation, courts consider not only the time between filing the complaint and reaching settlement, but also the amount of motions practice prior to settlement, and the amount and nature of discovery.' " *Singleton*, 976 F. Supp. 2d at 686 (quoting *Jones*, 601 F. Supp. 2d at 761). As discussed *supra*, Settlement

9

Counsel went to great lengths to identify potential PNC Class members and to obtain the evidence necessary to prosecute this case, including retrieving records from Genuine Title's server. However, PNC was not added as a party in this case until the First Amended Complaint was filed on January 2, 2015 (ECF No. 47). Additionally, unlike Defendants JPMorgan Chase and Wells Fargo, PNC was not named as a Defendant in the related enforcement action of *Consumer Financial Protection Bureau, et al. v. Wells Fargo Bank, N.A., et al.*, RDB-15-0179, brought in this Court by the United States Consumer Financial Protection Bureau ("CFPB") and the Office of the Attorney General of Maryland, Consumer Protection Division. In fact, counsel have indicated that, upon discovering internal misconduct, PNC self-reported its potential violations and voluntarily elected to issue refunds to affected customers.

This Court has already awarded Settlement Class Counsel a total of $3,355,598.89 in attorneys' fees and expenses with respect to the other settling Defendants in this case, including $2,335,862.42 as to the Wells Fargo settlement and $82,139.52 as to the JPMorgan Chase settlement. As this Court has explained in *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 682 (D. Md. 2013), " 'fee award reasonableness factors 'need not be applied in a formulaic way' because each case is different,' " (quoting *In re AT & T Corp.*, 455 F.3d 160, 166 (3d Cir. 2006) (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3rd Cir. 2005))). For all of these reasons, Class Counsels' requested award of 25% of the Common Fund, or $249,282.01, as to the present PNC Settlement shall be reduced to $199,425.61, an award equal to 20% of the estimated value of the Common Fund.

g.  Public Policy

" 'The most frequent complaint surrounding class action fees is that they are artificially high, with the result (among others) that plaintiffs' lawyers receive too much of the funds set aside to compensate victims.' " *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 687 (D. Md. 2013) (quoting Report on Contingent Fees in Class Action Litigation, 25 Rev. Litig. 459, 466 (2006)). "Thus, in assessing the reasonableness of the requested attorneys' fees, the court must strike the appropriate balance between promoting the important public policy that attorneys continue litigating class action cases that 'vindicate rights that might otherwise go unprotected,' and perpetuating the public perception that 'class action plaintiffs' lawyers are overcompensated for the work that they do.' " *Id.* (quoting Third Circuit Task Force Report, 208 F.R.D. 340, 342, 344 (Jan. 15, 2002)). This case does not pose serious concerns with respect to public policy because no PNC Class member has objected to Settlement Counsels' requested attorneys' fees. Reducing the award to 20% of the Common Fund further diminishes any potential public policy concerns. A lodestar cross-check confirms that this is a reasonable figure.

B.  Lodestar Cross-Check

Under the "lodestar" method, a district court identifies a reasonable fee award, or lodestar award, by multiplying the reasonable hours expended by a reasonable hourly rate. *See Xiao–Yue Gu v. Hughes STX Corp.*, 127 F. Supp. 2d 751, 764 (D. Md. 2001). The court may then adjust that award by employing a "multiplier." *See Whitaker*, 2010 WL 3928616 at *4. "The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within

some reasonable multiplier of the lodestar." *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 688 (D. Md. 2013) (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 306). "Importantly, 'where the lodestar fee is used as a mere cross-check to the percentage method of determining reasonable attorneys' fees, the hours documented by counsel need not be exhaustively scrutinized by the district court.'" *Id.* (quoting *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 385 (D. Md. 2006)). "Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee." *Singleton*, 976 F. Supp. 2d at 689 (citing *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 439 (D. Md. 1998)). Here, Settlement Counsel Michael Paul Smith of the law firm Smith, Gildea & Schmidt, LLC ("SGS") and Veronica Nannis of the law firm Joseph, Greenwald & Laake, P.A. ("JGL") have each submitted affidavits documenting their firms' respective fees and expenses. *See* Smith Aff., ECF No. 462-2; Nannis Aff., ECF No. 462-3.

> a. Settlement Counsels' Reported Fees and Expenses
>> i. Smith, Gildea & Schmidt, LLC

From the date of opening the file on this case through September 13, 2016, the date of the conditional settlement with PNC, SGS has spent numerous hours "generally applicable to all defendants" which, when billed at the rates provided in this Court's Local Rules, yield $737,160.00. Smith Aff., ¶ 37, ECF No. 462-2. Applying the same formula used in previous settlements in this case, SGS has calculated that $89,445.20 of that amount represents PNC's proportionate share of the fees. *Id.* Additionally, from the opening of the file through April 28, 2017, SGS spent numerous hours "specific to PNC" which, when billed at the rates provided in this Court's Local Rules, yield $51,242.50. *Id.* ¶ 38.

12

Accordingly, SGS attributes a total of $140,687.70 in fees to PNC. *Id.* ¶ 39. The total amount of costs attributable to PNC by SGS is $15,339.98. *Id.* ¶ 42.

    ii.  Joseph, Greenwald & Laake, P.A.

From the date of opening the file on this case through September 13, 2016, the date of the conditional settlement with PNC, JGL has spent numerous hours "generally applicable to all defendants" which, when billed at the rates provided in this Court's Local Rules, yield $233,854.00. Nannis Aff., ¶ 16, ECF No. 462-3. Applying the same formula used in previous settlements in this case, JGL has calculated that $17,594.19 of that amount represents PNC's proportionate share of the fees. *Id.* Additionally, from the opening of the file through May 12, 2017, JGL spent numerous hours "specific to PNC" which, when billed at the rates provided in this Court's Local Rules, yield $6,762.50. *Id.* ¶ 17. Accordingly, JGL attributes a total of $24,356.69 in fees to PNC. *Id.* ¶ 18. The total amount of costs attributable to PNC by JGL is $2,625.48. *Id.* ¶ 20.

Therefore, the grand total of attorneys' fees for both firms with respect to PNC is $165,044.39. As this Court has explained in *Singleton*, 976 F. Supp. at 688 " 'where the lodestar fee is used as a mere cross-check to the percentage method of determining reasonable attorneys' fees, the hours documented by counsel need not be exhaustively scrutinized by the district court' " (quoting *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d at 385). The grand total of expenses is $17,965.46.

    b.  Lodestar Cross-Check Multiplier

As noted *supra*, an award equal to 20% of the estimated value of the Common Fund equals $199,425.61. Subtracting Class Counsels' costs and expenses of $17,965.46, as well as

13

an additional $5,749.72, representing the difference between each Class Representative's service award of $5,000 and their settlement benefit, which will be paid out of this Court's award of attorneys' fees and expenses, yields $175,710.43 in fees alone. Accordingly, accepting a lodestar of $165,044.39, based on Settlement Counsels' affidavits discussed *supra*, yields a lodestar cross-check multiplier of approximately **1.06**, well within the range of reasonable multipliers. As discussed *supra*, this Court has previously held that "lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee." *Singleton*, 976 F. Supp. 2d at 689 (citing *Goldenberg,* 33 F. Supp. 2d at 439).

## **CONCLUSION**

For these reasons, it is this 10th day of August, 2017, HEREBY ORDERED that:

1. Settlement Counsels' Petition for Attorneys' Fees and Expenses (ECF No. 462) is GRANTED, but in the reduced amount of **$199,425.61**, an award equal to **20% of the estimated value of the Common Fund**;

2. Pursuant to the Settlement Agreement (ECF No. 432-2), PNC shall pay Settlement Class Counsel attorneys' fees and expenses in the amount of **$199,425.61** in addition to, not out of, the Common Fund. Payment shall be remitted by PNC by check jointly payable to Settlement Class Counsel within ninety (90) days of this Order; and

3. The Clerk of this Court shall transmit a copy of this Memorandum Order to Counsel.

                                               /s/
                                        Richard D. Bennett
                                        United States District Judge